UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. THEODORE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, and TASMIN ETTEFAGH,<br><br>Defendants. | Case No.  6:21-cv-00809-PGB-GJK<br><br>**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ROBERT CIECKO AND MARIUSZ CIECKO FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |
| DAVID TENNENBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER and BYRON ROTH,<br><br>Defendants. | Case No.  6:21-cv-00818-PGB-DCI |

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    ARGUMENT ............................................................................................................ 5

     A.    The Ciecko Brothers Should Be Appointed Lead Plaintiffs .................................. 5

          1.    The Ciecko Brothers Have The Largest Financial Interest Of Any Eligible Movant In The Relief Sought By The Class ............................................... 6

          2.    The Ciecko Brothers Satisfy The Requirements Of Rule 23 ...................... 7

     B.    THE COMPETING MOTIONS SHOULD BE DENIED ..................................... 8

          1.    Erste AM Is Inadequate Under Rule 23 ...................................................... 8

          2.    Erste AM Does Not Have Article III Standing to Prosecute This Action .................................................................................................... 12

          3.    Boenig And The Wilemans Do Not Possess The Largest Financial Interest ..................................................................................................... 17

III.   CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018)................................................................................14

*Baydale v. Am. Express Co.*, 09 Civ. 3016 (WHP),
2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009)..................................5, 16

*Beckerman v. Ener1 Inc.*, No. 11 Civ. 5794 (PAC),
2012 U.S. Dist. LEXIS 19972 (S.D.N.Y. Feb. 15, 2012)........................................7

*Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN,
2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) ........................................5

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018).............................................................................................3

*CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*,
610 F.3d 497 (7th Cir. 2010) .................................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)................................................................................................16

*Gross v. AT&T Inc.*, 19-CV-2892 (VEC),
2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. July 31, 2019) .....................................16

*Gross v. AT&T Inc.*, No. 19-CV-2892,
2019 U.S. Dist. LEXIS 225777 (S.D.NY. June 24, 2019)............................. *passim*

*Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC,
2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) ......................................9

*In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005).....................................4, 13

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058,
2011 WL 3211472 (S.D.N.Y. 2011)......................................................................13

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394,
2019 U.S. Dist. LEXIS 298359 (N.D. Ill. Nov. 15, 2019)........................................9

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394,
2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020) ........................................10

*In re Cendant Corp. Litig.*,
  364 F.3d 201 (3d Cir. 2001)..................................................................................................5

*In re Enron Corp., Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)...................................................................................13, 16

*In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB),
  2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009).......................................................16

*In re SLM Corp. Sec. Litig.*,
  258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................16

*In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR),
  2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004)..........................................................13

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW),
  2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ............................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................13, 16

*McDermott Int'l, Inc. Secs. Litig.*, 08 Civ. 9943 (DC),
  2009 U.S. Dist. LEXIS 21539 (S.D.N.Y. Mar. 6, 2009) .......................................................3, 7

*Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV-DIMITROULEAS,
  2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) ......................................................3, 7

*Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-3244 (WJM),
  2017 U.S. Dist. LEXIS 192673 (D.N.J. Nov. 21, 2017).........................................................9

*Piven v. Sykes Enters.*,
  137 F. Supp. 2d 1295 (M.D. Fla. 2000).....................................................................2, 6, 7, 9

*Plymouth County Ret Sys. v. Carter's, Inc.*, NO. 1:08-CV-2940-JOF,
  2009 U.S. Dist. LEXIS 20582 (N.D. Ga. Mar. 13, 2009)........................................................6

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ........................................................................................2, 7

*Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF),
  2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016).......................................................13

*Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB,
  2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) .........................................................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2015)....................................................................................................13

iii

*Tran v. Erba Diagnostics, Inc.*, No. 15-cv-2440-COOKE/TORRES,
    2016 U.S. Dist. LEXIS 186864 (S.D. Fla. Apr. 8, 2016) ...........................................................5

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)...................................................................................................................13

*Vincelli v. National Home Health Care Corp.*,
    112 F. Supp. 2d 3109 (M.D. Fla. 2000)..................................................................................2, 6

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008).....................................................................................................5, 14

*Weinberg v. Atlas Air Worldwide holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ...............................................................................................7

## Statutes

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) .................................................................................................6

15 U.S.C. § 78u-4(a)(2)(A)(v) ...............................................................................................10, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...................................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ......................................................................................2, 12

PSLRA ...................................................................................................................... *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 .................................................................... *passim*

The Ciecko Brothers[1] respectfully submit this Memorandum of Law: (i) in further support of their motion for consolidation, appointment as Lead Plaintiffs and approval of their selections of Pomerantz and Miller Shah as Lead and Liaison Counsel, respectively, for the Class (Dkt. No. 33); and in opposition to the competing motions of: (i) Erste Asset Management GmbH ("Erste") (Dkt. No. 32); (ii) James Boenig ("Boenig") (Dkt. No. 30); and (iii) Bill Wileman and Andrew Wileman (collectively, the "Wilemans") (Dkt. No. 25).[2]

## I.        PRELIMINARY STATEMENT

This is a class action securities fraud lawsuit against PureCycle and certain of the Company's officers.  As with all federal class action securities fraud lawsuits, a Lead Plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or movants with the greatest financial interest in the outcome of the action; **and** who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are the Ciecko Brothers, a cohesive group consisting of two brothers, Robert and Mariusz Ciecko, who together suffered over $131,000 in losses in connection with their purchases of PureCycle securities as a result of the alleged fraud at issue in the Related Actions, a greater financial interest in this litigation than any competing movant eligible for appointment.  The table below sets forth the losses of the Ciecko Brothers compared to those of the other movants:

---

[1] All capitalized terms herein are defined in the Ciecko Brothers' moving brief, unless otherwise indicated.  *See* Dkt. No. 33.

[2] Initially one other member of the putative Class, Randall L. Rudeen ("Rudeen"), also filed a competing motion.  *See* Dkt. No. 35.  On July 14, 2021, Rudeen filed a notice of withdrawal of his motion, acknowledging that "he does not possess the 'largest financial interest in the relief sought by the class' as required by the PSLRA."  Dkt. No. 41.

| Movant | Loss |
|--------|------|
| Ciecko Brothers | $131,095 |
| Boenig | $109,415 |
| Wilemans | $13,720 |
| ~~Erste AM~~ | ~~$1.82M~~ |

The Ciecko Brothers' loss is significantly larger than that of any competing eligible movant. The eligible movant with the next largest loss, Boenig, incurred a loss of only $109,415—nearly $22,000 less than the Ciecko Brothers. As such, the Ciecko Brothers have the greatest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff. *See*, *e.g.*, *Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 3109, 1317 (M.D. Fla. 2000) (equating monetary loss with financial interest); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1302-03 (M.D. Fla. 2000) (same).

One movant, Erste AM, has alleged a larger loss than the Ciecko Brothers. However, for the reasons discussed below, Erste AM both fails to satisfy the adequacy requirement of Rule 23 *and* "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Accordingly, Erste AM is disqualified from consideration as Lead Plaintiff.

In addition to their significant financial interest, the Ciecko Brothers also satisfy the typicality and adequacy requirements of Rule 23. The Ciecko Brothers, like all members of the Class, purchased PureCycle securities at prices artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of the alleged corrective disclosures. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000). The Ciecko Brothers are

2

also adequate Class representatives under Rule 23. Their significant financial interest in this litigation ensures that they will vigorously pursue recovery on behalf of the Class. *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 32271, at *19 (S.D. Fla. Apr. 18, 2008). As siblings, the Ciecko Brothers obviously have a meaningful relationship with one another that pre-dates this litigation. As such, they constitute exactly the kind of cohesive group consisting of related individuals that the PSLRA expressly permits and courts routinely appoint to serve as lead plaintiffs in securities class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups"); *McDermott Int'l, Inc. Secs. Litig.*, 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at *11-*12 (S.D.N.Y. Mar. 6, 2009) (approving family members as co-lead plaintiffs, noting presumed ability "to function cohesively"). The Ciecko Brothers have further demonstrated their adequacy by submitting a detailed Joint Declaration, attesting to, *inter alia*, their backgrounds, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to shoulder these responsibilities, including by overseeing the efforts of counsel. *See generally* Dkt. No. 34-4. Accordingly, the Ciecko Brothers are highly qualified to serve as class representatives and to supervise Pomerantz, their chosen counsel, to prosecute this action vigorously on behalf of PureCycle investors.

By contrast, Erste AM is clearly inadequate under Rule 23 for multiple reasons. Aside from a single unsworn statement in its motion brief stating its location and assets under management, Erste AM has failed to provide any information whatsoever about itself (in contrast with the Ciecko Brothers' detailed attestations), and Erste AM's lack of proffer in this regard falls short of even the relatively modest *prima facie* showing required at this stage of the litigation.

3

Erste AM is further inadequate because it failed to follow the PSLRA's clear requirement to submit a signed Certification disclosing *all* PSLRA actions in which Erste AM has served as Lead Plaintiff within the past three years.  Instead, at odds with the stature's requirements, Erste AM submitted an *unsigned* Certification that failed to disclose that one of Erste AM's predecessor entities, Erste-Sparinvest Kapitalangesellschaft m.b.H. ("Erste-Sparinvest"), sought appointment as lead plaintiff in the PSLRA action *In re Nielsen Holdings plc Sec. Litig.*, 1:18-cv-07143 (S.D.N.Y.) ("*Nielsen*"), an action filed on August 8, 2018—*i.e.*, within the three years preceding the date on which its Certification in this litigation was signed.  *See Nielsen* Dkt. No. 22.

Even assuming *arguendo* that Erste AM had made the requisite *prima facie* showing of its adequacy, it would still be disqualified from appointment because its failure to establish that it actually has standing to pursue securities fraud claims against the Defendants in this Action subjects it to a unique defense that mandates denial of its motion.  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005).  Specifically, Erste AM appears to be an asset manager, and as such, it is unclear whether Erste AM is actually the beneficial owner of the PureCycle securities at issue in this litigation, or whether it merely provides management services to the actual owners of these securities.  Indeed, Erste AM's Certification indicates that the relevant PureCycle securities were purchased by an entity named "Erste AM Fonds NR. 566", an entity that has not filed a Motion in this matter and is otherwise unidentified, leaving the Court and the parties guessing as to which entity actually suffered the losses relevant to this litigation.  If Erste AM is not the beneficial owner of these securities, then it has not suffered any injury in connection with the Defendants' alleged fraud, and thus lacks standing to pursue

4

fraud claims against the Defendants. *See*, *e.g.*, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (an asset manager has Article III standing to sue for injuries to customers who are the beneficial owners of the securities at issue only if it has "legal title to, or a proprietary interest in, the claim."). Courts have regularly denied motions by asset managers who, like Erste AM, have failed to demonstrate their ownership of the securities at issue. *See*, *e.g.*, *Gross v. AT&T Inc.*, No. 19-CV-2892, 2019 U.S. Dist. LEXIS 225777, at *5-6 (S.D.NY. June 24, 2019) (denying motion by asset manager that "does not own the underlying securities and has not been assigned an ownership interest in the claims at issue"); *Baydale v. Am. Express Co.*, 09 Civ. 3016 (WHP), 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. Aug. 14, 2009) (denying lead plaintiff motion filed by asset manager that failed to establish its standing to pursue fraud claims).

For the reasons set forth herein, the Ciecko Brothers respectfully request that the Court grant their motion in all respects and deny the competing motions.

## II. ARGUMENT

### A. The Ciecko Brothers Should Be Appointed Lead Plaintiffs

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of adequacy and typicality under Rule 23. *Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005) (citing *In re Cendant Corp. Litig.*, 364 F.3d 201, 263 (3d Cir. 2001)); *see also*, *e.g.*, *Tran v. Erba Diagnostics, Inc.*, No. 15-cv-2440-COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016). Once this presumption is triggered, it may be rebutted upon proof that the presumptive lead plaintiff will not fairly represent the

5

interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added).  Here, the most adequate class representatives are the Ciecko Brothers.

### 1.   The Ciecko Brothers Have The Largest Financial Interest Of Any Eligible Movant In The Relief Sought By The Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District, the Eleventh Circuit, and around the country recognize that the amount of financial loss is the most significant factor to be considered.  *See*, *e.g.*, *Vincelli*, 112 F. Supp. 2d at 1317 (equating monetary loss with financial interest); *Piven*, 137 F. Supp. 2d at 1302-03 (same); *Plymouth County Ret Sys. v. Carter's, Inc.*, NO. 1:08-CV-2940-JOF, 2009 U.S. Dist. LEXIS 20582, at *5 (N.D. Ga. Mar. 13, 2009) (same).

No eligible movant seeking appointment as lead plaintiff in the Related Actions has a larger financial interest in the litigation than the Ciecko Brothers.  As the chart at p. 2 illustrates, the Ciecko Brothers suffered a loss of over $131,000 in connection with their Class Period purchases of PureCycle securities.  Boenig, the movant with the next largest loss, incurred a loss almost $22,000 smaller than that of the Ciecko Brothers.  As discussed in detail *infra* at Sections I.B.1.-2., Erste AM, the only movant alleging a greater financial interest than the Ciecko Brothers, is ineligible for consideration because its failure to comply with the PSLRA's Certification requirements or provide the Court with any meaningful information about itself renders it inadequate, and because its failure to demonstrate its standing to pursue fraud claims against the Defendants in this litigation subjects it to a disqualifying unique defense.

6

**2.      The Ciecko Brothers Satisfy The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the relief sought by the Class, the Ciecko Brothers have also made the requisite *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23. *See Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *Kaplan*, 240 F.R.D. at 94. First, the Ciecko Brothers' claims satisfy the typicality requirement of Rule 23(a)(3) because their claims against PureCycle and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See*, *e.g.*, *Prado-Steiman*, 221 F.3d at 1279 n.14; *Piven*, 137 F. Supp. 2d at 1306. Second, the Ciecko Brothers satisfy the adequacy requirement of Rule 23(a)(4) because their significant financial interest gives them a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Miller*, 2008 U.S. Dist. LEXIS 32271, at *19 (quoting *Weinberg v. Atlas Air Worldwide holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)). Moreover, as family members, the Ciecko Brothers constitute exactly the kind of group that courts routinely appoint as lead plaintiffs. *See*, *e.g.*, *McDermott Int'l*, 2009 U.S. Dist. LEXIS 21539, at *11-*12 ("The members of the Adams Family are not 'unrelated investors' grouped together by their lawyer for purposes of aggregating their losses and obtaining appointment as lead plaintiff. Thus there is no need for the Adams Family to 'proffer an evidentiary showing that unrelated members of a group will be able to function cohesively.'") (quoting *Varghese*, 589 F. Supp. 2d at 392) (internal citations omitted); *Beckerman v. Ener1 Inc.*, No. 11 Civ. 5794 (PAC), 2012 U.S. Dist. LEXIS 19972, at *12 (S.D.N.Y. Feb. 15, 2012) (finding that lead plaintiff movant groups "composed solely of family members[] present none of the concerns" raised by the appointment of groups consisting of unrelated individuals).

Further demonstrating their adequacy, the Ciecko Brothers have submitted a detailed Joint Declaration, in which the two brothers attest to, *inter alia*, their respective backgrounds, their understanding of the significance of their motion, their understanding of the responsibilities of lead

7

plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities on behalf of the Class, including by supervising Pomerantz, their chosen counsel in this action. *See generally* Dkt. No. 34-4.

Finally, the Ciecko Brothers have further demonstrated their adequacy by selecting Pomerantz—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently, as its firm resume reflects—to serve as Lead Counsel for the Class. *See* Dkt. No. 34-5.

* * * *

Because the Ciecko Brothers have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling the Ciecko Brothers to appointment as Lead Plaintiffs, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

### B. THE COMPETING MOTIONS SHOULD BE DENIED

#### 1. Erste AM Is Inadequate Under Rule 23

Although Erste AM has alleged a larger financial interest in this litigation than the Ciecko Brothers, the PSLRA mandates denial of its motion for failure to meet the second statutory criteria by demonstrating its adequacy within the meaning of Rule 23. Specifically, Erste AM has both failed to provide the Court with any significant information about itself ***and*** has submitted a deficient Certification that does not comply with the PSLRA's requirements.

While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by movants that have provided no meaningful

8

information about themselves. *See*, *e.g.*, *Piven.*, 137 F. Supp. 2d at 1305 (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *12-13 (N.D. Cal. Sept. 4, 2020) (denying motion by investors who "provided *no* information about themselves" with their motion papers, finding that group's subsequent proffer in additional filings was "conclusory and problematic" and reflected a "lack of involvement" in the litigation) (emphasis in original); *AT&T*, 2019 U.S. Dist. LEXIS 225777, at *5-6 (denying motion by movant that "failed to provide any information, beyond the name of a director, as to its business management, structure, or its experience with securities litigation"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-12 (N.D. Cal. Jan. 12, 2006) (rejecting investor's motion for appointment as lead plaintiff, despite a presumption in its favor for having the greatest financial interest in the litigation, after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 U.S. Dist. LEXIS 298359, at *13 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation"). Likewise, courts routinely deny lead plaintiff motions for failure to comply with the PSLRA's Certification requirements. *See*, *e.g.*, *Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-3244 (WJM), 2017 U.S. Dist. LEXIS 192673, at *8 (D.N.J. Nov. 21, 2017) (denying motion by lead plaintiff movants whose certifications were not made under penalty of perjury "as federal law required"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose

9

certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at \*16-\*17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

By the foregoing standards, Erste AM is plainly inadequate. Erste AM has provided the Court with no information about itself, apart from a single unsworn statement in its motion brief to the effect that it is "[b]ased in Vienna, Austria" and reciting its assets under management. This effective non-proffer gives the Court no facts with which to assess its adequacy—regarding, for example, its structure, management, or decision-making processes. This dearth of information is particularly problematic considering the questions that exist with respect to Erste AM's standing (as discussed *infra* at Section I.B.2.).

Moreover, the only sworn statement that Erste AM has provided in support of its motion, its Certification, fails to comply with the PSLRA's requirements. The statute clearly states that a party seeking appointment as Lead Plaintiff "shall provide a sworn certification, which shall be ***personally signed***" and, in relevant part, "***identifies any other action*** under this chapter, ***filed during the 3-year period preceding the date on which the certification is signed*** . . . in which the plaintiff has sought to serve as a representative party on behalf of a class". 15 U.S.C. § 78u-4(a)(2)(A)(v) (emphases added). Erste AM's certification is deficient twice over. First, the Certification is unsigned. Rather than submit a "personally signed" Certification pursuant to the PSLRA's instructions, Erste has provided an unsigned Certification bearing a notation to the effect that "[t]he electronic signatures of this document can be examined at the website of Rundfunk und Telekom Regulierungs-GmbH (https://www.signature.rtr.at/en/vd/Pruefund.html). Yet the

adverted-to website does not present any signature for examination or even reference either Erste AM or this litigation. Rather, it generically refers to providing "signature verification" services. Following the website's link to those purported services, the next page invites the user to "verify document signature/seal" by uploading a document. When the Ciecko Brothers' counsel attempted to follow these instructions by uploading the Certification filed by Erste AM for verification, on the possibility that the PDF might have contained some metadata that might register as a "signature", the website displayed the message: "Unable to find any signatures/seals."

**Document upload**

Please upload a signed/sealed document for verification.

Unable to find any signatures/seals.

document [ Choose File ] No file chosen

☐ Signature/Seal in separate file

[ Verify ]

In short, the Certification that Erste AM filed with its motion is unsigned on its face, and Erste AM has provided nothing to evidence the fact that any version of this Certification was reviewed and/or signed on behalf of Erste AM.

Erste AM's Certification is further deficient because it fails to disclose the lead plaintiff motion filed in *Nielsen* by Erste-Sparinvest. The PSLRA requires that a lead plaintiff movant file a Certification that, *inter alia*, "identifies any other [PSLRA] action . . . , filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class." 15 U.S.C. § 78u-4(a)(2)(A)(v). Erste AM's Certification in this litigation is dated June 8, 2021. *See* Dkt. No. 32-1 at *6. The *Nielsen* action was commenced on August 8, 2018, less than three years before June 8, 2021, and Erste-Sparinvest, then a subsidiary of Erste AM, filed a motion for appointment as Lead Plaintiff

11

on October 9, 2018.  *Nielsen* Dkt. No. 22.  Then, in November 2018, Erste-Sparinvest merged with Erste AM, at which point Erste AM assumed management for all assets previously managed by Erste-Sparinvest.                                    *See*                          https://www.erste-am.com/en/about/press/presseaussendungen/2018/11/06/erste-sparinvest-fusioniert-mit-erste-asset-management.    Accordingly, Erste-Sparinvest filed a "Notice of Name Change" on the *Nielsen* docket on November 14, 2018, reporting that "its name has been changed to Erste Asset Management GmbH" as a consequence of the merger.  *See Nielsen* Dkt. No. 51.  This filing demonstrated Erste AM's understanding that, at the very least, any lead plaintiff motion filed by Erste-Sparinvest should be attributed to Erste AM following the merger of the two entities.  In sum, the *Nielsen* lead plaintiff motion was, for all intents and purposes, filed by Erste AM, and within the past three years—yet Erste AM did ***not*** disclose its filing in *Nielsen* on its Certification in this litigation, as required by the PSLRA.

### 2.  Erste AM Does Not Have Article III Standing to Prosecute This Action

Although Erste AM has alleged a significant loss in connection with PureCycle's alleged fraud, it cannot trigger the "most adequate plaintiff" presumption because serious questions exist with respect to its standing to pursue claims in this litigation, which disqualify it from appointment as Lead Plaintiff pursuant to the PSLRA.  The PSLRA precludes appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine

that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at \*19 (N.D. Ill. Mar. 15, 2005).[3]

Erste AM has not established that it the owner of the PureCycle securities listed on its Certification, and thus has not established that it has satisfied the injury-in-fact requirement necessary to establish Article III standing.  The irreducible Constitutional minimum necessary to establish Article III standing "requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992).  In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which misconduct allegedly occurred.  *See, e.g.*, *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at \*12 (S.D.N.Y. 2011).

Here, although Erste AM has provided the Court with no meaningful information about itself other than the country in which it is located and its assets under management (*see* Dkt. No. 32 at 16), its name (Erste Asset Management GmbH) clearly indicates that it is an asset manager. Asset managers provide management services with respect to assets, such as securities, the

---

[3] *See also In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at \*22 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class."); *Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at \*11 (S.D.N.Y. June 27, 2016) ("'proof' of a non-speculative risk that the movant will not be adequate" sufficient to "rebut the presumption in favor of the movant with the greatest financial loss"); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) (denying motion for lead plaintiff appointment due to "information [that] raises more than the mere specter of . . . unique defenses").

beneficial owners of which are often other investors, not the asset manager.  The Certification and transaction history submitted by Erste AM reflect transactions in PureCycle securities on behalf of an entity described as "ERSTE AM FONDS NR. 566".  Dkt. No. 32-1.  However, nothing in Erste AM's motion papers establishes that Erste AM is, in fact, the beneficial owner of the PureCycle securities listed on its Certification.   Indeed, Erste has provided no information whatsoever regarding ERSTE AM FONDS NR. 566, the party that actually has Article III standing to pursue these claims.

Nor has Erste AM submitted assignments authorizing it to pursue claims on behalf of any funds.  When an investment company, investment advisor, or asset manager brings suit in federal court under the U.S. securities laws, it has Article III standing to sue for injuries to customers who are the beneficial owners of the securities at issue only if the company has "legal title to, or a proprietary interest in, the claim."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008).  The Article III standing doctrine is not satisfied if the company has simply "a power of attorney from its clients to bring th[e] lawsuit," but is not itself "the beneficial owner[ ] of the underlying securities."   *Id*. at 103.  *See generally CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010) (distinguishing, for standing purposes, between "an assignee" and "a mere attorney"); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) (distinguishing an assignment of a claim from a power of attorney).

*AT&T* is instructive.  There, the court considered a lead plaintiff motion filed by KBC Asset Management NV ("KBC"), a Belgian asset manager represented by Motley Rice LLC, Erste AM's counsel in this litigation.  In *AT&T*, as here, KBC did ***not*** establish in its moving papers that it was the beneficial owner of the securities listed on its PSLRA Certification.  Nor did KBC submit any

14

assignment of claims from the "fund" entities described in its Certification, just as Erste AM has likewise not provided any assignment from ERSTE AM FONDS NR. 566, the entity listed on its Certification here.  In reply papers filed two weeks after its motion papers, KBC submitted, for the first time, certain management agreements between KBC and the funds listed in its certification, claiming that assignments were unnecessary because the agreements authorized KBC to pursue fraud claims on behalf of the funds.  *AT&T* Dkt. No. 49.  Notwithstanding KBC's claims about its purported authority to sue, the court ultimately denied KBC's motion, finding that "KBC does ***not*** ***own*** the underlying securities and has ***not*** been assigned an ***ownership interest*** in the claims at issue" and was thus "not an adequate lead plaintiff because it was subject to a unique defense" regarding standing.  *AT&T*, 2019 U.S. Dist. LEXIS 225777, at *4-5.

When KBC moved for reconsideration, arguing for the first time that its standing to sue on behalf of the funds at issue derived from Belgian law, the court again found that "the risk that KBC may lack standing to pursue this action under controlling precedent is serious" and denied its reconsideration motion:

> Notwithstanding the fact that KBC failed to argue Belgian law in its original motion, the principle that federal law governs Article III standing (like any other doctrine dictated by the United States Constitution) is elementary. . . . Belgian law therefore cannot alter the legal standard by which Article III standing is determined, *i.e.*, the requirement that non-beneficial owners of securities must have a property right in the claims being asserted.  Instead, Belgian law is relevant only to establish the existence of the requisite property right.

> The declarations and other supporting documents provided by KBC continue to show, at a minimum, a non-speculative risk that KBC lacks a property interest in the asserted claims. . . .  None of the three management agreements confers on KBC any type of property right in legal claims—the agreements instead merely authorize and require KBC to exercise the Funds' rights on their behalf.  For that reason, the Court concludes that the standing defense that Defendants could raise in this case is non-speculative and therefore sufficient to rebut KBC's presumptive lead-plaintiff status.

15

*Gross v. AT&T Inc.*, 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 128615, at *7-8 (S.D.N.Y. July 31, 2019) (internal citations omitted).

Here, as in *AT&T*, Erste AM has neither demonstrated that it is the beneficial owner of the securities listed in its Certification nor submitted an assignment. KBC may not now attempt to supplement the record in this respect, because standing is assessed at the time the lawsuit is commenced. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Lujan*, 504 U.S. at 571 n. 4. Accordingly, Erste AM has failed to establish that it has Article III standing to bring securities fraud claims against the Defendants in this action, and the risk that Erste AM may be found to lack standing altogether, thus needlessly mandating the dismissal of the entire litigation to the obvious prejudice of the investor class, is clearly far more than mere speculation. *See*, *e.g.*, *Baydale*, 2009 U.S. Dist. LEXIS 71668, at *9 (denying lead plaintiff motion filed by asset manager that failed to demonstrate standing, finding that "if this Court were to appoint [movant] as lead plaintiff, 'it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal.'") (quoting *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009)); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114, 116 (S.D.N.Y. 2009) (finding that "an investment advisor without a valid of assignment of its clients' claims" "faces unique legal issues that other class members do not."). "In good conscience this Court cannot endanger this litigation by ignoring [these] issues". *Enron*, 206 F.R.D. at 456. The Class should not be saddled with a Lead Plaintiff subject to such lethal questions regarding its capacity to bring this lawsuit on its own behalf, let alone on behalf of the rest of the Class.

16

**3.    Boenig And The Wilemans Do Not Possess The Largest Financial Interest**

Neither Boenig nor the Wilemans may be appointed as Lead Plaintiff in this litigation because they do not possess the "largest financial interest" as required by the PSLRA (15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)), and thus they do not satisfy the first of the statutory criteria to be entitled to the "most adequate plaintiff" presumption. Here, as discussed above, the Ciecko Brothers clearly possess the largest financial interest in this litigation among eligible the eligible movants, and it is thus self-evident that Boenig and the Wilemans do not possess the largest financial interest. This fact alone mandates denial of their motions.

**III.   CONCLUSION**

For the foregoing reasons and the reasons set forth in their moving brief (Dkt. No. 33), the Ciecko Brothers respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Ciecko Brothers as Lead Plaintiffs for the Class; and (3) approving Lead Plaintiffs' selections of Pomerantz as Lead Counsel, and Miller Shah as Liaison Counsel, for the Class.

Dated:  July 26, 2021

**MILLER SHAH LLP**

By: */s/ Jayne A. Goldstein*
Jayne A. Goldstein
1625 N. Commerce Pkwy, Suite 320
Fort Lauderdale, Florida 33326
Telephone: (954) 903-3170
Facsimile: (866) 300-7367
jagoldstein@millershah.com

*Counsel for the Ciecko Brothers and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

*Counsel for the Ciecko Brothers and
Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for the Ciecko Brothers*

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein

19