UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| WILLIAM C. THEODORE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, BYRON ROTH, and TASMIN ETTEFAGH,<br><br>Defendants. | Case No. 6:21-cv-00809-PGB-GJK<br><br>**CLASS ACTION** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants PureCycle, Otworth, Dee, Brenner, and Ettefagh hereby submit this reply memorandum in support of their motion to dismiss (Doc. 93; *see also* Doc. 108).

**I.   Plaintiffs Fail to Identify a False or Misleading Statement or Omission[1]**

    **A.   Statements About PureCycle's Recycling Process Are Not Actionable**

Plaintiffs' allegations that Defendants inaccurately described PureCycle's recycling process are based on nothing more than speculation that PureCycle *may encounter* issues with its recycling process and ability to meet projections, which the Hindenburg Report does nothing to augment.[2] Doc. 104 at 18-19, 21-23. Defendants

---

[1] Plaintiffs concede Defendants cannot be liable for statements they did not make. Doc. 104 at 15 n.3.
[2] Plaintiffs challenge many statements describing PureCycle's recycling process as "ground-breaking," "revolutionary," and "proven" that are immaterial puffery. Doc. 93 at 8. Plaintiffs' cases do not hold otherwise and instead address misrepresentations of verifiable facts. *Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d 1244, 1257 (S.D. Fla. 2020) (misrepresented existence of relationships with other

1

have not argued that a plaintiff may never establish falsity by relying on a short-seller's report. *See* Doc. 104 at 18. Instead, the assertions in the Hindenburg Report are based purely on speculation, unreliable sources, and thus do not meet the PSLRA's standard for pleading falsity. *See* Doc. 93-1 at 11-15.

Unlike the Hindenburg Report, Plaintiffs' cited cases involve reports that revealed ***particularized facts from credible sources***. *In re Eros Int'l PLC Secs. Litig.*, No. 19-cv-14125, 2021 WL 1560728, at *9 (D.N.J. Apr. 20, 2021) (amount paid for film rights was "vastly larger" than seller's combined film budgets); *In re China Educ. Alliance, Inc. Secs. Litig.*, No. 10-cv-9239, 2011 WL 4978483, at *1-2 (C.D. Cal. Oct. 11, 2011) (defendant filed different financials with Chinese regulators and SEC); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 115-16 (S.D.N.Y. 2013) (touted distribution agreement with Apple, which Apple told short-seller did not exist).

Here, the Hindenburg Report relayed the opinions of supposed experts, ***who had no connection to PureCycle or firsthand knowledge of its operations***, that PureCycle's recycling process would not work.[3] Doc. 93-1 at 11-15. Although some of these so-called "experts" are identified by name, neither the Hindenburg Report nor the Complaint identifies the basis for their supposed knowledge of PureCycle's recycling process—as is required by the PSLRA. Doc. 93 at 20.[4] In fact, one source admitted

---

telecommunications providers); *Monroe Cty. Emps. Ret. Sys. v. S. Co.*, No. 17-cv-241, 2018 WL 1558577, at *21 (N.D. Ga. Mar. 29, 2018) (misrepresented progress of construction of company facility).

[3] As the Hindenburg Report explained, even this information was "obtained from public sources," with whom any investor could have consulted. Doc. 93-1 at 18.

[4] The Hindenburg Report identifies some sources as employees of other plastics companies, but the majority of the Report's criticism of PureCycle's recycling process is attributed to an ***unidentified*** "30-year expert on polymers." Doc. 93-1 at 11-15. Neither the Report nor the Complaint alleges facts

that he was "not an expert" in plastics recycling. Doc. 93-1 at 12. Whether alleged directly in the Complaint, or pulled from the Hindenburg Report, the allegations are wholly inadequate.

For the same reason, Defendants' forward-looking statements are anchored squarely within the PSLRA's safe harbor; there are no particularized facts to support Plaintiffs' argument that the risks had "already materialized." Doc. 93 at 10, 12.[5]

### B. Statements About Management's Experience Are Not Actionable

Plaintiffs fail to identify a single instance in which the Individual Defendants held themselves out as having a background in plastics recycling; thus these statements are not actionable. *See* Doc. 104 at 16-17, 19-20; Doc. 90 ¶¶ 40-41, 46.

Likewise, Defendants' vague puffery that its management was "experienced" did not trigger a duty to disclose that some executives previously managed companies that went out of business—some of which Plaintiffs allege did so years after PureCycle management departed. Doc. 93 at 15-18; Doc. 93-1 at 8-9; Doc. 90 ¶ 34. None of Plaintiffs' cases hold otherwise; they involved companies that promoted objective, verifiable facts that were contradicted by omitted information. *Finnerty v. Stiefel Labs., Inc.*, 756 F.3d 1310, 1317-20 (11th Cir. 2014) (having promoted status as private company, defendant had duty to disclose it would be acquired by public company

---

relating to the basis of this individual's supposed knowledge such as his or her experience, purported expertise, or access to PureCycle's operations or technology. *See* Doc. 93 at 20. And Plaintiffs ignore that Leidos Engineering, LLC issued an independent engineering report based on an actual review of the technology, which was disclosed in PureCycle's SEC filings. *See* Doc. 95-5.

[5] Plaintiffs concede they cannot base their claims on projections that have not materialized. Doc. 104 at 23. Instead, they argue Defendants had no basis for lofty projections given that the statements regarding PureCycle's "proven" product were untrue, *id.*, but allege no facts to support this claim.

before repurchasing stock); *Pub. Emps. Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, No. 20-cv-005, 2021 WL 4546926, at *15 (N.D. Ga. Sept. 29, 2021) (defendant "touted" operating margins that were driven by its intentional production of "scrap" products it never intended to sell); *In re Flowers Foods, Inc. Secs. Litig.*, No. 16-cv-222, 2018 WL 1558558, at *9 (M.D. Ga. Mar. 23, 2018) (defendant "touted" business model classifying distributors as independent contractors but failed to disclose that its outside counsel and IRS rejected classification).[6] Indeed, PureCycle's executives' managerial history was publicly available. Doc. 93-1 at 8-9; *Miyahira v. Vitacost.com, Inc.*, No. 10-cv-80644, 2011 WL 13136262, at *13 (S.D. Fla. Dec. 8, 2011) (no duty to disclose lack of industry experience).

As above, these allegations, based on speculation by anonymous employees where some PureCycle executives previously worked, should be disregarded. Neither the Report nor the Complaint provides the basis for these individuals' supposed knowledge (titles, employment dates, or access to documents) or adequately alleges that Defendants created the allegedly inaccurate projections or were even still employed when the companies went under. Doc. 93 at 17-18; Doc. 90 ¶¶ 34, 64-66.

## II. Plaintiffs Fail Adequately to Allege Scienter Against Any Defendant

Plaintiffs attempt to establish scienter based on the Individual Defendants' positions at PureCycle and "participation in press releases, earnings calls, and SEC

---

[6] Plaintiffs' own case expressly rejects the need to decide "whether, and under what circumstances, a previous bankruptcy in an unrelated business would be material." *SEC v. Merchant Cap., LLC*, 483 F.3d 747, 771 n.21 (11th Cir. 2007). As Plaintiffs emphasize, none of Defendants' former businesses were related to plastics, (Doc. 104 at 2, 9, 20), thus their managerial experience falls squarely *outside* the scenario addressed by *Merchant Capital*.

filings." Doc. 104 at 25-26.[7] However, none of Plaintiffs' cases relied solely on generalized allegations as asserted here; each case involved executives who had been put on notice of fraudulent conduct **by other employees or through written reports**. See *Mohawk Indus.*, 2021 WL 4546926, at *21-22 (employee warnings and written reports suggesting suspicious financial activity); *Flowers Foods*, 2018 WL 1558558, at *14 (adverse legal guidance by outside counsel and IRS); *Abrams v. MiMedx Grp., Inc.*, 37 F. Supp. 3d 1271, 1277 (N.D. Ga. 2014) (adverse inspection report from FDA); *In re Ebix Secs. Litig.*, 898 F. Supp. 2d 1325, 1345-46 (N.D. Ga. 2012) (employee warnings and reports from outside auditor); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 369-71 (S.D.N.Y. 2012) (employee warnings).[8] Plaintiffs fail to identify any PureCycle employees or internal company documents that supposedly notified Defendants of the allegedly misleading nature of their statements.

The "core operations" doctrine does not absolve Plaintiffs of their obligation to "allege specific facts establishing scienter as to each Defendant." *Flowers Foods*, 2018 WL 1558558, at *14. Instead, the doctrine merely "bolster[s] any inference of scienter when combined with Plaintiff[s'] other allegations," such as corroborating documents or confidential witnesses. *Mohawk Indus.*, 2021 WL 4546926, at *21. Plaintiffs fail to allege any particularized facts that the core operations doctrine can bolster.

---

[7] As Plaintiffs concede, they must allege Defendants had **actual knowledge** that their forward-looking statements were false—recklessness is insufficient. Doc. 104 at 23-24 n.13.
[8] Plaintiffs rely on *Skypoint Advisors, LLC v. 3 Amigos Productions LLC*, No. 18-cv-356, 2019 WL 3343933, at *3 (M.D. Fla. July 25, 2019), but there, the plaintiffs alleged concrete and indisputable facts such as the amount of money the defendants personally invested in their privately-owned company.

As set forth in Defendants' motion to dismiss, the more plausible inference is that Plaintiffs' underlying assertions regarding the recycling process are nothing more than rank speculation; Defendants issued robust disclosures regarding the risks facing PureCycle—none of which have materialized. Doc. 93 at 18-19.

### III. Plaintiffs Fail Adequately to Allege Loss Causation

The Eleventh Circuit has twice held that an unfavorable analyst's report is insufficient to demonstrate loss causation if: (1) the plaintiff alleges that the defendant's stock traded in an efficient market (as here, *see* Doc. 90 ¶¶ 83-84), and (2) the report relies on publicly available information (as Hindenburg says that it did, *see* Doc. 93-1 at 18). *Meyer v. Greene*, 710 F.3d 1189, 1197-98 (11th Cir. 2013); *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 863-64 (11th Cir. 2015).

In *Meyer*, the Eleventh Circuit noted in *dicta* that an unfavorable analyst's report could trigger loss causation in certain circumstances, but the exception it envisioned is not present here. *See Meyer*, 710 F.3d at 1199 n.10 (noting possibility that "there may theoretically be some form of opinion [in a report] that is factual or revelatory in nature such that it qualifies as a corrective disclosure"). The sole example Plaintiffs cite from within the Eleventh Circuit, *In re Health Ins. Innovations Secs. Litig.*, No. 17-cv-2186, 2019 WL 3940842 (M.D. Fla. June 28, 2019), is inapposite. In accordance with *Meyer's* caveat, there, the report revealed new concrete factual information: correspondence between the defendant and a state regulatory agency that was "previously undisclosed." *Id.* at *32. This stands in marked contrast to the Hindenburg Report, which was based on "mere repackaging of already-public

6

information," of the type rejected by the Eleventh Circuit, and speculative opinions from unreliable sources. *Meyer*, 710 F.3d at 1199; *Sapssov*, 608 F. App'x at 863.[9]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated this 18th day of January, 2022.

| | |
|---|---|
| **DECHERT LLP** | **STOVASH, CASE & TINGLEY, P.A.** |
| | Amy S. Tingley |
| /s/ *Joni S. Jacobsen* | Florida Bar No. 068841 |
| David H. Kistenbroker (*pro hac vice*) | The VUE at Lake Eola |
| Joni S. Jacobsen (*pro hac vice*) | 220 North Rosalind Avenue |
| 35 West Wacker Drive, Suite 3400 | Orlando, Florida 32801 |
| Chicago, IL 60601 | Telephone: 407/316-0393 |
| Telephone: 312/646-5800 | atingley@sctlaw.com |
| 312/646-5858 (fax) | |
| david.kistenbroker@dechert.com | *Attorneys for Defendants PureCycle* |
| joni.jacobsen@dechert.com | *Technologies, Inc., Michael Otworth,* |
| | *Michael E. Dee, David Brenner, and* |
| | *Tasmin Ettefagh* |

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, the foregoing was filed electronically using the CM/ECF system, which will send notice by e-mail to all parties.

/s/ *Joni S. Jacobsen*
Joni S. Jacobsen

---

[9] Plaintiffs rely on *In re Wells Fargo & Co. Secs. Litig.*, No. 20-cv-4494, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021), to argue that Defendants' loss causation argument is an impermissible "truth on the market defense." Doc. 104 at 27-28. Not so; Defendants' argument directly undermines Plaintiffs' contention that previously withheld information caused Plaintiffs' loss. Moreover, *Wells Fargo* did not address loss causation—it addressed the separate element of falsity—and it provides no reason to reject the Eleventh Circuit's holdings in *Meyer* and *Sapssov*. *Wells Fargo*, 2021 WL 4482102, at *21.