UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM C. THEODORE,
individually and on behalf of all
others similarly situated,

    Plaintiffs,

v.

PURECYCLE TECHNOLOGIES, INC.,
MICHAEL OTWORTH, MICHAEL E.
DEE, DAVID BRENNER, BYRON
ROTH and TASMIN ETTEFAGH,

    Defendants.

Case No. 6:21-cv-00809-PGB-GJK

_____/

**DEFENDANT BYRON ROTH'S REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**[1]

**A.  *Plaintiffs Fail to Identify Any Actionable Statement Attributable to Mr. Roth.***

Mr. Roth has argued that the CAC's improper lumping together of all named defendants for purposes of attributing all of the challenged statements to Mr. Roth runs afoul of the "group pleading" doctrine.  (Roth Mot. 7-8.)  Plaintiffs' error is "starkest with respect to the alleged statements on March 18 and April 21, 2021, since the merger had already closed by that point in time, and Mr. Roth held no management or board position with PureCycle upon the merger."  (*Id.* at 8.)  Because they do not challenge this point, Plaintiffs concede that Mr. Roth cannot be

---

[1] Mr. Roth submits this reply pursuant to Local Rule 3.01(d) and this Court's January 6, 2022 Order granting defendant Byron Roth's motion for leave (Dkt. No. 108).  Capitalized terms not otherwise defined herein have the same meanings as set forth in Mr. Roth's motion to dismiss (Dkt. No. 95, hereinafter "Roth Mot.").

liable for any statement within the April 21, 2021 press release, or any statement within the March 18, 2021 press release other than the sole quote attributed to him.

What remains, then, are the following statements: a "direct quote" within the November 16, 2020 press release (CAC ¶ 39); a separate "direct quote" within the March 18, 2021 press release (*id.* ¶ 54); and a single passage from the November 20, 2020 Form S-4 Registration Statement, as Mr. Roth was a "signatory" thereto (*id.* ¶ 48). (Pls.' Opp. 14.)[2] However, none of these statements are actionable, either.[3]

Plaintiffs argue that "[c]ontext is important." (Pls.' Opp. 16.) Mr. Roth agrees. Whereas Plaintiffs say that the statements that PureCycle's technology "will be transformative in plastic recycling and help companies meet their sustainability goals" (CAC ¶ 39), and that the technology is "revolutionary" (*id.* ¶ 54), do not qualify for protection under the PSLRA's safe harbor because they allegedly misrepresent current facts and "Defendant Roth does not identify any meaningful cautionary language that accompanied his statements," Plaintiffs altogether ignore both the prefatory words ("We believe" and "We are confident") and the sections of the press releases entitled, "Forward Looking Statements." (Roth Mot. Ex. 2, at 4; Dkt. No. 93, Ex. 8, at 4-6.)

---

[2] "Pls.' Opp." refers to Lead Plaintiffs' Memorandum of Law in Opposition to Defendant Byron Roth's Motion to Dismiss Consolidated Amended Class Action Complaint (Dkt. No. 105).

[3] As a threshold matter, Plaintiffs wrongly state that "Defendant Roth does not challenge, and thus concedes, the falsity of his March 18, 2021 statements and thus waives any argument otherwise." (Pls.' Opp. 17.) Mr. Roth expressly adopted and incorporated the arguments that the other defendants made in their separate motion to dismiss regarding Plaintiffs' failure to allege any actionable statement within the March 18, 2021 press release. (Roth Mot. 8 n.3, 10 & n.4.) The same is true with respect to Plaintiffs' comment that Mr. Roth failed to argue that Plaintiffs do not adequately plead loss causation. (*Compare* Pls.' Opp. 20 n.5, *with* Roth Mot. 10 & n.4.)

Indeed, the November 16, 2020, and March 18, 2021 press releases included the following cautionary language that makes clear Mr. Roth's quotes qualify for protection as forward-looking statements and further disclosed the *very risks* that Plaintiffs complain of regarding PureCycle's ability to scale production:

> Certain statements made in this release are "forward looking statements" within the meaning of the "safe harbor" provisions of the United States Private Securities Litigation Reform Act of 1995, including statements about . . . the anticipated benefits of the business combination, and the financial condition, results of operations, earnings outlook and prospects of Roth CH and/or PCT . . . . When used in this press release, the words "plan," "*believe*," . . . and other similar words and expressions . . . *are intended to identify forward-looking statements* . . . . These forward-looking statements involve a number of risks, uncertainties or other assumptions that may cause actual results or performance to be materially different from those expressed or implied by these forward-looking statements. *These risks and uncertainties include, but are not limited to* . . . *PCT's ability to scale and build the Ironton plant in a timely and cost-effective manner* . . . .

(Roth Mot. Ex. 2, at 4 (emphasis added); Dkt. No. 93, Ex. 8, at 4-6.) Thus, in light of their full context, no reasonable investor could have interpreted Mr. Roth's quotes as "tangible, verifiable" representations of current fact, as opposed to mere puffery and non-actionable expressions of hope. Plaintiffs' cited caselaw, therefore, is inapposite.[4]

---

[4] Relying on *In re PSS World Medical, Inc. Securities Litigation*, 250 F. Supp. 2d 1335 (M.D. Fla. 2002), Plaintiffs argue, without support, that the CAC includes "allegations that none of the Defendants could have reasonably believed their statements." (Pls.' Opp. 16.) However, whereas plaintiffs in *In re PSS World Medical* alleged that defendants made the statements at issue there with "actual knowledge" that they were "cooking the books," 250 F. Supp. 2d at 1351, the CAC does not contain any specific allegations that Mr. Roth had actual knowledge regarding the alleged falsity of his statements. Moreover, the court in *In re PSS World Medical* found that the challenged statements were not forward looking and did not contain sufficient cautionary language "that would cloak the Defendants with special protection" at the pleadings stage, and that the statements concerned "primarily 'hard' financial reporting results." *Id.* Accordingly, Plaintiffs' reliance is misplaced.

3

Plaintiffs similarly ignore that the sole passage from the November 20, 2020 Form S-4 Registration Statement that they take issue with, (*see* CAC ¶ 48), was accompanied by meaningful cautionary language and specific risk disclosures regarding PureCycle's abilities to obtain suitable feedstock supply and commercially scale production. Rather than "guarantee[ing]" that PureCycle would be able to commercially scale its patented technology and that its feedstock supply presented no risks, (*see* Pls.' Opp. 16), the November 20, 2020 Form S-4 Registration Statement states just the opposite: "There is ***no guarantee*** the Technology is scalable to commercial-scale operation. . . . PCT ***may not be successful*** in finding future strategic partners for continuing development of additional offtake and feedstock opportunities." (Roth Mot. Ex. 3, at 16, 18-19, 21-24.)

In light of these specific disclosures, no reasonable investor could have interpreted the reference to PureCycle's "proven technology" as a "guarantee" that PureCycle would succeed in commercially scaling its production and generating future profits.[5] The cases Plaintiffs rely on do not suggest otherwise.[6]

---

[5] In continuing to parrot the Hindenburg Hit Piece's allegation that PureCycle's patented technology is not viable at commercial scale, Plaintiffs utterly ignore the independent engineering report issued by Leidos Engineering, LLC, which was disclosed in PureCycle's SEC filings. (*See* Roth Mot. 6 & Ex. 5.)

[6] *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2011) ("No reasonable investor would believe that a conclusory, but apparently accurate, report of company-wide revenue growth naturally implied that all was well within every component of the company that could possibly affect revenue in the future."); *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc) ("Disclosing that Polavision was being sold below cost was not misleading by reason of not saying how much below. Nor was it misleading not to report the number of sales, or that they were below expectations."); *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986) (dealing with an issue not relevant here, namely, whether an accountant had a duty to disclose alleged fraud); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 247 (5th Cir. 2009) (rejecting defendant's

### B. *Plaintiffs' Conclusory Allegations of Scienter Are Woefully Insufficient.*

Plaintiffs' allegations of wrongdoing are based entirely on the Hindenburg Hit Piece's rank speculation with respect to the conduct of PureCycle's management team. Mr. Roth, however, has never been part of PureCycle's management team. Furthermore, the mere fact that Mr. Roth signed SEC filings on behalf of ROCH does not suffice to establish scienter, and neither does Plaintiffs' improper group pleading. (Roth Mot. 11.)

Plaintiffs resort to arguing that "Defendant Roth would have had access to material information contradicting his public statements" as part of his purported "substantial due diligence" into PureCycle. (Pls.' Opp. 18.) But this amounts merely to further rank speculation and is not supported by any specific allegations in the CAC that Mr. Roth had actual knowledge contradicting his public statements. Accordingly, Plaintiffs' reliance on *In re Equifax Inc. Securities Litigation* is misplaced. *See* 357 F. Supp. 3d 1189, 1233-34 (N.D. Ga. 2019) (allegations of specific warnings that defendants received gave rise to strong inference of scienter with respect to certain defendants *but not others*); *id.* at 1236 ("The Plaintiff has not adequately pleaded that Gamble, Ploder or Dodge ever received any of these purported warnings . . . . Instead, the Plaintiff relies upon general allegations that Equifax 'management' was warned but did not heed experts' advice. Such generalities do not establish a strong inference of scienter.").

---

safe harbor argument where "misrepresentations and omissions were not accompanied by specific, concrete explanations that clearly identified and quantified the clearly present financial dangers").

Neither do Plaintiffs' improper character assassinations of Mr. Roth give rise to a strong inference of scienter. Plaintiffs' reference to certain *unrelated* regulatory matters that show up in **Roth Capital's** BrokerCheck report has nothing to do with the claims asserted in the CAC against Mr. Roth individually. None of those regulatory matters were against Mr. Roth personally, (*see* Roth Mot. 12 n.5), the vast majority were mutually resolved without any admission of wrongdoing by Roth Capital, and none involved allegations akin to those raised in the CAC.[7] Plaintiffs, therefore, fail to allege "related and repeated conduct" or a "pattern of fraud" that might give rise to an inference of scienter. *See Takata v. Riot Blockchain, Inc.*, No. 18 Civ. 2293, 2020 U.S. Dist. LEXIS 75924, at *51-52 (D.N.J. Apr. 30, 2020).

Finally, aside from running online searches for peer reviewed studies mentioning PureCycle's technology (CAC ¶ 33), and confirming publicly available information regarding the post-IPO performance of other companies having nothing to do with Mr. Roth (*id.* ¶ 34), the CAC contains nothing to support the notion that Plaintiffs relied on their own independent investigation as opposed to adopting the Hindenburg Hit Piece's allegations as gospel. In fact, the public record belies Plaintiffs' counsel's conclusory allegations of having conducted their own investigation. For example, whereas Plaintiffs parrot the Hindenburg Hit Piece's allegation that "Roth Capital and Craig-Hallum are the only two investment banks covering PureCycle, despite sponsoring the deal, and put 'buy' ratings on the

---

[7] *See* https://files.brokercheck.finra.org/firm/firm_15407.pdf (last visited Jan. 18, 2022).

Company" (*see* Pls.' Opp. 19; CAC ¶ 61), in fact, Oppenheimer initiated coverage with an "outperform" rating on June 8, 2021, Jefferies initiated coverage with a "buy" rating on August 26, 2021, and Cowen initiated coverage with an "outperform" rating on September 23, 2021.[8] Plaintiffs' failure to locate these prominent analysts' reports calls into question their alleged independent "investigation."

For the foregoing additional reasons, Mr. Roth respectfully requests that his motion be granted and an order entered dismissing the CAC in its entirety.

Dated: January 18, 2022

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By:     /s/ *Brian C. Frontino*
        Brian C. Frontino

Brian C. Frontino (Fla. Bar No. 95200)
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone: (305) 358-9900
Email: bfrontino@stroock.com

John R. Loftus (admitted *pro hac vice*)
Christine E. Ellice (admitted *pro hac vice*)
2029 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5800
Email: jloftus@stroock.com
       cellice@stroock.com

*Attorneys for Defendant Byron Roth*

---

[8] *See* Exhibits A-B, attached hereto; *see also* https://www.oppenheimer.com/news-media/2021/insight/june/commercializing-a-breakthrough-technology-to-recycle-plastic-print.aspx (last visited Jan. 18, 2022).

7

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, a copy of the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

                                                */s/ Brian C. Frontino*
                                                Brian C. Frontino