**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| WILLIAM C. THEODORE, individually and on behalf of all others similarly situated, <br><br>          Plaintiffs,<br><br> v.<br><br> PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, BYRON ROTH, and TAMSIN ETTEFAGH,<br><br>          Defendants. | Case No. 6:21-cv-00809-PGB-GJK<br><br>**CLASS ACTION** |

**DEFENDANTS' MOTION TO DISMISS CO-LEAD PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants PureCycle Technologies, Inc. ("PureCycle"), Michael Otworth,

Michael Dee, David Brenner, and Tamsin Ettefagh (collectively, "Defendants"), by

and through their undersigned attorneys and pursuant to Federal Rules of Civil

Procedure 9(b) and 12(b)(6), hereby move this Court for an order dismissing the

Consolidated Second Amended Class Action Complaint for Violations of the Federal

Securities Laws (Doc. 113, hereinafter, "SAC") filed by Co-Lead Plaintiffs Robert

Ciecko and Mariusz Ciecko ("Plaintiffs"), for failure to state a claim upon which relief

can be granted.  Defendants' motion is supported by the incorporated memorandum

of law and the attached exhibits.

1

## PRELIMINARY STATEMENT

In its August 4, 2022 order ("Order"), which dismissed the first amended complaint ("FAC"), this Court determined that Plaintiffs failed to plead with particularity (1) the existence of any material misrepresentation or omission or (2) that any Defendant made any misrepresentation or omission with scienter. Plaintiffs' second amended complaint ("SAC") does *nothing* to remedy these issues and should similarly be dismissed.

The vast majority of the challenged statements relate to the technology itself, but Plaintiffs do not actually allege that such statements were false. To the extent that Plaintiffs are arguing that Defendants misrepresented the scalability of the recycling process, their claims fail because the Final Proxy Statement specifically informed investors that "ability to scale" was a known risk factor. And, while Plaintiffs make the conclusory assertion that the technology is "unproven" and "dangerous," they fail to allege particularized facts to support these assertions. Moreover, despite the Court's finding that Plaintiffs had failed to allege scienter, *Plaintiffs do not provide any new allegations regarding Defendants' purported scienter whatsoever.*

Plaintiffs similarly fail to adequately allege that any further disclosure was required relating to Defendants Otworth's, Brenner's, or Dee's business experience. Plaintiffs complain that PureCycle never disclosed that these individuals lacked prior experience in polypropylene recycling—but it is undisputed that Defendants never suggested otherwise. Plaintiffs also misleadingly suggest that Defendants stated that Otworth, Brenner, and Dee had participated in "six successful IPOs" with prior

businesses and, thus, had a duty to disclose that each of the businesses suffered financial hardships, but PureCycle said no such thing. This statement was made by a separate entity in an unrelated press release four years prior to the March 17, 2021, reverse merger at issue (the "Merger"). Moreover, of the six IPOs Plaintiffs reference: (i) Plaintiffs do not allege that Defendants had any involvement in four of the IPOs; (ii) for the fifth IPO, Plaintiffs allege (incorrectly) that Brenner was the CEO but further allege he left that company *nine years* before that company suffered the alleged financial harm; and (iii) for the sixth IPO, Plaintiffs merely allege Otworth held an unknown "C-level role" for some unspecified time period, but do not allege that he caused the Company to be delisted in 2008—*twelve years* prior to the Merger. Plaintiffs also fail to allege Defendants knew they had a duty to disclose this stale information but knowingly failed to disclose it to investors.

Finally, in a tacit admission that they know they cannot satisfy the heightened pleading standards under Rule 9(b) and the PSLRA, Plaintiffs repackage the exact same securities fraud claims under Section 14(a) of the Securities Exchange Act and suggest disingenuously that these same securities fraud claims now sound in negligence. Such gamesmanship is not permitted. Claims that sound in fraud must satisfy the heightened pleading standards even when a litigant attempts to dress those fraud claims up as something else. In any event, Plaintiffs fail to state a Section 14(a) claim under any standard.

This Court already gave Plaintiffs multiple opportunities to turn a short-seller's report into a securities fraud complaint that could satisfy the heightened pleading

3

requirements under Rule 9(b) and the PSLRA. At this point, Plaintiffs' serial failure to do so warrants dismissal with prejudice.

**STATEMENT OF FACTS**[1]

The factual allegations underlying Plaintiffs' claims have not changed materially. Plaintiffs continue to allege that PureCycle is a recycling services company that focuses on recycling the waste from a certain type of plastic, polypropylene, into an ultra-pure recycled form, using technology licensed from Procter & Gamble ("P&G"). SAC ¶¶ 3, 37. As was disclosed publicly, this recycling process has been in development for over eight years and successfully has produced over 1,000 pounds of this ultra-pure recycled polypropylene ("UPRP") in more than 350 tests. *Id.* ¶ 63.

In the SAC, Plaintiffs again allege that the Defendants misrepresented or omitted material facts in connection with a March 17, 2021, Merger between PureCycle and a publicly-traded special purpose acquisition company named Roth CH Acquisition I Co. ("ROCH"). SAC ¶ 22 Such alleged misrepresentations and omissions purportedly appeared in the following materials (collectively, the "Solicitation Materials"): (1) a November 16, 2020 press release; (2) transcript and slides from a November 16 webinar presentation; (3) the November 16, 2020 preliminary proxy statement for the Merger; (4) the November 20, 2020 preliminary

---

[1] This statement of facts is based on the SAC and publicly available information referenced in Plaintiffs' Complaint, including PureCycle's stock price, all of which are properly considered on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Order at 10 n.5.

4

registration statement on Form S-4 ; and (5) the February 12, 2021 amended proxy statement for the Merger.[2]   SAC ¶¶ 53-74.

In April 2021, the month following the Merger, PureCycle stock traded between $23.15 and $29.02 per share.[3]   However, on May 6, 2021, a company called Hindenburg Research ("Hindenburg"), which held a significant short position in PureCycle and thus stood to profit from a temporary drop in the stock price, published a report (the "Report") that criticized both the recycling process and the business experience of certain members of PureCycle's management.   These criticisms were cobbled together primarily from public sources, but also from purported statements by (i) anonymous former employees *who never worked for PureCycle*; (ii) competitors; and (iii) an unnamed "expert on polymers."   Significantly, Hindenburg did not purport to have spoken with *any current or former PureCycle employees or any expert with access to PureCycle's information*. Ex. 1 at 9-15.[4]  Nevertheless, the Report achieved Hindenburg's

---

[2] Plaintiffs' claims also appear to be based, at least partially, on statements made in an April 21, 2021 press release even though such statements could not possibly have had any effect on any shareholders' votes prior to the Merger on March 18, 2021. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (securities fraud requires proof of reliance on alleged misrepresentation).

[3] *See* PureCycle Stock Price, Yahoo Finance, *available at* https://tinyurl.com/28d8dnx7

[4] Respectfully, Defendants maintain that because the Report is not based on *any* inside knowledge, it cannot constitute a corrective disclosure, and the assertions made therein are not sufficiently reliable to suggest that any prior statement by the Company was false or misleading or made with scienter.  To hold otherwise would imply that any unaffiliated third party could issue a "corrective disclosure" about any Company, giving birth to meritless securities fraud claims based only on speculation.  It would also undermine the well-established requirement that plaintiffs plead sufficient information concerning any confidential witnesses' position and dates of employment to allow the court to ascertain the reliability of their statements. *See* ECF 93 at 13-15. However, Defendants understand that the Court believes the reliability of the Report cannot be addressed at the pleading stage and, thus, Defendants expressly preserve this

desired outcome: the stock fell from $24.59 on May 5 to $14.83 on May 6, which allowed Hindenburg to reap substantial rewards on its short position before the stock fully recovered just one month later.[5]

Relying solely on the Report, and not any statement or document made by any representative of PureCycle, Plaintiffs attempt, but fail, to assert claims under Section 10(b), 14(a), and 20(a) of the Securities Exchange Act.

## **THIS COURT'S PRIOR RULING**

On August 4, 2022, this Court dismissed all claims in the FAC for multiple, independently sufficient reasons. *First*, this Court held that Plaintiffs' "disorganized pleading . . . fails to meet the standard of Rule 9(b) as required for a securities fraud claim and must be dismissed without prejudice." Order at 8-9. "Upon repleader, Plaintiffs should be more cognizant in their pleading to specify what statements are being challenged and why." *Id.* at 9 n. 4. *Second*, this Court dismissed Plaintiffs' securities fraud claims because "even considering the allegations as a whole, the Complaint fails to meet the high pleading standard for scienter." *Id*. at 30. Specifically, this Court held that "it is insufficient to merely rely on a defendant's position in the company without alleging with more specificity what information they had received" and Plaintiffs failed to allege "that either an employee, government

---

argument. for further proceedings, if necessary.

[5] *See* PureCycle Stock Price, Yahoo Finance, *available at* https://tinyurl.com/28d8dnx7 (stock recovered to $25.14, exceeding May 5, 2021, closing price, on June 23, 2021).

action, or report placed the executives on notice" of any alleged issue requiring disclosure. *Id.* at 31-32. *Third*, this Court dismissed Plaintiffs' securities fraud claims to the extent they were based on statements regarding PureCycle's "future financial projections and business plans"—including the "availability of feedstock in the future," which "cannot be determined by present existing conditions"—because such statements were "protected under the PSLRA's safe harbor." *Id.* at 24-27 (quotation omitted).[6] Lastly, because the securities fraud claims were dismissed in their entirety, this Court dismissed the Section 20(a) as well. *Id*. at 40.

## ARGUMENT

### I.    The SAC Fails To Cure The Fatal Defects This Court Already Recognized In Plaintiffs' Securities Fraud Claims.

It is undisputed that to survive a motion to dismiss, Plaintiffs must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called loss causation." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (quotation omitted). Just like in the FAC, Plaintiffs fail, once again, to adequately allege the first two elements in the SAC.[7]

---

[6] To the extent Plaintiffs continue to assert claims based on financial projections or the availability of feedstock, *e.g.*, SAC ¶¶ 44-46, they fail as a matter of law under the Court's Order.

[7] Respectfully, Defendants continue to believe Plaintiffs also have failed to plead loss causation for the reasons stated in their motion to dismiss the FAC. However, because this Court already declined to dismiss the FAC on this basis, Defendants do not repeat those arguments but expressly preserve all arguments made in the motion to dismiss the FAC.

As this Court has already recognized, the first and second elements must both be pleaded with particularity under Fed. R. Civ. P. 9(b) and the PSLRA.  Order at 5-6.  For the first element, Plaintiffs must "state with particularity the circumstances constituting fraud or mistake."  *Id.* (quoting Fed. R. Civ. P. 9(b)).  Plaintiffs must further "'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation . . . is made on information and believe, [they] must state with particularity all facts on which that belief is formed.'"  *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).

For the second element, "the complaint must 'state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind' 'with respect to each act or omission.'"  *Id.*  This "very high" standard requires Plaintiffs to demonstrate that "Defendants possessed knowledge of facts or access to information contradicting their public statements."  Order at 31 (quoting *In re Equifax Inc. Sec. Litig.,* 357 F. Supp. 3d 1189, 1233 (N.D. Ga. 2019)).

Plaintiffs' claims appear to be based on two categories of alleged misrepresentations: statements regarding (1) the commercial viability of PureCycle's recycling process; and (2) the experience and qualifications of some of PureCycle's management team.  As demonstrated below, for each category, Plaintiffs fail to allege

an actionable false or misleading statement or omission that was made with scienter. The SAC should be dismissed against all Defendants.[8]

### A.    Plaintiffs Fail To Plead With Particularity Any Securities Fraud Claim With Respect To The Recycling Process

Plaintiffs' claims primarily are based on baseless speculation lifted out of the Report regarding PureCycle's recycling process.  But Plaintiffs have failed to allege with particularity that Defendants made any false or misleading statement or omission about that process, let alone that these non-existent false or misleading statements were made with scienter.  The SAC fails to resolve these fatal issues.

#### 1.    *Plaintiffs Fail To Plead With Specificity That Any Statement About The Recycling Process Was False Or Misleading.*

In the Order, this Court sorted Plaintiffs' extensive block quotes in the FAC into statements amounting to non-actionable puffery and statements that were not puffery because they included "'tangible, verifiable facts.'"  Order at 19-22 (quoting *Tung v. Dycom Indus.*, 454 F. Supp. 1244, 1257 (S.D. Fla. 2020)).  Unsurprisingly, Plaintiffs now allege that their claims are based on the latter statements.  But a statement is not an actionable misrepresentation simply because it is not puffery.  With respect to each individual statement, Plaintiffs still bear the burden of pleading with particularity *why* the "tangible, verifiable facts" in those statements are false or misleading.  Order at 9 n. 4 ("Upon repleader, Plaintiffs should be more cognizant in their pleading to specify

---

[8] Because the Company "has no 'mind of [its] own' and it fails to plead scienter as to the individual [] Defendants, it fails to plead scienter to PureCycle Inc. as well." Order at 34.

what statements are being challenged *and why*") (emphasis added).  Plaintiffs ignore this burden entirely.

The SAC clarifies that Plaintiffs base their claims on the statements from the Solicitation Materials listed in paragraphs 53 through 74 of the SAC, the vast majority of which relate to the technology itself.  Such statements include, for example, accurate representations that the process (i) has already made over 1,000 pounds of "virgin-quality UPRP pellets," (ii) uses "significantly less energy and reduce[s] production costs" than other alternatives and minimizes "negative environmental impacts," and (iii) has been "tested and validated by P&G, prospective customers and third party engineering specialists."  *See, e.g.*, SAC ¶¶ 63, 65, 67, 69, 73.  Rather than meet their burden of explaining specifically *why* each individual statement is false, Plaintiffs instead provide blanket assertions that all of these statements are misleading for the same, generalized reasons: "the technology underlying the process is unproven," the "flammable pressurized process is not yet functional—especially at scale—and is dangerous, the Company faces obstacles to obtaining the quantity and quality of feedstock it needs," and the patent underlying the technology "is based on prior discoveries that never reached commercial scale."  *See* SAC ¶ 54; *see also* ¶¶ 59, 62, 64, 66, 70, 74.  *Notably, none of the challenged statements are alleged to be false*, and Plaintiffs do not come close to explaining why any individual statement is misleading.

Indeed, Plaintiffs do not dispute that PureCycle's technology *does* recycle polypropylene to a virgin-like state, nor do they dispute that the technology is more energy efficient and environmentally friendly than available alternatives. Likewise,

10

they do not dispute that this technology went through "350 laboratory tests" and produced "over 1,000 pounds of UPRP," nor that these tests have been validated by P&G, technical consultants, strategic partners, and initial customers. *Id.* ¶ 63. "Factual recitations of past [successes], so long as they are accurate, do not create liability under Section 10(b)." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2011) (quotation omitted).

The closest Plaintiffs come to a factual allegation that any statement is false or misleading, or that any material information has been omitted, is their conclusory assertions that the technology is "unproven," "not yet functional," and "dangerous" because it may present "serious issues even at lab scale," due to its "flammable pressurized process." SAC ¶ 54. But not only do Plaintiffs fail to allege any particularized facts to support these assertions, the process's *proven functionality* is demonstrated by the undisputed 350 lab tests and successful production of over 1,000 pounds of UPRP, described above.[9] As for Plaintiffs' insinuation of safety concerns, *neither Plaintiffs nor the Report suggest that there has ever been any safety issue with the process in the eight years it was developed by P&G or the five years it was refined by PureCycle.* Other than generalized allegations that could be levied at *any* company that incorporates natural gasses in its products, the SAC fails to provide any factual basis for its

---

[9] The SAC cites a presentation by John Layman, a "senior scientist at P&G who developed the technology." SAC ¶ 45. But the SAC fails to acknowledge, as detailed in that presentation, that Layman promoted the viability of this technology and explained that P&G only declined to market the technology on their own because developing plastics is not part of P&G's core business. *See https://purecycletech.com/2020/11/frequently-asked-questions-about-pcts-purification-technology/.*

hyperbolic assertions that this technology is "dangerous," and thus fails to identify any undisclosed material information that Defendants had a duty to disclose. SAC ¶¶ 6, 43. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 12745 (11th Cir. 2016) (duty of disclosure arises only where "necessary in order to make the statements made in the light of the circumstances under which they were made, no misleading") (quoting 17 CFR ¶ 240.10b-5(b)).

Unable to identify a false or misleading statement relating to the process working in laboratory and testing environments or any actionable omission regarding safety or quality, Plaintiffs attempt to focus on whether the process will be economical *at commercial scale*. *See e.g.*, SAC ¶ 54 (alleging "the economics of conducting the process *at commercial scale* are cost prohibitive;" "the patent underlying the technology is based on prior discoveries *that never reached commercial scale*.") (emphasis added). However, to the extent that Plaintiffs are arguing that Defendants misrepresented the scalability of the recycling process, their claims fail as a matter of law. The Final Proxy Statement contains an independent section (not mentioned in the SAC) that squarely addresses this issue, and informed investors that "ability to scale" was a known risk factor. *See* Ex. 2 at 23. The Proxy stated explicitly that "[t]here is no guarantee the Technology is scalable to commercial-scale operation." *Id.* Plaintiffs cannot base a securities fraud claim on a known risk that was disclosed to shareholders. *See, e.g., Crowell v. Morgan, Stanley, Dean Witter Services Co., Inc.,* 87 F. Supp.2d 1287, 1290-91 (S.D. Fla. 2000) (where defendants "fully disclose[] the risks with meaningful

12

cautionary statements, the courts may find that alleged misrepresentation insufficient to form the basis of a fraud claim.").[10]

### 2. Plaintiffs Fail To Plead Scienter With Particularity

Even if Plaintiffs managed to plead with particularity a false or misleading statement or omission regarding the recycling process, Plaintiffs fail to meet the "very high" standard of alleging that any Defendant acted with scienter. Order at 23, 35. This Court already determined that, in the FAC, Plaintiffs were "attempting to show scienter for each PureCycle Defendant by citing to inference upon inference without identifying any specific facts that support the inference" but "[t]hese conclusory allegations are exactly what the PSLRA's pleading standard for scienter is designed to avoid." *Id.* at 33. Remarkably, despite the Court's Order, *Plaintiffs do not assert a single new fact regarding Defendants' purported scienter regarding this—or any—issue. Compare* FAC ¶¶ 31, 36, 67, and ECF 104 at 2-3, 6, 25 *with* SAC ¶¶ 86-89.

*First*, Plaintiffs allege that Defendants' scienter may be based on their employment at PureCycle and the fact that PureCycle's "only business" was to commercialize its recycling process. SAC ¶ 86. This is the same argument made in the FAC (*see* FAC ¶ 89), which this Court unequivocally rejected. Order at 32 (finding that "in cases where plaintiffs had sufficiently pled scienter based on a defendants'

---

[10] In any event, concerns about scalability are misplaced, as certified in a report issued by an independent engineering firm, which was provided to shareholders. *See* https://www.sec.gov/Archives/edgar/data/1830033/000110465921006319/tm2034179d7_ex99-9.htm at 86 (concluding that PureCycle should be capable of producing over 100 million pounds of UPRP annually)

position, it was accompanied with an allegation that either an employee, government action, or report placed the executives on notice") (collecting cases). Specifically, although Plaintiffs argued previously that the "core operations" doctrine should apply, this Court determined correctly that this doctrine cannot "absolve Plaintiffs from alleging any specific facts" regarding scienter, Order at 32-33. Plaintiffs still do not allege any "specific facts" that would have put the PureCycle Defendants on notice of any issue with the recycling process that would need further disclosure.

*Second*, Plaintiffs focus on the compensation that Otworth and Dee expected to receive in the Merger, SAC ¶¶ 88-89, which was specifically disclosed to shareholders. *Id.* ¶¶ 51-52. While this was alleged in the FAC, Plaintiffs did not argue that this compensation raised a strong inference of scienter, and thus, the Court did not address this argument previously. FAC ¶¶ 35-36; ECF 104 at 6. While Plaintiffs have now moved this allegation under "Additional Scienter Allegations," they still have never explained, let alone alleged with specificity, how such compensation demonstrates a "strong inference" that Defendants had any knowledge that the statements listed above were false or misleading. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 1267, 1286 (S.D. Fla. 2008) ("receipt of an incentive-based compensation plan insufficient to establish scienter") (citing *In re Sunbeam Sec. Litig*, 89 F. Supp. 2d 1326, 1342 (S.D. Fla. 1999)).

14

### B.   Plaintiffs Fail To Plead With Particularity Any Securities Fraud Claim With Respect To Otworth's, Dee's, Or Brenner's Experience

Plaintiffs also fail to allege a securities fraud claim based on PureCycle's statements or omissions regarding certain executives' experience. According to Plaintiffs, the fact that PureCycle promoted the knowledge and experience of its CEO (Otworth), CFO (Dee), and CCO (Brenner), somehow triggered a duty to disclose certain additional information. *See* SAC ¶¶ 55-57, 61.[11] Not so. *Plaintiffs do not allege that any of the statements in the Solicitation Materials regarding the executives' experience are false.* Moreover, the vast majority of the allegedly omitted information has *no meaningful connection* to Otworth, Dee, or Brenner and, importantly, *none* of it contradicts any affirmative statement by Defendants. As such, Plaintiffs fail to plead any actionable omission with specificity, let alone scienter of any such omission.

### 1.   Plaintiffs Fail to Plead With Specificity Any Duty To Disclose Additional Information About Defendants' Experience.

Section 10(b) "do[es] not create an affirmative duty to disclose any and all material information." *Galectin*, 843 F.3d at 1274. For an alleged omission to be actionable, Plaintiffs must allege Defendants had a duty to disclose the omitted information by identifying statements which became misleading as a result of the alleged omissions. *Id.* at 1275. Plaintiffs' allegations fall short.

First, Plaintiffs allege that the Proxy should have clarified that Otworth,

---

[11] The SAC does <u>not</u> allege that PureCycle touted the business acumen of Defendant Ettefagh (Chief Sustainability Officer) or non-Party John Scott (Chief Science Officer).

Brenner, and Dee had no prior experience with "polypropylene recycling." SAC ¶ 50. But Defendants never asserted otherwise. *Id.* ¶¶ 55, 71 (disclosing Otworth had "over 23 years' experience leading and scaling *early stage companies*") (emphasis added); *Id.* ¶ 71 (disclosing Dee was a senior executive at Morgan Stanley with over 30 years of *public markets, corporate finance, and M&A experience*) (emphasis added); *Id.* (disclosing Brenner had "over 15 years' experience leading transformational projects *in a range of industries*") (emphasis added). No reasonable shareholder could have been misled into believing any of these men had experience with polypropylene recycling when no such experience is remotely suggested by the Solicitation Materials.

Second, Plaintiffs misleadingly suggest that PureCycle touted that Otworth, Brenner, and Dee had participated in "six successful IPOs" with prior businesses and, thus, had a duty to disclose that each of the businesses suffered financial hardships. SAC ¶ 47. But PureCycle said no such thing. The "six successful IPOs" language that Plaintiffs purport to quote in the SAC—notably, without citation—*does not appear in any of the Solicitation Materials.* Defendants did not make this statement in connection with the purchase or sale of PureCycle securities and thus there was no obligation to correct or clarify this language. This language appears in the Report, which itself quotes the language from a press release issued on April 21, 2017—four years before the Merger—by a different company, Innventure, which Plaintiffs allege controlled PureCycle before the Merger. *See* SAC ¶ 47 (conceding Innventure, not PureCycle, made statement regarding "six successful IPOs"); Ex. 1 at 12 (quoting April 21, 2017 Innventure press release). While the Report quotes this language from Innventure,

16

*nothing* in the Solicitation Materials touts *Innventure's* track record as a reason for shareholders to support the Merger and, as such, the Solicitation Materials did not create any affirmative obligation to disclose additional detail about Innventure's previous investments. *Galectin*, 843 F.3d at 1275.

Third, while this Court noted that information regarding the PureCycle "executives' six previously failed ventures 'would have been helpful to an investor,'" Order at 29, Plaintiffs do not—and cannot—allege that Defendants were involved in *any* of the alleged failed ventures, let alone facts that would have rendered the affirmative statements about Otworth, Brenner, or Dee misleading.

- For four out of the six IPOs mentioned in the Report—ChromaVision, eMerge, AgCert, and PetroAlgae—Plaintiffs *do not allege any direct involvement by any Defendant*—let alone any Defendant whose business experience PureCycle purportedly touted. SAC ¶ 47.

- For the TyraTech IPO, Plaintiffs allege (incorrectly) that Brenner was the CEO, but Plaintiffs mistake him for his father.[12] *Id.*

- For the final investment, XL TechGroup, Plaintiffs allege that Otworth held an unknown "C-level role" for some unspecified time period. *Id.* Plaintiffs do not allege that Otworth had any involvement in causing XL TechGroup to be delisted in 2008, more than *twelve years* prior to the Merger. *Id.*

Plaintiffs do not allege that Dee or Ettefagh had any involvement these investments.

Further, even if *Innventure's* investment history were somehow material to PureCycle shareholders (which it is not),[13] and even though PureCycle never touted

---

[12] In truth, Brenner was *never* CEO of TyraTech and Plaintiffs cannot accurately allege he was even employed there. His *father*, Rick Brenner, was the CEO of TyraTech and left nine years before the alleged financial harm. *See* https://innventure.com/our-team/. *See also* SAC ¶ 47.

[13] While this Court has recognized that it could be material that a manager previously declared a

17

Innventure's experience or involvement, Plaintiffs still fail to allege why additional disclosure might be warranted.  Plaintiffs do not allege any action taken *in the last decade* by any Innventure representative with respect to any of these companies,[14] nor do they allege any details regarding the cause of any alleged harm to the companies.

Moreover, Plaintiffs cannot dispute (and the Report makes clear) that *this information was public*, meaning there is no "substantial likelihood" that further disclosure would have "significantly altered the 'total mix' of information available" to investors.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *see also, e.g., In re Andrx Corp.*, 296 F.Supp. 2d 1356, 1366 (S.D. Fla. 2003) ("misrepresentation is immaterial if the information is already known to the market"); Ex. 1 at 30.

Plaintiffs cannot allege an actionable omission where, as here, Plaintiffs fail to identify any actual statement which was rendered misleading as a result of the omission, and all of the allegedly "omitted" facts were public.

> ### 2. *Plaintiffs Do Not Allege With Specificity Any Defendants' Knowledge Regarding The Performance Of Investments With Which They Were Not Involved.*

To adequately plead scienter with respect to an omission, Plaintiffs must allege with particularity that, at a minimum, Defendants each engaged in "severe

---

*personal* bankruptcy if the company chooses to tout that manager's business acumen (*see* Order at 29), that simply is not what occurred here.  Defendants have not declared bankruptcy, nor do Plaintiffs allege that they were involved in the one Innventure investment that Plaintiffs allege ultimately resulted in bankruptcy—six years *after* the last alleged involvement with Innventure or any Defendant.  SAC ¶ 47.

[14] The last alleged act is non-party Scott's resignation from Petro Algae in February 2012, before the company had its securities registration revoked *five years later*.

recklessness" by making "highly unreasonable omissions or misrepresentations . . . that present *a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.*" *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985) (quotation omitted; emphasis added). But the SAC is devoid of any allegations demonstrating that Defendants were even aware of the hardships that Plaintiffs claim befell the six companies described above— often years after Innventure's last alleged involvement—let alone that they had a duty to disclose this stale and irrelevant information.  In fact, as demonstrated above, Plaintiffs do not allege that Dee or Ettefagh had *any* involvement with these companies; do not allege that Brenner was involved in any investment except for alleging *incorrectly* that he was CEO of TyraTech; and do not allege that Otworth was involved with any investment other than XL TechGroup (in an unspecified role and time), which suffered financial hardship more than twelve years *prior* to the Merger. SAC ¶ 47.  Thus, there is no reason why any Defendant would have known they had a duty to disclose such irrelevant public information.

Plaintiffs' Section 10(b) claim fails as a matter of law.

## II. Repackaging The Securities Fraud Claims Under Section 14(a) Does Not Save Them.

In apparent recognition that they are unable to adequately plead a Section 10(b) or 20(a) claim, Plaintiffs repackage their securities fraud claim as a Section 14(a) claim in the hope of being subject to a more lenient pleading standard. Although Plaintiffs purport to "expressly exclude and disclaim any allegation that could be construed as

alleging or sounding in fraud or intentional or reckless misconduct" because "[t]his claim is based solely on negligence," SAC ¶ 118, their efforts are in vain and are deficient in any event. Plaintiffs' Section 14(a) claim should be dismissed.

A.   **Section 14(a) Claims Are Subject To The Same Heightened Pleading Requirements As Securities Fraud Claims**

Plaintiffs first err by assuming that a Section 14(a) claim—even one based on negligence—is not subject to the heightened pleading requirements under Rule 9(b) and the PSLRA. This appears to be a matter of first impression for this Court and the 11th Circuit, which has not yet determined what pleading standard to apply to a Section 14(a) claim based "solely on negligence." The 11th Circuit's sister circuits are split on this very issue. *Compare, e.g., Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008) (finding the argument "that the heightened pleadings standards of the PSLRA do not apply to negligent misrepresentations actions" to be "unpersuasive and unsupported by precedent"); *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 683 (9th Cir. 2005) ("a Section 14(a) plaintiff must plead *with particularity* facts that give rise to a strong inference of negligence") (emphasis added and quotation omitted) *with Beck v. Dobrowski,* 559 F.3d 680, 682 (7th Cir. 2009) (holding negligence does not need to be pleaded with particularity for a Section 14(a) claim). The Southern District of Florida has endorsed the holdings in *Little Gem* and *Knollenberg*. *See Lee v. Frost*, Case No. 21-20885, 2021 WL 3912651, at *4 n.3 (S.D. Fla. Sept. 1, 2021).

As explained in *In re The Home Depot, Inc. Shareholder Deriv. Litig.*, "[t]he Supreme Court . . . has stated that the PSLRA 'imposes heightened pleading

20

requirements and a loss causation requirement upon 'any private action' arising from the Securities Exchange Act.'" 223 F. Supp. 3d 1317, 1330 (N.D. Ga. 2016) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 165 (2008)).  As such, "it is clear that the heightened pleading requirements of the PSLRA do apply to Section 14(a) claims" even where no fraud is alleged.  *Id*.  Plaintiffs' failure to plead any actionable misstatement or omission (see supra) is fatal to their Section 14(a) claims.

### B.   Plaintiffs' Section 14(a) Claims Are Subject To The Same Heightened Pleading Standard Because They Sound In Fraud

In this case, this Court need not determine which pleading standard applies to a Section 14(a) claim genuinely based on negligent conduct because, contrary to Plaintiffs' assertions, Plaintiffs' Section 14(a) claim sounds in fraud.  As courts have repeatedly held, the substance of a litigants' allegations, rather than the label they attempt to place on those allegations, governs this issue.  *See Lee* , 2021 WL 3912651, at *4 n.3 (holding Section 14(a) claims "sound in fraud," when "grounded in the same conduct that forms the basis" of other claims sounding in fraud, even where the plaintiff asserted the claims are "based solely on negligence."); *Symphony, LLC v. Romeu*, Case No. 1:18-cv-22511-KMM, 2019 WL 2107288, *2 (S.D. Fla. Mar. 13, 2019) (a claim sounds in fraud where "plaintiff alleges a 'unified course of fraudulent conduct' and relies entirely on that course of conduct as the basis of that claim"); *see also In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019) ("[W]hen plaintiffs assert Section 14(a) claims grounded in alleged fraudulent conduct, they are subject to heightened pleading requirements, even if they disclaim reliance on a fraud

theory."); *Ocegueda v. Zuckerberg*, 526 F. Supp. 3d 637, 650-51 (N.D. Cal. 2021) (Section 14(a) claims "sound in fraud," despite "plaintiff limit[ing] her claim to negligence," when based on allegations that "the defendants knowingly failed to disclose fraudulent practices" and "knew the statements were false and misleading").

Plaintiffs' Section 14(a) claims are based on the exact same allegations that purportedly give rise to their securities fraud claims. The first sentence of the first substantive paragraph in the SAC states clearly, and without qualification, "this is a securities fraud class action." SAC ¶ 1. Throughout the SAC, Plaintiffs allege repeatedly that Defendants engaged in a "fraudulent scheme" (SAC ¶¶ 30, 106), that Defendants knowingly misrepresented material information (SAC ¶ 28), that Defendants intentionally concealed material information from investors (SAC ¶ 46), that Defendants "dupe[d]" investors about Otworth, Dee, and Brenner's "experience" (SAC ¶¶ 47, 50), and that Defendants "willingly flaunt[ed] the PureCycle management team's collective experience" to "misle[a]d investors" (SAC ¶ 57). Plaintiffs further indicate they will seek class certification to determine, among other issues, whether Defendants acted knowingly or recklessly. SAC ¶ 96. The SAC, *in its entirety*, attempts to allege fraudulent conduct. Indeed, if the Court were to follow Plaintiffs' instruction to ignore all allegations "that could be construed as alleging or sounding in fraud or intentional or reckless misconduct"—*meaning the entire Complaint*—then there would be no allegations left for the Court to consider.

Because Plaintiffs' Section 14(a) claim sounds in fraud, it is subject to the heightened pleading standards of Rule 9(b), in addition to the PSLRA. Under the

22

heightened pleading standard, the claims must be dismissed for the same reasons that are set forth above.  *See* Section I.

**C.      Plaintiffs Fail To Plead A Section 14(a) Claim Under Any Standard**

First, it is near impossible to ascertain the basis for Plaintiffs' Section 14(a) claim.  Plaintiffs direct this Court to disregard "the allegations in those subsections specified to relate solely to Plaintiffs' [securities fraud claims]," but there are no subsections in Plaintiffs' factual allegations containing such specification.  SAC ¶ 117. Plaintiffs also direct this Court to ignore all allegations "sounding in fraud or intentional or reckless misconduct" but fail to identify any allegations that do not fall under this umbrella.  *Id.* ¶ 118.  Evidently, Plaintiffs expect this Court simply to guess which of their securities fraud allegations should be considered and which should not when assessing the Section 14(a) claim.  This riddle does not suffice to state a claim under any pleading standard.  *See, e.g., Frantz v. Walled*, 513 Fed. Appx. 815, 820 (11th Cir. 2013) ("This Court has repeatedly condemned shotgun pleadings" where "it is virtually impossible to know which allegations of fact are intended to support which claims for relief") (quotation omitted); *Royal Palm Village Residents, Inc. v. Slider*, Case No. 8:19-cv-874-T-36SPF, 2019 WL 13191348, *3 (M.D. Fla. June 19, 2019) ("confusing, vague, and incomprehensible pleading" does not satisfy even the lenient pleading standards of FRCP 8).

Second, for the reasons set forth above, Plaintiffs still fail to identify any material misrepresentation or omission.  *See Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1290 (M.D. Fla. 2009) (dismissing Section

14(a) claim where "plaintiffs . . . fail to plead that each proxy statement contained a material misstatement or omission").[15]

Third, in order to assert a claim under Section 14(a), "[t]he transaction itself must be the source of the plaintiff's injury." *Edward J. Goodman Life Income Trust v. Jabil Circuit Inc.*, 594 F.3d 783, 796 (11th Cir. 2010) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970) and *Koppel v. 4987 Corp.*, 167 F.3d 125, 137 (2d Cir. 1999)). Here, Plaintiffs allege that several months *after* the Merger, a short seller with a clear motive to drive down the stock price published a report that criticized the management team and the efficacy of the recycling process at scale. As a result, the stock fell 40% before fully recovering one month later. SAC ¶¶ 12, 106; *see supra* pages 5-6 (discussing stock price). This temporary harm, caused by a short-seller's post-Merger efforts to drive down the stock price, is not caused by the Merger and, thus, is too attenuated to be actionable under Section 14(a).

### III.    Plaintiffs Fail to State a Claim for Control Person Liability.

A claim under § 20(a) "'cannot exist in the absence of a primary violation.'" Order at 40. Plaintiffs also fail to allege the Individual Defendants' "participation in the day-to-day affairs of the corporation" or power to "control corporate actions." *Galectin*, 843 F.3d at 1276 n.11. The §20(a) claims should be dismissed.

---

[15] *Jabil Circuit* does not specify which standard of review it used when analyzing the Section 14(a) claim, but it determined there was no actionable misrepresentation or omission to support a Section 14(a) claim by referencing an earlier portion of the opinion that addressed securities fraud claims, which were subject to heightened pleading standards. *See Jabil Circuit*, 595 F. Supp. 2d at 1290.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the SAC with prejudice.

**DECHERT LLP**

*/s/ Joni S. Jacobsen*
David H. Kistenbroker (*pro hac vice*)
Joni S. Jacobsen (*pro hac vice*)
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Telephone: 312/646-5800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

Dated this 15th day of September, 2022.

**STOVASH, CASE & TINGLEY, P.A.**
Amy S. Tingley
Florida Bar No. 068841
The VUE at Lake Eola
220 North Rosalind Avenue
Orlando, Florida 32801
Telephone: 407/316-0393
atingley@sctlaw.com

*Attorneys for Defendants PureCycle Technologies, Inc., Michael Otworth, Michael E. Dee, David Brenner, and Tamsin Ettefagh*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel for Defendants certifies that Defendants conferred with counsel for Plaintiffs by e-mail on September 12, 2022. The parties did not resolve any part of this motion, which Plaintiffs will oppose.

*/s/ Joni S. Jacobsen*
Joni S. Jacobsen

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022, a copy of the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by the Court's electronic filing system.

*/s/ Joni S. Jacobsen*
Joni S. Jacobsen

25