## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

WILLIAM C. THEODORE,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

      v.

PURECYCLE TECHNOLOGIES,
INC., MICHAEL OTWORTH,
MICHAEL E. DEE, DAVID
BRENNER, BYRON ROTH and
TASMIN ETTEFAGH,

      Defendants.

Case No. 6:21-cv-809-PGB-GJK

### LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BYRON ROTH'S MOTION TO STRIKE ALLEGATIONS IN THE CONSOLIDATED SECOND AMENDED COMPLAINT

Co-Lead Plaintiffs Robert Ciecko and Mariusz Ciecko ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, respectfully submit this opposition to Defendant Byron Roth's ("Roth") Motion to Strike Allegations in the Consolidated Second Amended Complaint ("Motion").

## I.    ARGUMENT

### A.    Applicable Standards

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter." "A motion to strike is a drastic remedy, which is disfavored by the courts and

will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *2BBG Express, LLC v. Quality Distribution*, No. 8:16-CV-758-17AEP, 2016 WL 6211712, at *2 (M.D. Fla. Oct. 24, 2016) (citing *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). *See Dugas v. 3M Co.*, No. 3:14-CV-1096-J-39JBT, 2014 WL 12618703, at *1 (M.D. Fla. Oct. 21, 2014).  Indeed, courts in this district have referred to such motions as "time wasters." *Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995).

Defendant Roth moves to strike allegations pertaining to his role in suspect Chinese reverse mergers similar to the PureCycle SPAC and pertaining to Roth Capital Partners LLC's ("Roth Cap") FINRA BrokerCheck, which lists 16 regulatory sanctions and 12 arbitrations, including two violations of the Securities and Exchange Act of 1934 Regulation M, enacted to prevent market manipulation, though these allegations are clearly relevant to Plaintiffs' claims and will not lead to any prejudice that is unwarranted under the circumstances.  "In light of the fact that a motion to strike is considered a drastic remedy, and such motions are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to a party, and that the Court is required to accept the truthfulness of well-pleaded facts, the Court [should] den[y] Defendant's Motion to Strike." *SEC v. Simmons*, No. 8:04-CV-2477-T-17MAP, 2005 WL 8160336, at *1 (M.D. Fla. Sep. 7, 2005).

**1)  Roth Provides No Basis to Strike Allegations of his Scandalous Past**

The SAC alleges that to effectuate the reverse merger de-SPAC transaction between ROCH and PureCycle and then drive up the price of PureCycle securities, Defendant Roth made false and misleading statements representing that PureCycle's recycling process is "proven" to convert polypropylene into virgin like resin, can utilize a "broader range of feedstock" than traditional recycling, is more "cost efficient" than traditional manufacturing of virgin polypropylene, and touting the experience of PureCycle's management team.  Defendant Roth's statements misled investors because, in reality, the technology underlying PureCycle's process is unproven and presents serious issues even at lab scale, the flammable pressurized process is dangerous and not yet functional—especially at scale, the process cannot use a "broader range of feedstock than traditional recycling" but rather requires large quantities of high quality polypropylene feedstock with minimal contamination (which is difficult to obtain in bulk given the highly competitive market), the process is not more cost efficient than traditional manufacturing of virgin polypropylene, and PureCycle's management team had no background in plastics recycling and previously brought six companies public to line their own pockets and then drove those companies to financial ruin, resulting in significant investor losses. *The SAC further alleges that a week after a portion of Roth Cap's PureCycle shares became eligible to dump following the reverse merger, Roth Cap's own research department slapped a "buy" rating and a $45 price target on the stock*.

3

That this is not the first time Roth has brought a company public via reverse merger, misled the market in public disclosures regarding the company to drive the share price up, and slapped a glowing "buy" rating on the stock to inflate the worth of Roth Cap's own shares is relevant.  The SAC alleges that this is precisely what Roth notoriously did with Chinese reverse mergers. ¶ 34.  Prior to effectuating the PureCycle de-SPAC merger, Defendant Roth facilitated numerous suspect reverse mergers involving Chinese companies, raising approximately $3.1 billion. *Id.* Like with PureCycle, Defendant Roth took these companies public and slapped glowing "Buy" ratings on the stocks through Roth Cap's own research division. *Id.* Defendant Roth was such a notorious figure in the Chinese reverse merger scandals that he was featured in a documentary called, "The China Hustle." *Id.* The SAC is clear that *Vanity Fair* referred to the scandal as "the biggest financial scandal you've never heard of," *id.*, but never claims that the article mentions Roth, as Roth falsely states. Motion at 3.  Regardless, whether *Vanity Fair* explicitly mentions Roth is irrelevant and a red herring.  Roth does not dispute either his involvement in the decade's long Chinese reverse merger scandal nor does he dispute that he is featured prominently in "The China Hustle."

These allegations are undeniably relevant background[1]. *See Cohen v. Storch,* No. 15-CIV-62726, 2016 WL 7469984, at *1-2 (S.D. Fla. Feb. 26, 2016) (declining to strike

---

[1] This is so whether or not the Court determines that they contribute to a compelling inference of scienter (which Plaintiffs submit they do, *see* contemporaneously filed Memorandum of Law in Opposition to Defendant Byron Roth's Motion to Dismiss Consolidated Second Amended Complaint, Section I.C.)

allegations of "pertinent background information" that "pre-date the issues in the case," and which defendant argued are "scandalous" and "irrelevant," because the allegations were not "obviously false" and "are not unrelated to the subject matter of the claim"). Indeed, this Court acknowledged that "evidence of past schemes" could be relevant to the scienter analysis along with "additional allegations" that Roth "knew or was reckless as to the veracity of the specified statements." Order at 34-35. That alone is sufficient basis upon which to deny the Motion. *S.D. v. St. Johns Cnty. Sch. Dist.*, No. 3:09-CV-250-J-20TEM, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009) (holding that motions to strike are not granted unless the allegations are so immaterial as to have no possible bearing on the issues to be litigated).

### 2) Roth Provides No Basis to Strike Allegations Regarding Roth Cap's FINRA BrokerCheck Report

The SAC alleges that Roth Cap's FINRA BrokerCheck report lists 16 regulatory sanctions and 12 arbitrations, the most recent of which took place in 2021, including two violations of the Securities and Exchange Act of 1934 ("Exchange Act") Regulation M, enacted to prevent market manipulation. ¶ 34. *See* https://brokercheck.finra.org/firm/summary/15407. Roth argues that the Court should take the extraordinary measure of striking this allegation because "Plaintiffs continue to conflate Mr. Roth with Roth Capital," Motion at 3, an argument Roth unsuccessfully advanced in his first motion to dismiss (ECF No. 95, at 12, fn. 5), and doubled down on in his second motion to dismiss (ECF No. 118, at 3). Defendant Roth is ***the Chairman and CEO of Roth Cap***, a company he not only runs but which

bears his name. Roth and Roth Cap are thus inextricably intertwined; Roth Cap's "checkered history" is Roth's checkered history.[2] *See, e.g.,* Order[3] at 34 ("Finally, Plaintiffs cite to Roth Capital's 'checkered history'…"). Regardless, to the extent the Court considers this a disputed question of fact, "[a] disputed question of fact cannot be decided on [a] motion to strike." *Dugas*, 2014 WL 12618703 at *1.

The SAC includes the FINRA BrokerCheck allegation as relevant background (indeed, it appears in the "Background" section) illustrating that the PureCycle SPAC is not the first instance in which Roth and Roth Cap have engaged in misconduct and flouted Exchange Act regulations (that this is not a Regulation M case is beside the point, Motion at 5, fn 1). Defendant Roth offers conclusory arguments but no cogent explanation as to how Roth Cap's FINRA BrokerCheck "confus[es] the issues," unfairly prejudices him- particularly given that there is no *credible* dispute as to the accuracy of the allegation (*see* footnote 1 *infra*), or is "likely" to lead a fact finder to draw an inference against him that is in any way "unwarranted." Motion at 8.

## CONCLUSION

Therefore, for the reasons stated herein, Plaintiffs respectfully request that the Court deny the Motion.

Dated: October 20, 2022                           Respectfully submitted,

---

[2] Roth's argument that this allegation is "demonstrably false" because his *individual* FINRA BrokerCheck does not list 16 regulatory sanctions and 12 arbitrations is as misleading as it is misplaced given that they *are* listed in *Roth Cap's* FINRA BrokerCheck—a fact which Roth does not dispute. Motion at 3.

[3] Order, filed on August 4, 2022. ECF No. 112.

**POMERANTZ LLP**

By: /s/ Tamar A. Weinrib
Tamar A. Weinrib (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (646) 581-9973
Facsimile: (917) 463-1044
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

7