**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WILLIAM C. THEODORE,
individually and on behalf of all
others similarly situated,

        Plaintiffs,

      v.

PURECYCLE TECHNOLOGIES, INC.,
MICHAEL OTWORTH, MICHAEL E.
DEE, DAVID BRENNER, BYRON
ROTH and TASMIN ETTEFAGH,

        Defendants.

_____/

Case No. 6:21-cv-00809-PGB-GJK

## BYRON ROTH'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED SAC AND MOTION TO STRIKE

Byron Roth ("Mr. Roth") submits this Reply in support of his Motion to Dismiss. As with the motion to dismiss, Mr. Roth incorporates by reference Defendants' arguments on reply as to the alleged falsity of the statements at issue.[1]

### A. Plaintiffs' Conclusory Allegations of Mr. Roth's Scienter Remain Deficient.

A bedrock requirement for any complaint alleging § 10(b) claims is scienter, but the SAC still "fails to meet the high pleading standard for scienter" as to Mr. Roth. (Order at 30.) In dismissing the CAC, the Court cited the Eleventh Circuit's decision in *Mizzaro v. Home Depot, Inc.*, which is particularly instructive here:

> Putting the PSLRA and our substantive scienter case law together yields the following ***stringent standard***: to survive a motion to dismiss in this case, [Plaintiffs] must (in addition to pleading all of the other elements

_____

[1] Oddly enough, Plaintiffs' Opposition (ECF No. 124, "Opp.") opens with three supposedly key points: PCT has never earned revenue, has only one operation, and polypropylene historically was impossible to recycle. The first two points are the subject of undisputed detailed disclosures. The "impossibility" argument remains unfounded. It cannot reasonably be disputed that the process works and that the challenge as to commercial scalability was also disclosed in detail.

> of a § 10(b) claim) plead with particularity *facts* giving rise to a strong inference that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements.

544 F.3d 1230, 1238 (11th Cir. 2008).[2]  Ignoring this standard, in lieu of specific, *factual* allegations in the SAC that Mr. Roth had actual knowledge contradicting his public statements, Plaintiffs offer the multi-step inference that Mr. Roth (i) *must have* performed "due diligence," and (ii) "[a]s part of that due diligence," *must "have* had access to material information," rendering his statement that PCT would be a "compelling growth company" false or misleading. (Opp. at 17.) However, as in *Mizzaro,* Plaintiffs "cite[] no documentation, communication, or conversation suggesting that [the defendant] knew anything about the alleged fraud. Rather, [Plaintiff] argues only that . . . [the defendant] *must have known about it*." 544 F.3d at 1250. Accordingly, Plaintiffs' conclusory allegations of scienter, without factual support, are deficient.[3]

Because Plaintiffs can allege no facts underlying their allegations of scienter, they continue to resort to arguments based on Roth Capital's (again, *not a defendant in this action*) alleged motivations, which are derived from irrelevant, unrelated transactions Mr. Roth allegedly was involved in decades ago and a narrow assessment of PCT's coverage by investment banks. Transparently, Plaintiffs hope that an inference of propensity towards misconduct will somehow supplant specific

---

[2] Unless otherwise indicated, internal quotations are omitted and emphasis is added.

[3] Further, Plaintiffs' argument regarding "competing inferences" is irrelevant. (Opp. at 17.) As stated above, Plaintiffs cannot assert an inference without any underlying facts.

factual allegations as to Mr. Roth's state of mind that the SAC lacks. Plaintiffs continue to conflate Mr. Roth with Roth Capital, citing "**Roth Cap's** FINRA BrokerCheck" ratings from "**Roth Cap's** research division," "'founder's shares' **Roth Cap** received," and "**Roth Cap's** exorbitant windfall" as further evidence of **Mr. Roth's** scienter. (Opp. at 18-19.) However, unrelated regulatory matters in **Roth Capital's** BrokerCheck report or **Roth Capital's** purported motivations have nothing to do with the claims asserted in the SAC against **Mr. Roth** individually.[4] Indeed, none of the matters was against Mr. Roth personally, nearly all were resolved without any admission of wrongdoing by Roth Capital, and none involved the issues raised in the SAC.[5] Plaintiffs' repeated invocation of Mr. Roth's alleged "checkered past," therefore, still fails to allege "related and repeated conduct" or a "pattern of fraud" that might give rise to an inference of scienter against **Mr. Roth**. *See Takata v. Riot Blockchain, Inc.*, No. 18 Civ. 2293, 2020 WL 2079375, at *16 (D.N.J. Apr. 30, 2020).[6]

While Plaintiffs concede "the Court already found allegations of [Mr. Roth's allegedly] checkered past 'insufficient,'" they claim their "additional allegations in the SAC" now support an inference of scienter. (Opp. at 19.) However, these

---

[4] Plaintiffs' allegations regarding Roth Capital's "buy rating" are insufficient to show that Mr. Roth acted with scienter. Moreover, Plaintiffs ignore the fact that several other prominent investment banks initiated coverage of PCT with "outperform" or "buy" ratings, not just Roth Capital. (*See* ECF Nos. 110-1, 110-2.)

[5] *See* https://files.brokercheck.finra.org/firm/firm_15407.pdf (last visited Jan. 18, 2022).

[6] Plaintiffs' citation to *U.S. S.E.C. v. Corp. Rels. Grp., Inc.*, No. 6:99-cv-1222, 2003 WL 25570113 (M.D. Fla. Mar. 28, 2003), is inapposite and, if anything, supports Mr. Roth. There, defendants fraudulently failed "to disclose that they were being paid for the promotions of stock" or "that they were profiting from their recommendations by selling their holdings while recommending buying to their readership." *Id.* at *7. Here, Roth Capital's position in PCT was fully disclosed.

allegations relate only to the multi-step inference, which is deficient for the reasons stated above. In sum, Plaintiffs must allege specific *facts* relating to *Mr. Roth*, which they have not done. *See Oughtred v. E\*Trade Fin. Corp.,* No. 08 CIV. 3295 SHS, 2011 WL 1210198, at \*12 (S.D.N.Y. Mar. 31, 2011) (dismissing 10(b) claims where plaintiffs "conflate the two entities at many points in the SAC, thus weakening any inference of scienter").

### B. *Plaintiffs Fail to Allege Any Actionable Statement Attributable to Mr. Roth.*

Plaintiffs argue that the SAC identifies "four documents" containing alleged false and misleading statements by Mr. Roth. (Opp. at 13.) However, none of these statements is actionable, for the reasons asserted by Defendants and because the very risks that Plaintiffs complain of regarding PCT's ability to scale were disclosed.[7]  The cases Plaintiffs rely on do not suggest otherwise.[8]

Moreover, Plaintiffs' attempts to undermine the Leidos Report only underscore their faulty reliance on the Hindenburg Report[9] as the sole basis of their

---

[7] In particular, Plaintiffs ignore: (i) the prefatory words ("We believe" and "We are confident"), the section entitled, "Forward Looking Statements," and the following cautionary language in the November 16, 2020 press release: "*These risks and uncertainties include, but are not limited to* . . . *PCT's ability to scale and build the Ironton plant in a timely and cost-effective manner,*" (ECF No. 118-1 at 2, 5); and (ii) the meaningful cautionary language and specific risk disclosures in the November 20, 2020 Form S-4 Registration Statement: "There is *no guarantee* the Technology is scalable to commercial-scale operation . . . . PCT *may not be successful* in finding future strategic partners for continuing development . . ." (ECF No. 95-3 at 16.)

[8] *See, e.g., FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2011) ("No reasonable investor would believe that a conclusory, but apparently accurate, report of company-wide revenue growth naturally implied that all was well within every component of the company that could possibly affect revenue in the future.").

[9] Plaintiff's assertion that "Defendant Roth does not dispute the Report's credibility . . . and the fact that the Report establishes the falsity of his other misstatements . . ." is borderline absurd. (*See, e.g.*, ECF No. 118-3, at 1, 18.) Plaintiffs also simply reject the Leidos Report and Layman's statements (the inventor of the technology) in favor of third parties who have no access to the recycling process.

allegations over the conclusions of a highly respected, independent engineering company, the highly supportive comments of the highly credentialed inventor of the technology, and the Company's SEC filings, which confirm that PCT and its facilities are "on schedule" to meet projections. (ECF No. 118-8 at 5.)

### C.  *The Improper Allegations In The SAC Should Be Stricken.*

As detailed above, Plaintiffs allege no factual allegations demonstrating **Mr. Roth's** scienter, so they fall back on allegations related to **Roth Capital** and its purported involvement decades ago in Chinese reverse mergers. First, the Court already found allegations of Mr. Roth's purported "checkered history" insufficient without "additional allegations showing he knew or was reckless as to the veracity of the specified statements." (Order at 34.) As noted above, the SAC's purported new allegations have not cured this deficiency. However, even assuming the relevance of these mergers, none of the arbitrations referenced in Roth Capital's FINRA BrokerCheck Report relate to the Chinese reverse mergers. Plaintiffs' mudslinging cannot save their deficient allegations and should be stricken.[10]

For the foregoing additional reasons, Mr. Roth respectfully requests that his motions be granted and an order entered dismissing the CAC in its entirety.

---

[10] Plaintiffs' cited case law is not on point. *Cohen v. Storch*, No. 15-CIV-62726, 2016 WL 7469984 (S.D. Fla. Feb. 26, 2016) is a non-securities case, where the court found that allegations relating to a defendant's drug use, bankruptcy and arrest were relevant to defendant's business motivations, and in *S.D. v. St. Johns Cnty. Sch. Dist.*, No. 3:09-CV-250-J-20TEM, 2009 WL 1941482 (M.D. Fla. July 7, 2009), also a non-securities case, the court found allegations relating to defendant's religion relevant to claims of establishment of religion and violation of the free exercise clause.

Dated:  October 31, 2022

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By:            */s/ Brian C. Frontino*
                    Brian C. Frontino

Brian C. Frontino (Fla. Bar No. 95200)
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Email: bfrontino@stroock.com

John R. Loftus (admitted *pro hac vice*)
Christine E. Ellice (admitted *pro hac vice*)
2029 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone:  (310) 556-5800
Email: jloftus@stroock.com
            cellice@stroock.com

*Attorneys for Defendant Byron Roth*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, a copy of the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

/s/ *Brian C. Frontino*
Brian C. Frontino

1