**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

WILLIAM C. THEODORE,
Individually and on behalf of all
others similarly situated,

        Plaintiffs,

                  v.

PURECYCLE TECHNOLOGIES,
INC., MICHAEL OTWORTH,
MICHAEL E. DEE, DAVID
BRENNER, BYRON ROTH and
TASMIN ETTEFAGH,

        Defendants.

Case No. 6:21-cv-00809-PGB-GJK

**DEFENDANTS' MOTION FOR RECONSIDERATION OF
THE COURT'S ORDER ON THEIR MOTIONS TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

Defendants PURECYCLE TECHNOLOGIES, INC. ("PureCycle"), MICHAEL OTWORTH, MICHAEL DEE, DAVID BRENNER, and BYRON ROTH ("Defendants") respectfully submit this motion for reconsideration of the Court's June 15, 2023 Order granting in part and denying in part their Motions to Dismiss (Doc. 144) the Second Amended Complaint (Doc. 113) ("SAC"). Defendants' Motion is supported by the incorporated memorandum of law.

**PROCEDURAL HISTORY**

On May 11, 2021, Plaintiff David Tennenbaum and Plaintiff William C. Theodore each filed their initial complaint, alleging violations of Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  *David Tennenbaum v. PureCycle Technologies et al.*, No. 6:21-cv-818-PGB-DCI, Doc. 1 (M.D. Fla. May 11, 2021); *William S. Theodore v. PureCycle Technologies et al.*, No. 6:21-cv-809-PGB-GJK, Doc. 1 (M.D. Fla. May 11, 2021). Both Plaintiffs alleged that Defendants misrepresented or omitted material facts in connection with a March 17, 2021, merger between PureCycle and Roth CH Acquisition I Co., a publicly-traded special purpose acquisition company ("ROCH").

With no opposition by Plaintiff Tennenbaum or Plaintiff Theodore, this Court ordered the consolidation of the actions, and designated Case No. 6:21-cv-809 as the lead case.  Doc. 40.  Following five motions to be appointed lead plaintiff, three were withdrawn, and the Court appointed Robert Ciecko and Mariusz Ciecko as Co-Lead Plaintiffs ("Plaintiffs").  The Court also approved their selection of Pomerantz LLP as Lead Counsel.  Doc. 80.

Thereafter, Plaintiffs filed their initial Consolidated Amended Complaint (the "First Amended Complaint" or "FAC") on September 27, 2021.  Doc. 90. Defendants filed motions to dismiss on November 12, 2021 (Docs. 93, 95), and on August 4, 2022, the Court dismissed all claims in the First Amended Complaint for multiple, independently sufficient reasons, including failure to adequately plead violations of the federal securities laws with specificity under Federal Rule of Civil Procedure 9(b), failure to adequately plead scienter, and

2

because certain forward-looking statements were protected by the PSLRA safe harbor provision.  Doc. 112 at 24-27, 30-32, 40.

Plaintiffs then filed the SAC on August 18, 2022, attempting to replead their claims for violation of Section 10(b) and Rule 10b-5 and adding claims under Section 14(a) of the Exchange Act and Rule 14a-9, 17 C.F.R. § 240,14a-9.  Doc. 113.  Defendants filed motions to dismiss the SAC on September 15, 2022.  Doc. 116, 118.  On June 15, 2023, the Court granted in part and denied in part Defendants' Motions to Dismiss (the "Order").  Doc. 144.  The Court granted the Motions as to claims against Defendant Tasmin Ettefagh, but otherwise denied the Motions.

In the Order, the Court found that Plaintiffs had cured the pleading deficiencies present in the FAC and adequately pleaded scienter with respect to all Defendants except Ettefagh.  With respect to Defendants Dee, Otworth, and Brenner, this Court found that "[t]hough slight," Plaintiffs' "shift in phrasing" describing Defendants' disclosures about past management experiences "without disclosing their alleged prior business failings" along with their mention of the SEC investigation into Defendants' conduct (which, as explained below, has been closed without adverse action) were sufficient to indicate scienter.  Order at 17.  Regarding Defendant Roth, this Court similarly found the "cumulative effect" of the previously existing allegations and the SAC's supplemental allegations about Roth's access to information, the fact he signed various SEC filings, his alleged past management experiences, and his financial

incentive was sufficient to overcome the past deficiencies.   Order at 21-24. Defendants now respectfully seek reconsideration of the Order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54 provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."   Fed. R. Civ. P. 54(b).   "Courts have interpreted this provision to allow for the filing of motions for reconsideration with respect to orders that do not constitute final judgments."  *Hall v. Sargeant*, No. 18-80748-CIV, 2019 WL 13067291, at *1 (S.D. Fla. June 11, 2019) (quoting *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, No. 07-22326-CIV, 2008 WL 11333262, at *3 (S.D. Fla. Apr. 29, 2008)).   Courts in the Eleventh Circuit use the same standard for evaluating Rule 54(b) motions for reconsideration as they do for considering Rule 60(b) motions for relief from judgment.  *Maldonado v. Snead*, 168 Fed. App'x 373, 386-87 (11th Cir. 2006)).

"Typically, such a motion for reconsideration may be granted if any of three circumstances are established: '(1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice.'"  *Cala v. Moorings Park Cmty. Health Inc.*, No. 2:22-CV-635-JES-KCD, 2023 WL 1102646, at *2 (M.D. Fla. Jan. 30, 2023) (citation omitted); *see Groover v. Prisoner Transportation Servs., LLC*, No. 15-CV-61902, 2018 WL 4743555, at *2 (S.D. Fla. Oct. 2, 2018).

## ARGUMENT

## I.   RECENT FACTS SHOW THAT PURECYCLE'S TECHNOLOGY IS VIABLE

Defendants respectfully submit that reconsideration of the Order is warranted because recent developments show that PureCycle's recycling technology is viable, undercutting the entire theory of Plaintiffs' claims. Plaintiffs allege that Defendants misrepresented "that PureCycle's recycling process can successfully and cost effectively convert waste polypropylene feedstock into virgin polypropylene resin" but that "[i]n reality," such technology "is not yet functional." SAC ¶¶ 4, 6; *see id.* ¶¶ 37, 39, 43, 76. Plaintiffs further rely on a report issued by Hindenburg Research (the "Hindenburg Report") claiming that PureCycle's technology is effectively a "bomb." *Id.* ¶ 10.[1]

Recent developments show those allegations to be completely unfounded. PureCycle announced that on April 25, 2023, it had reached mechanical completion of its first polypropylene purification plant, and had submitted documentation to the independent construction monitor for formal certification of completion. Ex. A.[2] On June 20, 2023, PureCycle issued a press release

---

[1] Plaintiffs also argue that Defendants misrepresented their prior management experience, claiming that Defendants' misrepresentations induced investors to invest in PureCycle stock. SAC ¶¶ 7, 10. If PureCycle's technology is in fact viable, however, there is no reason statements regarding prior management experience would be material. Moreover, as discussed below, Plaintiffs fail to allege that any of the alleged failed companies occurred on any Individual Defendant's watch.

[2]https://www.sec.gov/Archives/edgar/data/1830033/000183003323000028/pct-20230425.htm. The Court may take judicial notice of PureCycle's disclosures, as "documents

announcing that it successfully commenced post-industrial recycled ("PIR) pellet production at the plant.  Ex. B.[3]  PureCycle CEO Dustin Olson stated, "With this major milestone complete, we have demonstrated that the fundamental technology works as expected, and at scale."  *Id*.  Following this significant development, PureCycle submitted documentation to the independent construction monitor for formal certification of its achievement.  *Id*.

On June 28, 2023, PureCycle filed a Form 8-K (Ex. C) with the SEC disclosing that:

> On June 28, 2023, the independent construction monitor reviewing construction and commissioning of the PureCycle Technologies, Inc. polypropylene purification plant in Ironton, Ohio ("Ironton Project"), issued its certification confirming commencement of production of post-industrial recycled ("PIR") pellets produced from Ironton Project feedstock.[4]

Thus, the independent monitor concluded that PureCycle was producing recycled polypropylene at the Ironton facility.

PureCycle's disclosure that it had successfully begun PIR pellet production, and the subsequent certification issued by an independent construction monitor, demonstrates that PureCycle's recycling technology is

---

publicly filed with the SEC" are "proper subjects for judicial notice at the motion to dismiss stage."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999).

[3]https://www.sec.gov/Archives/edgar/data/1830033/000183003323000045/pct-20230620.htm.

[4]https://www.sec.gov/ix?doc=/Archives/edgar/data/0001830033/000183003323000048/pct-20230628.htm.

viable and will work as disclosed.  That new development undermines the very foundation of Plaintiffs' claims, and shows that the challenged statements were in fact true.  Thus, there is no basis for Plaintiffs to plead securities fraud claims against any Defendant.  The fact that PureCycle's technology is viable likewise dispels any inference that any allegedly false statement was made with scienter—*i.e.*, with knowledge that the alleged statements were false.  Accordingly, based on this new development, reconsideration of the Court's Order denying Defendants' Motions to Dismiss is warranted.

## II.   DEFENDANTS HAD NO DUTY TO CORRECT THE HINDENBURG REPORT

Even if it were not the case that new facts show that PureCycle's technology is effective and Plaintiffs' claims therefore lack any basis, the Order likewise should be reconsidered due to the legal error inherent in the conclusion that Defendants' alleged silence in the face of the Hindenburg Report contributed to a finding of scienter.

In finding that the SAC adequately alleged scienter, the Order observed that Defendants' "failure to push back against the findings contained in the [Hindenburg] Report with any particular fervor or specificity[] is especially troubling in the Court's view," and "makes an inference of scienter more compelling because Defendants were both willing to bolster their own credibility but then remiss to defend it when it was attacked. . . ."  Order at 18 n.7.  Yet, Defendants had no duty to respond to or rebut the statements contained in the

Hindenburg Report and there were no new facts in the SAC which should have caused this Court to alter its previous conclusion. Order (Doc. 112) at 32-35; *compare* FAC (Doc. 90) ¶¶ 58-75 *with* SAC (Doc. 113) ¶¶ 75-83. As such, even if allegations regarding Defendants' purported silence in response to the Hindenburg Report were true (which they are not), they do not bolster Plaintiffs' claim of scienter.

"[A] company has no duty to correct or verify rumors in the marketplace unless those rumors can be attributed to the company." *In re Eaton Corp. Sec. Litig.*, No. 16-CV-5894 (JGK), 2017 WL 4217146, at *9 (S.D.N.Y. Sept. 20, 2017) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 850 (2d Cir. 1981). Additionally, courts have held that defendants are not "obligated to respond to every potentially disparaging news story[.]" *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 716 (W.D. Tex. 2010); *see also Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300–01 (S.D.N.Y. 2010) ("More broadly, Defendants were not obligated to respond to every potentially disparaging news story or to rebut the musings of the financial press."). "The securities laws do not require—and good business practice does not suggest—that financial institutions respond to every warble of the 24–hour news cycle." *Canadian Imperial Bank of Com.*, 694 F. Supp. 2d at 301.

In fact, a mere six months ago, the U.S. District Court for the Southern District of New York expressly found that the alleged failure to respond to claims made in a report published by Hindenburg Research did not support an

inference of scienter. *In re DraftKings Inc. Securities Litigation* involved a special purpose acquisition company, or "SPAC," transaction, similar to the one leading up to this case. The plaintiffs there alleged that the defendants made materially false and misleading statements about, and failed to disclose, violations of foreign law committed by a sports betting company that the defendants had acquired in the course of going public. No. 21 CIV. 5739 (PAE), 2023 WL 145591, at *1 (S.D.N.Y. Jan. 10, 2023). The plaintiffs relied in part on a report issued by Hindenburg Research that allegedly revealed those violations and the risks they exposed to the company. *Id.* The company's stock dropped following the publication of the Hindenburg report.

The court initially observed that "the Hindenburg Report is a report by short seller," and "to the extent that open-market securities fraud complaints use as the source for adverse factual allegations about a public issuer a report by a short seller—an entity with an economic interest in driving down the company's stock price—these allegations must be considered with caution." *Id.* at *18. It proceeded to reject the claim that the alleged failure to "explicitly deny" the allegations in the Hindenburg report supported an inference of scienter. *Id.* at *37. The court observed that "defendants were not under any obligation to respond at all to the Hindenburg Report," and the plaintiff failed to "cite any authority that a denial of accusations, if less than categorical, supports inferring scienter." *Id.* Moreover, the refusal to "comment on speculation or allegations made by former [subsidiary company] employees" in the Hindenburg Report did not give rise to a strong inference of scienter. *Id.*

9

The same result is true here. The allegations in the Hindenburg Report are not attributable to PureCycle, and disclose no new facts regarding the Individual Defendants' management experience or history, and indeed misrepresent such experience. Because Defendants had no obligation to respond to the claims made in the Hindenburg Report, their decision not to do so is incapable of giving rise to a strong inference of scienter. Accordingly, the Order's finding that Plaintiffs adequately alleged scienter should be reconsidered.

## III. THE CLOSING OF THE SEC INVESTIGATION UNDERCUTS ANY INFERENCE OF SCIENTER

Reconsideration also is warranted because Plaintiffs failed to address the fact raised in Defendants' papers, and the Court did not acknowledge, that the SEC investigation into PureCycle was closed without any adverse findings or enforcement action *before* the SAC was filed. The Court thus erred in finding that the existence of the investigation—without acknowledging the fact that it had already been terminated with the SEC finding no further action was necessary at the time—supported an inference of scienter.

In its Order granting Defendants' motion to dismiss the First Amended Complaint, the Court found that Plaintiffs had not sufficiently alleged scienter. Doc. 112 at 32-33. However, it appears that the existence of the SEC investigation led this Court to alter its previous decision. Specifically, the recent Order concluded that Plaintiffs' allegations regarding the investigation

10

the SEC opened following the filing of the First Amended Complaint (Doc. 90), "when aggregated together, are sufficient to show a plausible claim for scienter."  Order at 19.  Yet, as Defendants pointed out in their Motions to Dismiss, PureCycle disclosed on April 26, 2022 that the SEC had closed its investigation without any adverse findings or enforcement action at the time— a fact Plaintiffs did not rebut in their Opposition and the Court did not address in its Order.  Def. Roth's Motion to Dismiss (Doc. 118) at 9: *see* Ex. 10 (Doc. 118-10); Pl. Opp. to Defs. Mot. to Dismiss (Doc. 122) at 3, 13, 20-21; Order (Doc. 144) at 19.  The fact that the SEC closed its investigation without any further action undercuts, and does not support, any inference of scienter.

Where no hearing or adverse findings result from an SEC investigation, "the opposing inferences—that the SEC investigation uncovered no evidence of fraud, . . . are more compelling in the absence of particular facts giving rise to a strong inference of fraud."  *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248–49 (8th Cir. 2008); *In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947, 981 (D. Minn. 2009) ("[W]here, as here, an ongoing SEC investigation does not result in hearings or adverse findings, an inference 'that the SEC investigation uncovered no evidence of fraud,' is more compelling than an inference of fraud."); *see Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008) (existence of SEC investigation did not support a finding of scienter where "the SEC's investigation has already settled without a finding of culpability for securities fraud").  Thus, "the fact that [a company] underwent a regulatory investigation, which, notably, was concluded with no

11

charges of securities law violations being brought," fails to add to an inference of scienter. *Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1373 (D.N.M. 2012) (citations omitted). Indeed, the Eleventh Circuit has held that the "'mere existence of an SEC investigation'" does not give rise to any inference "beyond a general suspicion of wrongdoing," which is insufficient to plead scienter. S*ee Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1304 (11th Cir. 2015). As set forth above, on April 26, 2022, the SEC informed PureCycle that it was closing its investigation without further action, a fact which was publicly disclosed by the Company and set forth in Defendants' Motion.[5] The fact that the SEC closed its investigation, even though the Hindenburg Report was publicly available and the SEC presumably had the benefit of those allegations as well as the ability to interview witnesses and review documents, undermines, rather than supports, Plaintiffs' scienter allegations.

Even if the existence of an SEC investigation did give rise to a generalized inference of scienter, then the reverse should also be true. In other words, the fact that the SEC investigation was terminated without further action should negate any inference of scienter raised by the fact of the pending investigation. Therefore, the Court should reconsider its decision, taking into account the fact of the termination of the investigation.

---

[5] While Defendants do not suggest that the SEC termination letter should be construed as an exoneration of Defendants' actions, for the reasons stated herein, the fact of termination negates any inference of scienter that this Court might otherwise derive from the previous existence of an investigation.

## IV.    THE SECOND AMENDED COMPLAINT CONTAINS NO NEW ALLEGATIONS REGARDING DEFENDANTS' PRIOR EXPERIENCE

The Order concluded that the SAC "more precisely emphasize[d] the repeated manner in which Defendants touted their experience," and that such additional allegations "make[] a material difference for purposes of pleading scienter." Order at 18. Yet the Order's finding is legal error, because there was not a single new allegation in the SAC regarding Defendants' prior experience. As such, there is no basis to revisit the Court's prior ruling on Defendants' Motion to Dismiss the First Amended Complaint, which held that Plaintiffs' allegations regarding Defendants' experience failed to allege misstatements adequately. *See* Order Granting in Part Defendants Motion to Dismiss the First Amended Complaint (Doc. 112) at 33 n.18 (holding that "the Complaint is still deficient as to scienter for their statements given its excessive generality" with respect to challenged statements involving prior management experience).

As set forth in Defendants' briefing on the Motions to Dismiss the Second Amended Complaint, Plaintiffs do not allege particularized facts establishing that the Individual Defendants were even involved in the purported business failings at issue—which occurred long after each Individual Defendant left the respective companies—let alone drove the ventures "into the ground." Doc. 116 at 17; *compare* SAC ¶ 34 (alleging only that (i) Innventure was founded by, *inter alia*, Otworth and Brenner, (ii) Brenner served as founding CEO of TyraTech and TyraTech was acquired for $2.15 million nine years after Brenner's departure, and (iii) Otworth held an unspecified C-level role at XL

TechGroup).  Not only are there no new facts in the SAC, Plaintiffs' Opposition merely summarily concluded, without citation, that "via Innventure, [Defendants] had previously taken six early-stage companies public that led to investor losses," but do not identify any facts to support the Individual Defendants' involvement.[6]  That is because there is none—the alleged business failures happened *after* Defendants ceased to be involved with those companies.

The Order concluded that the allegation that "'Defendants Otworth, Dee, and Brenner *each one again* touted their *respective* experience' to the SEC" successfully alleges scienter because it asserts that each Defendant individually touted his own experience rather than that each Defendant spoke to other Defendants' experience, quoting Paragraph 61 of the SAC.  Order at 17 (quoting Doc. 113 ¶ 61).  But Paragraph 61 merely refers back the very same presentation that the First Amended Complaint claimed was misleading due to its reference to the Individual Defendants' prior experience.  The addition of the vague term "respective" does not add any new factual allegation to the SAC.  *Patton v. Tuskegee Fed. Credit Union*, No. 3:17-CV-659-WKW-WC, 2018 WL 4677838, at *5 (M.D. Ala. Mar. 16, 2018), *report and recommendation adopted*, No. 3:17-CV-659-WKW, 2018 WL 4094853 (M.D. Ala. Aug. 28, 2018) (characterization of the facts does not add new factual allegations); *Maultsby v. St. Petersburg Coll.*,

---

[6] Without any link to Defendants' involvement, Plaintiffs also fail to plead how any further information regarding Innventure would be material to a reasonable investor.  Doc. 116 at 17-18.  Moreover, Defendants' prior experience was public for *over a decade* before any challenged statement or omission was made.  *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) (even "repackaging of already-public information" cannot form the basis of an actionable omission).

14

No. 8:10-CV-2288-T-30TGW, 2011 WL 940468, at *1 (M.D. Fla. Mar. 17, 2011) (same).

Moreover, even if the addition of the term "respective" added anything to the SAC, it fails to in any way cure the fundamental flaw in Plaintiffs' argument—there are no facts demonstrating any companies failed on the Individual Defendants' watch, or that any Individual Defendant was even involved with these companies at the time those failures occurred. The SAC's attempt to establish an inference of scienter based on alleged misstatements concerning Individual Defendants' prior business experience thus continues to be inadequate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion for Reconsideration of the Court's Order granting in part and denying in part their Motions to Dismiss be granted, and that the Court grant the Motions to Dismiss the Second Amended Complaint in their entirety.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants conferred in good faith by writing to counsel for Plaintiffs and Counsel for Plaintiffs replied in writing that they will oppose any motion for reconsideration.

Dated this 30th day of June, 2023.

| DECHERT LLP | STOVASH, CASE, SHAY & PEARCE, P.A. |
|---|---|
| /s/ Joni S. Jacobsen | |
| David S. Kistenbroker (*pro hac vice*) | Amy Shay (Florida Bar No. 068841) |

15

Joni S. Jacobsen (*pro hac vice*)
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Telephone: (312) 646-4800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

The VUE at Lake Eola
220 North Rosalind Avenue
Orlando, FL 32801
Telephone: (407) 316-0393
ashay@scsplaw.com

*Attorneys for Defendants PureCycle Technologies, Inc., Michael Otworth, Michael E. Dee, and David Brenner*

DLA PIPER LLP (US)

/s/ Amanda E. Reagan
Amanda E. Reagan (Florida Bar No. 92520)
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 200
Tampa, FL 33607
Telephone: (813) 229-2111
amy.reagan@dlapiper.com

John R. Loftus (admitted *pro hac vice*)
Christine E. Ellice (admitted *pro hac vice*)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Telephone: (310) 595-3000
jake.loftus@dlapiper.com
christine.ellice@dlapiper.com

*Attorneys for Defendant Byron Roth*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

16

*/s/ Joni S. Jacobsen*
Joni S. Jacobsen