# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

WILLIAM C. THEODORE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, BYRON ROTH and TASMIN ETTEFAGH,

Defendants.

Case No. 6:21-cv-809-PGB-GJK

## Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration of the Court's Order on their Motions to Dismiss

Co-Lead Plaintiffs Robert Ciecko and Mariusz Ciecko ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, respectfully submit this opposition to Defendants PureCycle Technologies, Inc. ("PureCycle"), Michael Otworth ("Otworth"), Michael Dee ("Dee"), David Brenner ("Brenner"), and Byron Roth's ("Roth") (collectively, "Defendants") Motion for Reconsideration of the Court's Order on their Motions to Dismiss. ECF No. 149 ("Recon. Mot.").

## Preliminary Statement[1]

This Court correctly held in its Order[2] that the SAC adequately states a claim against Defendants[3] for securities fraud in violation of §§ 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934.  Defendants have provided no basis for this Court to reconsider its Order, an extraordinary remedy only employed in rare circumstances. They do not challenge the Court's ruling on loss causation, and offer no "new evidence" or validly identified "clear error" to justify a reconsideration of the Court's rulings on falsity or scienter.

The Court has now *twice* ruled that Plaintiffs adequately alleged falsity as to Defendants' misstatements regarding both PureCycle's recycling process and its management team's experience. *See* FAC Order at 21-24, 28-30; Order at 13.  In the Order, the Court held, "Defendants have failed to present any new argument that would cause the Court to reverse what it has already determined."  Order at 13.  The same is true as to the instant motion.  The only "new argument" Defendants proffer is their claim that "recent developments" prove PureCycle's technology is viable, thus "undercutting the entire theory of Plaintiffs' claims." Recon. Mot. at 5. As set forth more fully below, the recent development- the commencement of production of "post-

---

[1] All ¶ __ references herein are to the Consolidated Section Amended Class Action Complaint ("SAC"). ECF No. 113. All terms not defined herein are defined in the SAC.  References to "FAC" are to the Consolidated Amended Class Action Complaint filed on September 27, 2021. ECF. No. 90.

[2] "Order" refers to the Court's Order filed on June 15, 2023 denying the Motions to Dismiss the SAC as to all Defendants except Tasmin Ettefagh.

"FAC Order" refers to the Court's Order filed on August 4, 2022 granting in part and denying in part Defendants' Motions to Dismiss the FAC. ECF No. 112.

[3] "Defendants," as used herein, applies to all Defendants except Tasmin Ettefagh.

industrial recycled pellets" at PureCycle's newly constructed and first polypropylene purification plant-- has no bearing on the Court's Order because: 1) it post-dates the Class Period by almost two years and is thus irrelevant to the status of PureCycle's technology at the time of Defendants' misstatements; and 2) there is no evidence that these newly produced pellets are virgin like resin, produced more cost effectively than traditional polypropylene recycling methods, or produced using a broad range of feedstock, *i.e.*, the *actual* theory of Plaintiffs' claims pertaining to misstatements about PureCycle's recycling process.   Specifically, both the FAC and SAC allege that Defendants misrepresented in proxy statements, a registration statement, and in press releases, that PureCycle's recycling process was "proven" to convert waste polypropylene (called feedstock) into ***virgin*** polypropylene resin ***more cost effectively*** than manufacturing virgin polypropylene traditionally, and ***utilizing a broader range of feedstock*** than traditional recycling.   The falsity ruling under both §§ 10(b) and 14(a) should thus stand.

The Order made clear that the Court had previously dismissed the FAC *solely* "because it found that Plaintiffs had not sufficiently alleged scienter." Order at 6-7. Though the §14(a) claim does not require scienter, the Court correctly held in the Order that the SAC sufficiently alleges scienter pursuant to §10(b).  With regard to Defendants Otworth, Dee, and Brenner, the Court found scienter because the SAC avers with "greater specificity…the repeated instances wherein Defendants collectively and individually flaunted their past experience without disclosing their alleged prior business failings." Order at 17.  As part of its holistic analysis, the Court

3

also based its ruling on Defendants' significant financial gain from the SPAC merger, access to internal company information, lack of experience with polypropylene recycling, and the SEC's investigation "pertaining to, among other things, statements in connection with PureCycle's technology, financial projections, key supply agreements and management." Order at 17-19. With regard to Defendant Roth, the Court correctly rejected his piecemeal attacks and found scienter based on his "checkered history," financial motive to act fraudulently, the "core operations" doctrine, Roth's signing of the S-4, Schedule 14A (which contained the SPAC merger agreement), including the initial Proxy Statement and then later the amended Proxy Statement for Special Meeting of Stockholders of Roth Acquisition with the SEC *which showed his "ongoing involvement with the SPAC merger over a period of several [pivotal] months,"* and his access to information during that time including the "personnel, books, records, properties, financial statements, internal and external audit reports, regulatory reports, Contracts, Permits, commitments and any other reasonably requested documents and other information of [PureCycle Inc.], when Roth issued his misstatements." Order at 22-23. *As set forth below, the Recon. Mot. does not identify any clear error in the Court's scienter ruling as to any Defendant*.

Given that Defendants have not provided this Court with *any* credible justification for taking the drastic measure of reconsidering its comprehensive Order, the Recon. Mot. should be denied in its entirety.

## ARGUMENT

### I.    Defendants Provide No Basis For Reconsideration

Courts have delineated only three grounds justifying reconsideration, none of which apply here: "(1) an intervening change in controlling law; (2) the availability of new evidence; [and] (3) the need to correct clear error or prevent manifest injustice." *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2019 U.S. Dist. LEXIS 161566, *5 (M.D. Fl. 2019).[4]  "[R]econsideration of a court's order is an extraordinary remedy and a power to be used sparingly with the burden upon the movant to establish the extraordinary circumstances supporting reconsideration." *Id.* at *6. "A motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Monroe Cty. Emples. Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1321.  The Recon. Mot. fails to set forth any justification, much less "extraordinary circumstances," for why the court should reconsider its past decision, and sets forth no facts or law of "a strongly convincing nature to induce the court to reverse its prior decision." *Skypoint,* 2019 U.S. Dist. LEXIS 161566, *5.  First, there has been no intervening change in controlling law, and Defendants do not argue otherwise.  Second, the "new evidence" Defendants offer are "recent facts" outside the record that post-date the Class Period by almost *two years* and which are irrelevant to either the falsity or scienter analyses.  Third, Defendants point to no clear error or manifest injustice that would warrant a reversal of the Order.

---

[4] All emphasis is added unless otherwise noted, and internal citations and quotation marks are omitted unless otherwise noted.

### A. There Has Been No "New Evidence" That Justifies Reconsideration

To show that reconsideration under Rule 54(b) is appropriate based on newly discovered evidence, "a movant must demonstrate that (1) the proffered evidence was unavailable despite the exercise of due diligence and (2) manifest injustice will result if a court does not reconsider its earlier decision." *Moshell v. Sasol Ltd.*, 2021 U.S. Dist. LEXIS 138757, *40 (S.D.N.Y. 2021). "[T]o establish manifest injustice, a movant must demonstrate that the new evidence is of such importance that it probably would have changed the outcome of the prior ruling." *Id.*

Defendants ask this Court to reconsider its Order based on documents outside the record, ***which post-date the Class Period by almost two years.*** These include an April 25, 2023 press release announcing mechanical completion of PureCycle's first polypropylene purification plant, a June 20, 2023 press release announcing that the Company commenced production of post-industrial recycled pellets, and a June 28, 2023 Form 8-K announcing that an "independent construction monitor" confirmed PureCycle had in fact commenced production. These "recent developments," the first of which was available to Defendants two months before the Court ruled on the motions to dismiss[5], do not undermine the SAC's allegations in any respect and would not have changed the outcome of the Order.

---

[5] *Williams v. Cruise Ships Catering & Serv. Int'l*, 2004 U.S. Dist. LEXIS 7586, *8-9 (S.D. Fla. March 31, 2004) (denying motion for reconsideration because, "I do not have to consider the filings that were available but not filed for my review before I issued the Order Denying Defendant's Motion to Dismiss.")

First, the SAC alleges that Defendants misled investors during the Class Period by touting PureCycle's "breakthrough" recycling process as the only "economically-viable," "cost effective," "proven," "validated" process to recycle waste polypropylene into virgin-like resin, which uses a "broader range of feedstock than traditional recycling" and is more cost effective than traditional methods of manufacturing polypropylene, though in reality, the process was unproven, faced major obstacles at lab scale, requires feedstock of the highest quality with minimal contamination, the economics of conducting the process at commercial scale are cost prohibitive, and PureCycle's supposedly "revolutionary" process is based on an old prior patent that never reached commercial scale. The "recent developments" (less than one month old) Defendants proffer do not undermine these allegations in a single respect. The fact that *less than one month ago* PureCycle's first and only functional plant started producing recycled pellets of unknown quality, at unknown cost, using feedstock of an unknown range or quality, has no bearing on the falsity of Defendants' misstatements or their scienter when making those misstatements (for purposes of the §10(b) claim only) during the Class Period. Indeed, PureCycle has made no claim, nor did the "independent construction monitor" opine, that the "post-industrial recycled pellets" are comparable to *virgin-like* resin, produced *cost effectively* as compared to traditional methods of recycling polypropylene, or using a *broad range of feedstock*. In fact, further demonstrating that PureCycle did not (and still does not) have the ability to convert a "broad" range of feedstock into virgin-like resin, the FDA issued a "no objection letter" to PureCycle on September 6, 2022 stating that it is only permitted to recycle

polypropylene into packaging for food and drink as long as the feedstock comes *solely from drink cups*, hardly the "broad range" they touted. *See* Ex. A[6], attached hereto.

*As this Court has now twice ruled*, Defendants' misstatements triggered a duty to speak fully and truthfully *based on the information available at the time*. FAC Order at 29 ("it seems reasonable that an investor would be interested to know the *current* performance issues regarding the patented recycling method"); Order at 7, 13 ("the Court rejected Defendants' argument that they did not have a duty to disclose...the performance issues *at the relevant time* regarding the patented recycling method...Defendants have failed to present any new argument that would cause the Court to reverse what it has already determined." *See also FindWhat Investor Group v. FindWhat.com,* 658 F.3d 1282, 1299 (11th Cir. 2011); *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 770-71 (11th Cir. 2007). In any event, at most these recent developments raise a factual dispute that is inappropriate for adjudication on a motion to dismiss and thus cannot serve as a basis for reconsideration.

Second, Defendants claim this recent development supposedly demonstrating that PureCycle's technology is viable *now* (as explained below, it does not) somehow negates allegations that its recycling technology was "not *yet* functional" at the time they made their misstatements almost *two years ago*. Recon. Mot. at 5. That PureCycle

---

[6] The Court can take judicial notice of FDA documents. *See Rina Watler v. Novartis Pharms. Corp.*, 2022 U.S. Dist. LEXIS 60448, *5-6 (M.D. Fl.)(citing Fed. R. Evid. 201(b) and taking judicial notice of "FDA publications" because they are "accessible on the FDA website [so] the facts within the documents 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'")

started producing post-industrial recycled pellets in ***June 2023*** is irrelevant to statements Defendants made about the status of PureCycle's technology from ***November 16, 2020 through November 10, 2021***. What PureCycle has done with its technology or manufacturing process post-Class Period is irrelevant to the state of affairs at the time Defendants issued their Class Period misstatements. In other words, developments that post-date the Class Period by two years are not "of such importance that it probably would have changed the outcome of the prior ruling."

## B. Defendants Have Not Identified Any Clear Error in the Order

After conducting a comprehensive *holistic* analysis, the Court aptly ruled that *all the scienter allegations* set forth in the SAC, "when aggregated together, are sufficient to show a plausible claim for scienter." Order at 19. Yet, Defendants cherry pick three of those allegations and argue based on mischaracterizations of the Order and new arguments they did not include in their motions to dismiss that the extraordinary measure of reconsideration is warranted.

### 1) Defendants' Lack of Response to the Hindenburg Report

Aiming their arrow at an illusive target, Defendants argue that the Court committed "legal error" by considering their silence in the face of the Hindenburg Report in the scienter analysis because they "had no duty to respond to or rebut the statements." Recon. Mot. at 7-9. However, the Court did not base its scienter ruling on Defendants' silence nor did the Court ever state that Defendants *had a duty* to respond to the Hindenburg Report. The Court stated *in a footnote* that the "especially

troubling" fact that Defendants issued "repeated statements…to bolster their own credibility," but then said nothing when that credibility was attacked, "makes an inference of scienter *more* compelling." Order at 18, fn. 7. The Court analyzed other allegations in the body of its Order that "when reviewed in tandem with one another sufficiently plead scienter." Order at 17-19. Defendants' failure to defend their honor after so vocally touting it simply made the already sufficient inference of scienter even "more compelling," thus distinguishing this case from *In re Draftkings Inc. Sec. Litig.*, 2023 U.S. Dist. LEXIS 4519, *112-113, Recon. Mot. at 9. Moreover, unlike the defendants' response to the Hindenburg Report in *Draftkings*, PureCycle's "response" consisted of three sentences, none of which denied the contents of the Hindenburg Report in any way.

### 2) The SEC Investigation

In conducting a *holistic* analysis, the Court considered the SEC investigation as one piece of the scienter puzzle and acknowledged that it is "not dispositive in its own right." Order at 19. Defendants nevertheless argue that reconsideration is warranted because the Court did not hold that the closure of the investigation undermines scienter—***though not a single Defendant raised that argument in either motion to dismiss***[7]. Recon. Mot. at 10-12. Indeed, Defendants PureCycle, Otworth, Dee and Brenner did not mention the investigation in their motion to dismiss at all, much less argue that its conclusion negates scienter. ECF No. 116. They are thus foreclosed from arguing it *for*

---

[7] As set forth below, Defendants' claim that they raised this in the motion to dismiss is blatantly false. Recon. Mot. at 10-12.

*the first time* as a basis for reconsideration. *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2019 U.S. Dist. LEXIS 161566, **19, 20 ("Because the Court finds the defendants are raising these arguments as applied to scienter for the first time, reconsideration is inappropriate"). "It is not appropriate to raise a new argument in a motion for reconsideration," and "[i]t is not the role of the Court to make arguments for the parties but to consider and decide the specific arguments made by the parties." *Monroe Cty. Emples. Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1322 (N.D. Ga.).

Moreover, the Court did not base its scienter ruling as to Defendant Roth in any way on the existence of the investigation. Order at 21-24. In fact, the investigation is not mentioned in the Court's four page analysis of Defendant Roth's scienter. *Id.* This is unsurprising considering that Defendant Roth only references the closure of the investigation *briefly* in one sentence in the *statement of facts* of his separate motion to dismiss, solely as an aside to his point that the subpoena is irrelevant to him given his lack of involvement with PureCycle at the time of its issuance, ECF No. 118, at 9. *See OCR Solutions v. Charactell, Inc.*, 2017 U.S. Dist. LEXIS 219555, 2017 WL 6948587, *1 (M.D. Fla. Oct. 6, 2017) ("A party may abandon an argument by failing to plainly and prominently raise it, for instance by devoting a discrete section of his argument to that claim." (marks and citations omitted)); *Connectus LLC v. Ampush Media, Inc.*, 2017 U.S. Dist. LEXIS 92941, 2017 WL 2620541, *5 (M.D. Fla. June 16, 2017) (noting "such terse, off-handed references do not sufficiently raise an argument").

In any event, that the SEC decided not to take "further action at this time" hardly undermines the inference of scienter, especially in light of the numerous other

11

scienter allegations the Court found sufficient "when reviewed in tandem with one another."[8]  As Defendants explicitly concede, "the SEC termination letter should [not] be construed as an exoneration of Defendants' actions…" Recon. Mot. at 12, fn. 5. Indeed, not a single SEC document or PureCycle disclosure claims that the SEC concluded that Defendants had not engaged in any wrongdoing.[9]

### 3)  PureCycle Management's Experience

Defendants' argument that the Court committed "legal error" in finding scienter for misstatements pertaining to PureCycle management's prior experience, is based on blatant mischaracterizations of the Order.  Specifically, Defendants argue that the Court erred in finding that the SAC contained "new factual allegations" regarding management's prior experience so the Court therefore had "no basis to revisit the Court's prior ruling on Defendants' Motion to Dismiss the First Amended Complaint, which held that Plaintiffs' allegations regarding Defendants' experience failed to allege misstatements adequately." Recon. Mot. at 13-15.  Defendants are wrong in both respects.  First, nowhere in the Order did the Court state that it based its scienter ruling on "new" allegations in the SAC regarding management's prior experience.  The

---

[8] That distinguishes this case from those Defendants cite, with one exception. Though relying on *In re MoneyGram Int'l, Inc. Sec. Litig.,* Defendants fail to mention that the court there ruled that plaintiff **had** sufficiently alleged scienter, *despite the termination of the SEC investigation with no further action.* 626 F. Supp. 2d 947, 983 (D. Minn. 2009).

[9] The SEC can determine not to take further action on an investigation for countless reasons, including a lack of resources to continue the investigation "at this time." Notably, less than three weeks after the SEC purportedly concluded its non-public investigation, the Company entered into a "Separation Agreement" with Defendant Brenner stating that he will "no longer serve as the Chief Commercial Officer of the Company") and then six weeks after that the Company announced that Defendant Otworth would "resign" to return to Innventure.  Exs. B-C, attached hereto.  The Court can take judicial notice of these Forms 8-K filed with the SEC announcing their departures. *See In re Ins. Mgmt. Solutions Group Sec. Litig.*, 2001 U.S. Dist. LEXIS 9962, *26 (M.D. Fl. 2001).

Order made clear that the SAC had adequately alleged scienter because, "Plaintiffs aver with *greater specificity*, as compared to their previous complaint, the repeated instances wherein Defendants collectively *and* individually flaunted their past experience without disclosing their alleged prior business failings." Order at 17.  The Court reached this conclusion for two reasons: 1) the "shift in phrasing" demonstrating that "each Defendant *individually* 'acted with the required state of mind' by touting his *own* experience while omitting previous failures," and 2) "Plaintiffs *more precisely emphasize* the repeated manner in which Defendants touted their experience." Order at 17-18. In other words, the Court's scienter ruling with regard to misstatements discussing management's experience did not turn on the pleading of new facts, but rather on greater detail and specificity as to facts already pled in the FAC.

Second, the Court explicitly ruled in the FAC Order, that Plaintiffs *had* adequately alleged misstatements pertaining to management experience:

> By willingly flaunting the PureCycle Inc. management's team's collective experience, the duty arose to speak truthfully about said experience…the revelations from the Hindenberg Report about the PureCycle Inc. executives' six previously failed ventures "would have been helpful to a reasonable investor assessing the quality and extent of this experience."

FAC Order at 29.  Defendants selectively quote the second half of a sentence from that order regarding the Court's finding that the FAC had not alleged scienter as to these misstatements due to "generality [that] must be fixed upon repleader" (which as stated above the Court found the SAC had done), but omits the first half of the sentence where the Court stated, "the Court, however, agrees with Plaintiffs that the individual PureCycle Defendants *have actual knowledge of their own experience.*" *Id.* at 33, n.18.

The Court then stated in the Order that, "Defendants have failed to present any new argument that would cause the Court to reverse what it has already determined," and concluded that the SAC had added the detail and specificity necessary to adequately plead scienter.  Order at 13, 17-18.  Thus, there is no legal error.

In any event, Defendants did not argue in their motion to dismiss that the SAC contains no *new* allegations regarding management's prior experience as a basis for challenging scienter, and are thus not permitted to raise it now to justify their Recon. Mot. *Skypoint Advisors, LLC*, 2019 U.S. Dist. LEXIS 161566, \*\*19, 20; *Monroe Cty. Emples. Ret. Sys.*, 333 F. Supp. 3d at 1322.

Defendants next rehash arguments consisting of disputes of fact regarding their involvement in the six failed ventures (failures which the SAC alleges the Individual Defendants perpetrated, ¶¶ 7, 10, 47-50) and a truth on the market defense, Recon. Mot. at 13-14, which they *twice* raised in motions to dismiss both the FAC (*see* ECF No. 93, at 17-18) and SAC (*see* ECF No. 116, at 17-18), and which the Court has already considered and *twice* rejected.  Rightfully so given that neither disputes of fact nor truth on the market defenses are ripe for adjudication on a motion to dismiss much less a valid basis for reconsideration, and the Court-- as it noted-- is required to accept well pled factual allegations as true (*See* Order at 2, fn. 1, 9). *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes."); *Kerzner v. Hilton Hotels Corp.*, No. 805CV178T30MSS, 2005 WL 1309669, at \*1 (M.D. Fla. May 31, 2005) ("there are disputes involving material issues of fact

and therefore the complaint may not be dismissed"); *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 Fed. Appx. 972, 976 ("the existence of an affirmative defense will not support a motion to dismiss.")

## CONCLUSION

Therefore, for the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' Recon. Mot. in its entirety.

Dated: July 14, 2023

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Tamar A. Weinrib*
Tamar A. Weinrib
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (646) 581-9973
Facsimile: (917) 463-1044
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, a true and correct copy of the foregoing, and accompanying exhibits, were electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tamar A. Weinrib*
Tamar A. Weinrib

15