## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**WILLIAM C. THEODORE**, individually
and on behalf of all others similarly
situated,

        Plaintiffs,

vs.                                 Case No.:  6:21-cv-809-PGB-GJK

**PURECYCLE TECHNOLOGIES, INC.,
MICHAEL OTWORTH, MICHAEL E.
DEE, DAVID BRENNER, and BYRON
ROTH**,

        Defendants.

_____/

## DEFENDANT BYRON ROTH'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Byron Roth ("Mr. Roth"), by and through his undersigned attorneys, DLA Piper LLP (US), hereby responds to the Second Amended Complaint of Co-Lead Plaintiffs Robert Ciecko and Mariusz Ciecko ("Plaintiffs"), dated August 18, 2022 (ECF No. 113) (the "SAC").

To the extent that the paragraphs in the SAC are grouped under section titles or headings, no response is required to such section titles or headings. To the extent any response is required to any section title or heading, it is denied. Mr. Roth further denies any averments in the introductory paragraph, cover page, table of contents, and

1

footnotes of the SAC. For each Paragraph in the SAC that contains footnotes, the corresponding answer is responsive to that Paragraph, inclusive of all footnotes.

Mr. Roth hereby answers the SAC as follows:

**ANSWER TO UNNUMBERED INTRODUCTION:** Mr. Roth lacks knowledge or information sufficient to admit or deny the allegations in the Introduction regarding Plaintiffs' investigation and beliefs. To the extent that an answer is deemed necessary, Mr. Roth denies each and every allegation in the Introduction and denies evidentiary support exists for Plaintiffs' allegations of misconduct as such allegations are completely unfounded.

## ANSWER TO "NATURE OF THE ACTION"

1. Mr. Roth admits that Plaintiffs purport to bring this action as a federal securities class action on behalf of a class consisting of all persons who purchased or otherwise acquired securities of PureCycle during the putative class period of November 16, 2020, through November 10, 2021. Mr. Roth admits that Plaintiffs purport to seek remedies under the Securities Exchange Act of 1934. Mr. Roth denies that Plaintiffs or any other purchaser of PureCycle securities suffered any compensable damages and denies that class certification is appropriate. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 1.

2. Mr. Roth admits that Roth CH Acquisition I Co. ("ROCH") was a publicly traded blank-check special purpose acquisition company ("SPAC"), which was formed to effectuate a merger, share exchange, asset acquisition, stock purchase, recapitalization, reorganization or other similar business combination. Mr. Roth

admits that ROCH was formed in 2019.  Mr. Roth admits that ROCH had not commenced business operations prior to finding a business to combine with, but Mr. Roth clarifies that ROCH was undertaking organizational activities during this time period relating to the business combination's formation and the subsequent proposed initial public offering.  Mr. Roth admits he was the Chairman and CEO of ROCH and is currently executive Chairman of Roth Capital.  Mr. Roth states that Roth Capital's China-related business was a minority segment of its overall business by any metric.  Mr. Roth admits ROCH acquired PureCycle pursuant to a de-SPAC transaction.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 2.

3.    Mr. Roth admits PureCycle was founded in April 2015. Mr. Roth admits that the process for recycling polypropylene was initially developed and licensed by Procter & Gamble.  Mr. Roth admits that polypropylene is a common plastic that was invented in or about 1951.  Mr. Roth lacks knowledge and information sufficient to form a belief as to the truth and accuracy of Plaintiffs' characterization of top scientists and chemical companies' efforts since 1951 and, on that basis, denies the allegation.  Mr. Roth admits that polypropylene is used in a wide array of consumer facing and industrial products.  Mr. Roth admits polypropylene's properties such as its strength, toughness, and elasticity make it more difficult to recycle as disclosed in PureCycle's public filings with the SEC as was PureCycle's status as a pre-revenue company at the time the SAC was filed.  Mr. Roth lacks knowledge and information to form a belief as to the truth of the last sentence in Paragraph 3 and, on that basis, denies the

3

allegation.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 3.

4.      Mr. Roth denies that Defendants' statements about PureCycle's recycling process throughout the putative class period, or at any time, constitute "misstatements."  Mr. Roth asserts that PureCycle's statements about its recycling process speak for themselves, and Mr. Roth respectfully refers to the statements themselves for their complete contents.  To the extent that Paragraph 4 implies that Defendants issued misstatements, that there is a valid class, or that the Class Period as defined is appropriate, Mr. Roth denies each and every allegation in Paragraph 4.

5.      Mr. Roth denies the allegation in Paragraph 5 and states that PureCycle's public statements and public filings with the SEC speak for themselves. Mr. Roth respectfully refers to the statements themselves for their complete contents.

6.      Mr. Roth admits that the scalability of the recycling process and competition for feedstock are known risk factors to PureCycle's business, and further avers that these risks were expressly disclosed in multiple public filings with the SEC, including in the Registration Statement filed on November 20, 2020, and the Final Proxy Statement filed on February 12, 2021.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 6.

7.      Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents.  Mr. Roth admits that two members of PureCycle's management team were also on the management team of

4

Innventure, a venture capital firm that funds early-stage technology companies and the parent company of PureCycle prior to the merger.  Mr. Roth lacks knowledge and information sufficient to admit or deny the exact details of Plaintiffs' allegations regarding Innventure's previous IPOs, nor the condition of the companies and alleged losses incurred in the aftermath of the IPOs, but denies that Plaintiffs' characterization is accurate, complete, or presented with full context.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 7.

8.    Mr. Roth denies the allegations in Paragraph 8.

9.    Mr. Roth admits that Hindenburg Research published a report on May 6, 2021, authored by Nate Anderson, titled "PureCycle: The Latest Zero-Revenue ESG SPAC Charade, Sponsored by the Worst of Wall Street" ("the Report"). Mr. Roth admits that the Report purports to contain information from interviews with several unnamed former employees of PureCycle executives' prior companies as well as supposed named "industry experts" who purportedly work in the same industry as PureCycle.  Mr. Roth lacks knowledge and information sufficient to form a belief as to the unnamed individuals' identities or whether the unnamed individuals or the named individuals were actually interviewed for the Report and, on that basis denies the allegations.  Mr. Roth admits that the Report purports to have based some of its information on public sources.  Mr. Roth admits that excerpted portions within the quotation marks in the second sentence of Paragraph 9 reflect portions of the statements published on the "About Us" page of Hindenburg Research's website.

Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 9.

10. Mr. Roth admits that the excerpted text that appears within quotation marks in Paragraph 10 reflects portions of statements in the Report as well as statements the Report purports to have quoted from unnamed former employees and individuals purportedly within the industry, but denies that Plaintiffs' selective quotation is accurate, complete or presented with full context (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 10.

11. Mr. Roth admits that the excerpted text that appears within quotation marks in Paragraph 11 reflects statements in the Report, but denies that Plaintiffs' selective quotation is complete or presented with full context or that anything in the Report is accurate or based on reliable sources.  Mr. Roth lacks knowledge and information sufficient to form a belief as to the truth of the allegation regarding the sources Hindenburg Research purports to have relied upon and, on that basis, denies these allegations.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 11.

12. To the extent Paragraph 12 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves.  Mr. Roth lacks knowledge and information sufficient to form a belief as to the truth of the allegation regarding intraday trading occurring "on this news" and,

on that basis, denies the allegation.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 12.

13.    Mr. Roth admits that PureCycle released a press release on May 6, 2021, responding to the Report (the press release speaks for itself).  Mr. Roth admits the excerpted portions included in Paragraph 13 reflect statements in the press release, but denies that Plaintiffs' selective quotation is complete or presented with full context. Moreover, Mr. Roth expressly denies any implication raised by the allegations of Paragraph 13 that PureCycle had any obligation to challenge or negate specific allegations of the Report.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 13.

14.    Mr. Roth admits that PureCycle filed a 10-Q on November 10, 2021, in which it disclosed a September 30, 2021, SEC investigative subpoena.  Mr. Roth states that on April 26, 2022 (prior to the filing of the SAC), PureCycle filed an 8-K in which it disclosed that the "SEC concluded its non-public fact-finding investigation without further action at this time."  Mr. Roth otherwise states that the 10-Q and the 8-K speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents.  To the extent Paragraph 14 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 14.

15.     Mr. Roth states that the allegations contained in Paragraph 15 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth denies each and every allegation in Paragraph 15.

### ANSWER TO "JURISDICTION AND VENUE"

16.     Mr. Roth states that the allegations contained in Paragraph 16 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth admits that Plaintiffs purport to bring claims under Sections 10(b), 14(a), 20(a) and SEC Rules 10b-5 and 14a-9 promulgated thereunder.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 16.

17.     Mr. Roth states that the allegations contained in Paragraph 17 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth admits that this Court has subject matter jurisdiction over Counts One and Two of this action, but denies that this Court has subject matter jurisdiction over Counts Three and Four.  As alleged, Count Three is a derivative claim that belongs to PureCycle, and Plaintiffs lack standing to bring this claim.

18.     Mr. Roth states that the allegations contained in Paragraph 18 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth admits only that this Court has jurisdiction over him in this action.

19.     Mr. Roth states that the allegations contained in Paragraph 19 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth admits only that venue is proper in this District.

20.     Mr. Roth states that the allegations contained in Paragraph 20 call for a legal conclusion to which no response is required.  To the extent a response is required, Mr. Roth denies all allegations in Paragraph 20.

## ANSWER TO "PARTIES"

21.     Mr. Roth admits that Plaintiffs have previously filed certifications regarding their acquisitions of PureCycle securities but denies that such acquisitions were at artificially inflated prices or that Plaintiffs were damaged upon the purported "revelation of the alleged corrective disclosures."  To the extent Paragraph 21 implies there is a valid class or that the Class Period as defined is appropriate, Mr. Roth denies the allegations in Paragraph 21.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 21.

22.     Mr. Roth admits the allegations in Paragraph 22 except to the extent that Paragraph 22 implies that all PureCycle shares of common stock acquired in the Merger were freely tradeable after the closing of the Merger in March 2021 and not subject to certain restrictions or lockups, Mr. Roth denies the allegations and respectfully refers the Court to PureCycle's public filings with the SEC concerning terms for the sale of founders shares.

23.     Mr. Roth admits that Michael Otworth previously served as the Chief Executive Officer of PureCycle and Chairman of the combined company's Board of Directors.  Mr. Roth denies all other allegations in Paragraph 23.

24.     Mr. Roth admits that Michael E. Dee previously served as the Chief Financial Officer of PureCycle.  Mr. Roth denies all other allegations in Paragraph 24.

25. Mr. Roth admits that David Brenner previously served as the Chief Commercial Officer of PureCycle. Mr. Roth denies all other allegations in Paragraph 25.

26. Mr. Roth admits the allegations in Paragraph 26.

27. Defendant Tasmin Ettefagh has been dismissed and accordingly no response is required to this allegation. *See* Order on Motion to Dismiss, dated June 15, 2023 (ECF No. 144), at 20-21, 26, 29, 32.

28. Mr. Roth admits that the Individual Defendants had responsibilities common to their respective positions and admits that due to those positions they likely had access to material non-public information. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 28.

29. The allegations in Paragraph 29 require no response.

30. The allegations in Paragraph 30 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves regarding the terms and conditions of any compensation or grants of shares and denies any allegations inconsistent with, contrary to or not supported by the entirety of those documents. Mr. Roth otherwise denies each and every allegation in Paragraph 30.

## ANSWER TO "SUBSTANTIVE ALLEGATIONS"

31. Mr. Roth admits that, as recognized by the SEC, a SPAC is a legally recognized vehicle for various transactions, including transitioning a private company

to a publicly traded company. Mr. Roth admits that SPACs typically have no ongoing business operations prior to initiating a business combination, and typically their assets comprise money raised in their IPOs. Mr. Roth avers that the allegations in the fourth sentence in Paragraph 31 can only be responded to as written based on speculation and, on that basis, denies the allegations in this sentence. Mr. Roth admits that a main difference between a SPAC and a traditional reverse merger is that a SPAC proactively seeks an acquisition target with the proceeds of its IPO. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 31.

32. Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations or characterizations inconsistent with, contrary to, or not fully supported by the entirety of these documents. Mr. Roth otherwise admits the allegations in Paragraph 32.

33. Mr. Roth admits that on March 17, 2021, PureCycle consummated the previously announced business combination with ROCH at which time Mr. Roth ceased acting as Chairman of the Board of Directors and CEO of ROCH. Mr. Roth admits he is Executive Chairman of Roth Capital and that Roth Capital is an investment bank based in Newport Beach, California. Mr. Roth admits he owns 75% or more of CR Financial Holdings Inc, which is the holding company for Roth Capital. Mr. Roth denies that Roth Capital "largely operates [or operates at all] in the murky world of small cap and microcap banking." Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 33.

34.     Mr. Roth states that Roth Capital has raised approximately $113 billion from 2000 through June 2023 and that its China-related business was a minority segment of its overall business over that time period. Mr. Roth admits that a purported documentary called, "The China Hustle" was published but denies that the purported documentary, and Plaintiffs' characterizations of same, are accurate, complete, or with full context (the purported documentary was notably tainted by the allegations of a short seller). Mr. Roth denies that investors lost $3.1 billion as implied by Plaintiffs' allegations. Mr. Roth admits that the excerpted statement within the quotation marks in Paragraph 34 reflects portions of a statement in a March 28, 2018, Vanity Fair article discussing the purported documentary, but Mr. Roth denies that Plaintiffs' characterization is complete, accurate or presented with full context (the article mentions nothing about Mr. Roth or Roth Capital). Mr. Roth asserts that Roth Capital's research division's reports speak for themselves. Mr. Roth denies that his FINRA BrokerCheck report shows any regulatory sanctions or arbitrations; Mr. Roth's BrokerCheck report is clean. Some of Roth Capital's BrokerCheck disclosures date back to before Mr. Roth had any affiliation with the firm and its predecessors. The FINRA BrokerCheck report for Roth Capital shows that 9 of the 12 arbitrations date back to the 1990s, the most recent arbitration dates back to 2005 (Roth Capital substantially reduced its retail presence by in or about 2001; the firm's name was changed to "Roth Capital" in 2000), and none of the arbitrations or regulatory matters are alleged to involve Chinese reverse mergers. Moreover, as clearly disclosed in the Roth Capital FINRA BrokerCheck report, regulatory matters were settled without any

admission or denial of liability and none were related to supposed reverse mergers of Chinese companies or by extension, to the present dispute. Except as expressly admitted herein, Mr. Roth denies all allegations in Paragraph 34.

35. Mr. Roth admits that ROCH entered into an agreement and plan of merger on November 16, 2020. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 35.

36. Mr. Roth asserts that the public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents. To the extent Paragraph 36 implies that all PureCycle shares of common stock acquired in the Merger were freely tradeable after the closing of the Merger in March 2021 and not subject to certain restrictions or lockups, Mr. Roth denies the allegations and respectfully refers the Court to PureCycle's public filings with the SEC concerning terms for the sale of founders shares. Mr. Roth asserts that Roth Capital's research division's reports speak for themselves. Mr. Roth denies the remaining allegations or lacks sufficient information to form a belief as to the allegations in Paragraph 36 and so denies the same.

37. Mr. Roth asserts that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents. Mr. Roth admits that PureCycle was formed as a Delaware limited liability company on September 15, 2015, as Advanced Resin Technologies, LLC. Mr. Roth admits PureCycle changed

its name in November 2016. Mr. Roth admits that its patented process for recycling polypropylene removes color, odor, and other contaminants from plastic waste feedstock and turns it into near-virgin plastic. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 37.

38.    Mr. Roth admits that polypropylene is a common plastic that has historically represented a limited percentage of recycled plastics. Mr. Roth admits that, as disclosed in PureCycle's public filings with the SEC, there are risks associated with recycling polypropylene on a commercial scale. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 38.

39.    Mr. Roth admits that, as disclosed in PureCycle's public filings with the SEC, historically polypropylene recycling has had economic and supply-based constraints and challenges. Mr. Roth lacks the specific knowledge or information to support a belief as to whether the "world's top scientists and major chemical companies" have been "unsuccessfully seeking a recycling solution" since 1951 and, on that basis, denies the allegations. Mr. Roth denies the allegations in Paragraph 39 to the extent they allege that the recycling of polypropylene is impossible to consummate effectively or economically. Mr. Roth states that PureCycle's public statements (to the extent they were made as Plaintiffs allege) and public filings with the SEC speak for themselves. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 39.

40.    Mr. Roth admits the allegations in Paragraph 40 in part insofar as PureCycle's public statements and public filings with the SEC speak for themselves,

14

but states that the recycling process is far more complicated, and PureCycle is not "purportedly" using an extraction process. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 40.

41.    Mr. Roth admits that PureCycle has found a means to recycle polypropylene effectively and economically and states that PureCycle's public statements and public filings with the SEC speak for themselves. On June 28, 2023, PureCycle filed a Form 8-K with the SEC disclosing that "the independent construction monitor reviewing construction and commissioning of the PureCycle Technologies, Inc. polypropylene purification plant in Ironton, Ohio ('Ironton project') issued its certification confirming commencement of production of post-industrial recycled ('PIR') pellets from Ironton Project feedstock." Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 41.

42.    Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and admits that PureCycle's technology is based on a license it obtained from P&G in October 2015. Mr. Roth denies the allegations and characterizations concerning the experience of the Individual Defendants. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 42.

43.    Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents. Mr. Roth further states that on June 28, 2023, PureCycle filed a Form 8-K with the SEC disclosing that "the independent construction monitor reviewing construction and commissioning of the

PureCycle Technologies, Inc. polypropylene purification plant in Ironton, Ohio ('Ironton project') issued its certification confirming commencement of production of post-industrial recycled ('PIR') pellets from Ironton Project feedstock."  Mr. Roth denies the remaining allegations and characterizations in Paragraph 43.

44.    Mr. Roth admits that for PureCycle's recycling technology, the feedstock is polypropylene waste, and the feedstock is put through a purification process to turn it into a pure virgin-like form.  Mr. Roth admits that maintaining a minimum quality and quantity of feedstock is a known risk to PureCycle's business, which has been repeatedly disclosed as such in PureCycle's public filings with the SEC.  Mr. Roth asserts that PureCycle's public statements and public filings with the SEC speak for themselves.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 44.

45.    Mr. Roth admits that John Laymen's interview was posted on PureCycle's website on November 1, 2020, and that the recording speaks for itself. Mr. Roth admits that maintaining a minimum quantity and quality of feedstock is a known risk to PureCycle's business and has been disclosed as such in PureCycle's public filings with the SEC.  Mr. Roth asserts that PureCycle's public filings speak for themselves and deny any allegations inconsistent with, contrary to, or not supported by the entirety of these documents.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 45.

46.    Mr. Roth lacks knowledge and information sufficient to form a belief as to whether the quotes attributed to Scott Saunders and Richard Minges reflect

statements made by each individual and are accurate and, on that basis, denies the allegations. Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 46.

47. Mr. Roth admits that, as disclosed in PureCycle's public filings with the SEC, PureCycle was a majority owned subsidiary of Innventure prior to the SPAC merger in November 2020. Mr. Roth states that Innventure's public statements speak for themselves. Mr. Roth lacks knowledge or information sufficient to admit or deny the exact details of Plaintiffs' allegations regarding Innventure contained in the six bulleted paragraphs, but denies that Plaintiffs' characterization is accurate, complete, or presented with full context. Except as expressly admitted herein, Mr. Roth denies all allegations in Paragraph 47.

48. Moreover, Mr. Roth lacks information or knowledge sufficient to form a belief as to the whether the excerpted portions of statements within quotation marks purporting to be from unnamed former employees of PetroAlgae, TyraTech, and AgCert reflect statements made by each individual and are accurately quoted and, on that basis, denies the allegations. Mr. Roth lacks knowledge and information sufficient to form a belief as to whether the unnamed individuals or the named individuals were actually interviewed for the Report or worked at any of these companies and, on that basis denies each and every allegation in Paragraph 48.

49.    Mr. Roth lacks knowledge and information sufficient to admit or deny the exact details of Plaintiffs' allegations regarding Innventure's involvement with previous IPOs.  To the extent a response is otherwise required, Mr. Roth denies all other allegations in Paragraph 49.

50.    Mr. Roth states that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents.  Mr. Roth denies each and every remaining allegation in Paragraph 50.

51.    Mr. Roth admits that an S-4 was filed with the SEC on November 20, 2020.  Mr. Roth admits sums received, if any, by Otworth and Dee upon the successful completion of the SPAC transaction were disclosed in PureCycle's public filings with the SEC.  Mr. Roth admits that Otworth and Dee received salaries pursuant to their employment agreements.  Mr. Roth otherwise asserts that PureCycle's public filings speak for themselves and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of these documents.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 51.

52.    Mr. Roth admits that PureCycle's public filings with the SEC disclosed the amount and terms of Dee's compensation, including performance-related restrictions pursuant to his publicly disclosed Executive Employment Agreement.  To the extent Paragraph 52 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 52.

18

## ANSWER TO "MATERIALLY FALSE AND MISLEADING STATEMENTS"

53.     Mr. Roth admits that on November 16, 2020, PureCycle and ROCH announced that PureCycle would become a publicly traded company via an agreement and plan of merger with ROCH.  Mr. Roth admits that he and Mike Otworth are quoted in the press release announcing the agreement and plan of merger.  Mr. Roth otherwise asserts that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations contrary to, or not supported by the entirety of those documents.  To the extent Paragraph 53 implies there is a valid class or that the Class Period as defined is appropriate, Mr. Roth denies the allegations in Paragraph 53.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 53.

54.     Paragraph 54 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Mr. Roth admits that the scalability of the recycling process and competition for feedstock are known risk factors to PureCycle's business, and further avers that these risks were expressly disclosed in multiple public filings with the SEC including in the Registration Statement filed on November 20, 2020, and the Final Proxy Statement filed on February 12, 2021. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 54.

55.     Mr. Roth asserts that the November 16, 2020, press release speaks for itself and denies any allegations or characterizations that are inconsistent with,

19

contrary to, or not fully supported by the entirety of this document.  Mr. Roth denies that the emphasis added by Plaintiffs through the use of bolded and italicized font appears in the original.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 55.

56.    Mr. Roth admits that the press release contained a link to a webinar on which Otworth, Dee, and Brenner presented information regarding the proposed transaction.  Mr. Roth admits the slide deck was filed with the SEC.  Mr. Roth otherwise asserts that the press release and slide deck speak for themselves and denies any allegations or characterizations that are inconsistent with, contrary to, or not fully supported by the entirety of these documents.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 56.

57.    Mr. Roth denies the allegations in Paragraph 57.

58.    Mr. Roth asserts the presentation speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document.

59.    Mr. Roth denies the allegations in Paragraph 59.

60.    Mr. Roth admits that ROCH filed a preliminary proxy statement with the SEC on November 16, 2020, on Schedule 14A (later amended on February 12, 2021) to schedule the virtual special meeting of shareholders on March 16, 2021 and that such public filings with the SEC speak for themselves.  Mr. Roth admits that he signed the Schedule 14A.  Mr. Roth admits that the Schedule 14A included the Agreement and Plan of Merger and that this Agreement and Plan of Merger was

20

signed by him and Otworth. Mr. Roth denies any allegations or characterizations inconsistent with, contrary to, or not fully supported by the entirety of these public filings with the SEC. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 60.

61.     Mr. Roth admits that the presentation discussed Defendants Otworth, Dee, and Brenner's prior experience. Mr. Roth otherwise asserts that the presentation speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 61.

62.     Mr. Roth denies the allegations in Paragraph 62.

63.     Mr. Roth admits that ROCH filed a Registration Statement on Form S-4 with the SEC on November 20, 2020. Mr. Roth admits that he signed the Form S-4. Mr. Roth otherwise asserts that the Registration Statement speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 63.

64.     Mr. Roth denies the allegations in Paragraph 64.

65.     Mr. Roth asserts that the Registration Statement speaks for itself and denies any allegations inconsistent with, contrary to, or not supported by the entirety of this document. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 65.

66.     Mr. Roth admits that maintaining a minimum quality and quantity of feedstock is a known risk to PureCycle's business and has been repeatedly disclosed as such in PureCycle's public filings with the SEC.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 66.

67.     Mr. Roth admits that ROCH filed an amended Proxy Statement for Special Meeting of Stockholders of Roth Acquisition with the SEC on February 12, 2021, which speaks for itself.  Mr. Roth admits that he signed the February 12, 2021, Proxy Statement. Mr. Roth admits that a Merger Agreement signed by him and Defendant Otworth was filed with the Proxy Statement.  Mr. Roth otherwise asserts PureCycle's public filings with the SEC speak for themselves and deny any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of these documents.  Mr. Roth denies that any emphasis added by Plaintiffs through the use of bolded and italicized font appears in the original.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 67.

68.     Mr. Roth asserts that the Proxy Statement speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 68.

69.     Mr. Roth asserts that the Proxy Statement speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 69.

70.     Mr. Roth denies all of the allegations in Paragraph 70.

71.     Mr. Roth asserts the Proxy Statement speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document.  Mr. Roth denies that any emphasis added by Plaintiffs through the use of bolded and italicized font appears in the original.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 71.

72.     Mr. Roth denies the allegations in Paragraph 72.

73.     Mr. Roth admits that PureCycle issued a press release on April 21, 2021, entitled "PureCycle's Tasmin Ettefagh facilitates plastics industry dialogue about polypropylene recycling solutions in light of U.S. Plastics Pact: Ultra-pure recycle polypropylene manufacturer CSO drives narrative."  Mr. Roth otherwise asserts that the press release speaks for itself and denies any allegations or characterizations inconsistent with, contrary to, or not supported by the entirety of this document. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 73.

74.     Mr. Roth denies the allegations in Paragraph 74.

## ANSWER TO "THE TRUTH EMERGES"

75.     Mr. Roth admits that Hindenburg Research published the Report on May 6, 2021, and respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 75.

76.     Mr. Roth admits that in its Report, Hindenburg Research purports to have interviewed several unnamed former employees of PureCycle executives' prior companies as well as named persons who purportedly work in the same industry as PureCycle.  Mr. Roth lacks knowledge and information sufficient to form a belief as to whether the unnamed individuals or the named individuals were actually interviewed for the Report and, on that basis, denies the allegations.  Mr. Roth admits that the excerpted portions within quotation marks in Paragraph 76 accurately quote portions of statements in the Report, but Mr. Roth denies that Plaintiffs' selective quotation is accurate, complete or presented with full context.  Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 76.

77.     Mr. Roth admits that the excerpted portions within quotation marks in the first sentence of Paragraph 77 accurately quote the Report, but Mr. Roth denies that Plaintiffs' selective quotation is complete or presented with full context.  Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Mr. Roth states that to the extent the Report refers to an interview of "P&G's inventor of the technology," Mr. Roth respectfully refers the Court to the actual interview for a complete recitation of its contents.  Mr. Roth admits that maintaining a minimum quality and supply of feedstock is a known risk to PureCycle's process and

it has been disclosed as such in public filings with the SEC.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 77.

78.    Mr. Roth admits that Hindenburg Research purports to have spoken with Scott Saunders in its Report.  Mr. Roth lacks knowledge and information sufficient to form a belief as to whether Mr. Saunders was actually interviewed for the Report and, on that basis, denies the allegations. Mr. Roth admits that the excerpted block of indented text contained in Paragraph 78 accurately quotes the Report, but Mr. Roth denies that Plaintiffs' selective quotation is complete or presented with full context. Mr. Roth admits that PureCycle has previously disclosed in public filings with the SEC that maintaining minimum quality and supply of feedstock is a known risk to PureCycle's process.  Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 78.

79.    Mr. Roth admits that Hindenburg Research purports to have spoken with Richard Minges.  Mr. Roth lacks knowledge and information sufficient to form a belief as to whether Mr. Minges was actually interviewed for the Report and, on that basis, denies the allegations.  Mr. Roth admits that the excerpted portions within quotation marks in the first sentence and the excerpted text in an indented block in Paragraph 79 accurately quote portions of statements in the Report, but Mr. Roth denies that Plaintiffs' selective quotation is accurate, complete or presented with full context.  Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy

25

of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources). Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 79.

80.    Mr. Roth admits that the excerpted portions within quotation marks in Paragraph 80 accurately quote portions of statements in the Report, but Mr. Roth denies that Plaintiffs' selective quotation is accurate, complete or presented with full context. Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources). Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 80.

81.    Mr. Roth admits that Hindenburg Research purported to interview an unnamed expert in polymers. Mr. Roth lacks knowledge and information sufficient to form a belief as to whether the unnamed expert was actually interviewed for the Report and, on that basis, denies the allegations. Mr. Roth admits that the excerpted portions within the quotation marks in Paragraph 81 accurately quote the Report, but Mr. Roth denies that Plaintiffs' selective quotation is accurate, complete or presented with full context. Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources). Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 81.

82.    Mr. Roth lacks sufficient knowledge or information sufficient to admit or deny the exact details of any IPOs that Innventure has overseen. Mr. Roth admits that

26

the Report purports to discuss the aftermath of these six IPOs through interviews with unnamed sources at Otworth, Haskell, Brenner, and Scott's previous companies. Mr. Roth lacks knowledge and information sufficient to form a belief as to whether the unnamed individuals were actually interviewed for the Report or worked at any of these companies and, on that basis, denies the allegations attributed to these sources, except as expressly admitted herein. Mr. Roth admits that the excerpted portions within the quotation marks accurately quote the Report, but Mr. Roth denies Plaintiffs' selective quotation is accurate, complete or presented with full context. Mr. Roth respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources). Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 82.

83.     To the extent Paragraph 83 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 83.

84.     Mr. Roth admits that PureCycle released a press release on May 6, 2021, responding to the Report. Mr. Roth otherwise asserts that the press release speaks for itself and denies any allegations inconsistent with, contrary to, or not supported by the entirety of this document. Moreover, Mr. Roth expressly denies any implication raised by the allegations of Paragraph 84 that PureCycle had any obligation to

27

challenge or negate specific allegations of the Report. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 84.

85.    Mr. Roth admits that PureCycle disclosed that the SEC had issued an investigative subpoena to Defendant Otworth in its November 10, 2021, 10-Q for the quarter ended September 30, 2021. Mr. Roth adds that on April 26, 2022, Purecycle filed an 8-K in which it disclosed that the "SEC concluded its non-public fact-finding investigation without further action at this time." Mr. Roth otherwise states that the 10-Q and the 8-K speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of those documents. To the extent Paragraph 85 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 85.

**ANSWER TO "ADDITIONAL SCIENTER ALLEGATIONS"**

86.    Mr. Roth admits that PureCycle relies principally on the commercialization of the process for recycling polypropylene for future revenue growth as disclosed in PureCycle's public statements and public filings with the SEC. Mr. Roth admits that as of the filing of the SAC, these products and services had not yet generated revenue. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 86.

87.    Mr. Roth lacks knowledge and information sufficient to form a belief to admit or deny the knowledge Defendants Otworth, Dee, and Brenner possess and, on

28

that basis, denies the allegations in Paragraph 87.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 87.

88.     Mr. Roth admits that an S-4 was filed with the SEC on November 20, 2020, which speaks for itself.  Mr. Roth admits that payments and/or compensation to Otworth and Dee was disclosed in PureCycle's public filings with the SEC.  Mr. Roth otherwise asserts that PureCycle's public statements and public filings with the SEC speak for themselves and denies any allegations inconsistent with, contrary to, or not supported by the entirety of these documents.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 88.

89.     Mr. Roth denies that any SPAC transaction closed between Mr. Roth and PureCycle.  Mr. Roth states that PureCycle's public filings with the SEC disclosed the amount and terms of Dee's compensation, including performance-related restrictions.  Mr. Roth otherwise asserts that PureCycle's public filings with the SEC speak for themselves and denies all allegations inconsistent with, contrary to, or not supported by the entirety of these documents.  To the extent Paragraph 89 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 89.

90.     Mr. Roth admits that the Merger Agreement was signed by him and Otworth.  Mr. Roth otherwise states that the Merger Agreement speaks for itself and denies any allegations inconsistent with, contrary to, or not supported by the entirety

of this document.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 90.

91.    Mr. Roth admits that ROCH and PureCycle released a November 16, 2020, press release.  Mr. Roth asserts that the press release speaks for itself and denies any allegations inconsistent with, contrary to, or not supported by the entirety of this document.  Mr. Roth denies that any emphasis added by Plaintiffs through the use of bolded and italicized font appears in the original.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 91.

92.    Mr. Roth states that Roth Capital has raised approximately $113 billion from 2000 through June 2023 and that its China-related business was a minority segment of its overall business over that time period.  Mr. Roth asserts that Roth Capital's research division's reports speak for themselves.  Mr. Roth denies that investors lost $3.1 billion as implied by Plaintiffs' allegations. To the extent Paragraph 92 implies that all PureCycle shares of common stock acquired in the Merger were freely tradeable after the closing of the Merger in March 2021 and not subject to certain restrictions and lockups, Mr. Roth denies the allegations and respectfully refers the Court to PureCycle's public filings with the SEC concerning terms for the sale of founders shares.  Mr. Roth denies that his FINRA BrokerCheck report shows any regulatory sanctions or arbitrations; Mr. Roth's BrokerCheck report is clean.  Some of Roth Capital's BrokerCheck report disclosures date back to before Mr. Roth had any affiliation with the firm and its predecessors.  The FINRA BrokerCheck report for Roth Capital shows that 9 of the 12 arbitrations date back to the 1990s, with the most

recent arbitration dating back to 2005 (Roth Capital substantially reduced its retail presence by in or about 2001; the firm's name was changed to "Roth Capital" in 2000), and none of the arbitrations or regulatory matters are alleged to involve Chinese reverse mergers as alleged by Plaintiffs. Moreover, as clearly disclosed in the Roth Capital FINRA BrokerCheck report, regulatory matters were settled without any admission of liability and none were related to supposed reverse mergers of Chinese companies or by extension, to the present dispute. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 92.

93. Mr. Roth admits that Roth Capital and Craig-Hallum were the sole underwriters in the IPO. Mr. Roth admits that any grant of shares to Roth Capital and Craig-Hallum was publicly disclosed in SEC filings. Mr. Roth otherwise asserts that PureCycle's public filings with the SEC speak for themselves and denies all allegations inconsistent with, contrary to, or not fully supported by the entirety of these documents. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 93.

## ANSWER TO "CLASS ACTION ALLEGATIONS"

94. Mr. Roth admits that Plaintiffs purport to bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of certain persons or entities who purchased or otherwise acquired PureCycle Technologies, Inc. securities between November 16, 2020, and May 5, 2021. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 94.

95.     Mr. Roth admits that shares of PureCycle were publicly traded during the putative class period on the NASDAQ stock exchange.  The remaining allegations in Paragraph 95 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 95 except as expressly admitted herein.

96.     The allegations in Paragraph 96 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 96.

97.     The allegations in Paragraph 97 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 97.

98.     The allegations in Paragraph 98 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 98.

99.     The allegations in Paragraph 99 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 99.

## ANSWER TO "PRESUMPTION OF RELIANCE"

100.     Mr. Roth admits that PureCycle filed periodic public reports with the SEC and these public filings speak for themselves. Mr. Roth admits that PureCycle securities met the requirements for listing and were listed and actively traded on NASDAQ. Mr. Roth admits that PureCycle periodically disseminates press releases

on major newswire services and occasionally communicates with press organizations. Mr. Roth admits PureCycle was followed by securities analysts employed by brokerage firms who wrote and disseminated reports. The remaining allegations in Paragraph 100 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 100, except as expressly admitted herein.

101. The allegations in Paragraph 101 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 101.

102. The allegations in Paragraph 102 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 102.

103. The allegations in Paragraph 103 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 103.

### ANSWER TO "NO SAFE HARBOR"

104. The allegations in Paragraph 104 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 104.

105. The allegations in Paragraph 105 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 105.

33

## ANSWER TO "LOSS CAUSATION AND ECONOMIC LOSS"

106.   Mr. Roth denies the allegations in Paragraph 106.

107.   The allegations in Paragraph 107 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph in 107.

108.   Mr. Roth admits that Hindenburg Research issued a report on May 6, 2021, and respectfully refers the Court to the Report itself, without conceding the accuracy of its contents (Mr. Roth expressly denies that the Report is accurate or based on reliable sources).  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 108.

109.   To the extent Paragraph 109 refers to closing and intraday trading prices of PureCycle's shares, such prices are a matter of public record and speak for themselves.  Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 109.

110.   Mr. Roth denies the allegations in Paragraph 110.

## ANSWER TO "COUNT ONE: VIOLATIONS OF § 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER"
### (Against All Defendants)

111.   Mr. Roth repeats each and every response contained above and further responds as follows.

112.   Mr. Roth denies the allegations in Paragraph 112.

113.   Mr. Roth denies the allegations in Paragraph 113.

114.    Mr. Roth denies the allegations in Paragraph 114.

## ANSWER TO "COUNT TWO: VIOLATION OF § 20(a) OF THE EXCHANGE ACT
### (Against the Individual Defendants)

115.    Mr. Roth repeats each and every response contained above and further responds as follows.

116.    Mr. Roth denies the allegations in Paragraph 116.

## ANSWER TO "COUNT THREE: VIOLATION OF § 14(a) OF THE EXCHANGE ACT AND SEC RULE 14a-9"
### (Against all Defendants)

117.    Mr. Roth repeats each and every response contained above, except those responding to allegations in those subsections specified to relate solely to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act, and responds as follows.

118.    The allegations in Paragraph 118 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 118.

119.    Mr. Roth admits that Plaintiffs purport to bring a claim under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder against PureCycle Technologies, Michael Otworth, Michael E. Dee, David Brenner, and Byron Roth, and on behalf of all PureCycle shareholders who held shares of ROCH common stock as of November 16, 2020, or February 12, 2021 and were entitled to vote at the special meeting of stockholders held on March 16, 2021.  Mr. Roth further avers that no response is required regarding claims against Tasmin Ettefagh because the Court has

35

dismissed the claims against her. *See* Order on Motion to Dismiss, dated June 15, 2023 (ECF No. 144), at 20-21, 26, 29, 32.  Except as expressly admitted herein (or to the extent a response is deemed necessary), Mr. Roth denies each and every allegation in Paragraph 119.

120.   Mr. Roth admits that ROCH filed proxy statements on November 16, 2020, and February 12, 2021, regarding the plan of merger between ROCH, Roth CH Acquisition I Co. Parent Corp., Roth CH Merger Sub Corp., Roth CH Merger Sub LLC, and PureCycle Technologies, LLC.  Mr. Roth further asserts that these public filings speak for themselves and denies any allegations or characterizations inconsistent with, contrary to, or not fully supported by the entirety of these documents.  Except as expressly admitted herein, Mr. Roth denies all allegations in Paragraph 120.

121.   Mr. Roth denies the allegations in Paragraph 121.

122.   Paragraph 122 contains legal conclusions to which no response is required.  Mr. Roth avers that the Proxy Statement speaks for itself.  To the extent a response is deemed necessary, Mr. Roth denies all allegations in Paragraph 122.

123.   Paragraph 123 contains legal conclusions to which no response is required.  To the extent a response is deemed necessary, Mr. Roth avers that the Proxy Statement speaks for itself.

124.   The allegations in Paragraph 124 contain legal conclusions as to which no response is required.  To the extent a response is deemed necessary, Mr. Roth avers

that the Proxy Statement speaks for itself. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 124.

125. Mr. Roth denies the allegations in Paragraph 125.

126. Mr. Roth denies the allegations in Paragraph 126.

127. Mr. Roth denies the allegations in Paragraph 127.

128. Mr. Roth denies the allegations in Paragraph 128.

129. Paragraph 123 contains legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 129.

130. Mr. Roth denies the allegations in Paragraph 130. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 130.

## ANSWER TO COUNT FOUR: VIOLATION OF § 20(a) OF THE EXCHANGE ACT IN CONNECTION WITH THE PROXY CLAIMS
### (Against the Individual Defendants)

131. Mr. Roth repeats each and every response contained above, except those responding to allegations in those subsections specified to relate solely to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act, and responds as follows.

132. The allegations in Paragraph 132 contain legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 132.

133. Mr. Roth denies the allegations in Paragraph 133.

134. Paragraph 134 contains legal conclusions as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 134.

135. Mr. Roth admits that he signed the November 16, 2020, and February 12, 2021, Proxy Statements, which speak for themselves. Mr. Roth denies any allegations or characterizations that are inconsistent with, contrary to, or not fully supported by the entirety of these documents. Except as expressly admitted herein, Mr. Roth denies each and every allegation in Paragraph 135.

136. Mr. Roth denies the allegations in Paragraph 136.

137. Mr. Roth denies the allegations in Paragraph 137.

138. Mr. Roth denies the allegations in Paragraph 138.

139. Roth denies the allegations in Paragraph 139.

140. Paragraph 123 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendant denies each and every allegation in Paragraph 140.

141. The allegation in Paragraph 141 contains a legal conclusion as to which no response is required. To the extent a response is deemed necessary, Mr. Roth denies each and every allegation in Paragraph 141.

**ANSWER TO UNNUMBERED "PRAYER FOR RELIEF"**

Any and all allegations and inferences contained in the SAC that are not expressly admitted herein, including all of the headings and sub-headings in the SAC and the allegations and inferences in the "WHEREFORE" clause or prayer for relief following

Paragraph 141, are hereby denied. Mr. Roth further denies that Plaintiffs are entitled to relief of any kind whatsoever, whether equitable or monetary, including but not limited to any of the relief requested in the "WHEREFORE" clause following Paragraph 141 of the SAC.

## AFFIRMATIVE DEFENSES

Without assuming any burdens of proof that he would not otherwise bear, Mr. Roth asserts the following affirmative defenses. In asserting the following affirmative defenses, Mr. Roth does not knowingly or intentionally waive any applicable affirmative defense and reserves the right to assert and rely upon such other applicable affirmative defenses as may become available or apparent during the course of the proceedings. Mr. Roth further reserves the right to amend his Answer and/or affirmative defenses accordingly, and/or delete affirmative defenses that he determines are not applicable.

## FIRST AFFIRMATIVE DEFENSE

The SAC fails, in whole or in part, to state a claim upon which relief may be granted or for which the damages sought can be awarded.

## SECOND AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because the relevant SEC filings, press releases, investor presentations, conference calls, and other communications did not contain any materially false or misleading statements or omissions.

## THIRD AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because, throughout the putative class period, Defendants did not misstate or unreasonably withhold any information regarding their prior experience.  Thus, no reasonable jury could conclude that Mr. Roth acted with scienter.

## FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because, throughout the putative class period, Defendants did not misstate or unreasonably withhold any information regarding the success and progress of PureCycle's recycling technology.  Thus, no reasonable jury could conclude that Mr. Roth acted with scienter.

## FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because, throughout the putative class period, Defendants did not possess concrete information undermining the accuracy of their statements regarding PureCycle's recycling technology.  Thus, no reasonable jury could conclude that Mr. Roth acted with scienter.

## SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because the competing inference of non-culpability is the more plausible inference.  Thus, no reasonable jury could conclude that Mr. Roth acted with scienter.

**SEVENTH AFFIRMATIVE DEFENSE**

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Mr. Roth denies, then every act or omission was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission and, thus under Section 23(a) of the Securities Act of 1934, there is no liability for any act or omission alleged.

**EIGHTH AFFIRMATIVE DEFENSE**

Mr. Roth cannot be liable as a control person under Section 20(a) of the Exchange Act because he acted in good faith and did not directly or indirectly induce the act or acts constituting the alleged violation and causes of action.

**NINTH AFFIRMATIVE DEFENSE**

Count III is barred or fails, in whole or part, because Mr. Roth was not a control person within the meaning of Section 20(a) of the Exchange Act.

**TENTH AFFIRMATIVE DEFENSE**

The claims against Mr. Roth are barred or fail, in whole or part, because he acted at all times in good faith and with the proper exercise of business judgment, and at least the degree of care, diligence and skill that ordinarily prudent persons would exercise in similar circumstances and positions.

**ELEVENTH AFFIRMATIVE DEFENSE**

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because many of the matters now claimed by the SAC to be the subject of misrepresentations or omissions were publicly disclosed or were in the public domain at the relevant time and, as such, were received by, or otherwise available to, Plaintiffs and members of the putative class and were at all times reflected in the price of PureCycle's securities.

## TWELFTH AFFIRMATIVE DEFENSE

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Mr. Roth denies, then the claims of Plaintiffs and members of the putative class are barred, in whole or in part, because Plaintiffs and members of the putative class were aware of the misstatement or omission and/or did not rely upon those in purchasing PureCycle's securities.

## THIRTEENTH AFFIRMATIVE DEFENSE

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class is limited to the percentage of responsibility by a defendant in proportion to the total fault of all persons, named as parties to this action or not, who caused or contributed to such alleged damages, pursuant to Section 21D(f) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(e).

## FOURTEENTH AFFIRMATIVE DEFENSE

Mr. Roth lacked any involvement and/or participation in one or more of the statements identified in the SAC, and therefore, lacks any liability for such statements. Mr. Roth cannot be held liable for secondary participation in any statement alleged in the SAC.

## FIFTEENTH AFFIRMATIVE DEFENSE

Each Plaintiff and member of the putative class would have acquired PureCycle's securities even if, when those securities were acquired, each Plaintiff and member of the putative class would have known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Mr. Roth's purported liability rests.

## SIXTEENTH AFFIRMATIVE DEFENSE

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Mr. Roth denies, then the claims of Plaintiffs and members of the putative class are barred, in whole or in part, because such misrepresentations did not cause or were not a material causal factor in the decline in the price of PureCycle's securities alleged in the SAC.

## SEVENTEENTH AFFIRMATIVE DEFENSE

All or a portion of the damages alleged by Plaintiffs and members of the putative class are attributable to causes other than any actions or omissions for which Mr. Roth is allegedly responsible.

## EIGHTEENTH AFFIRMATIVE DEFENSE

43

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because any increase or decrease in the value of PureCycle's securities was and is, wholly or partially, the result of market conditions or other factors and not the result of any alleged wrongful conduct by Mr. Roth.

## NINETEENTH AFFIRMATIVE DEFENSE

Any recovery for damages allegedly incurred by Plaintiffs of members of the putative class is subject to offset in the amount of any tax benefits or other benefits received by Plaintiffs or members of the putative class through their investments.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent the claims asserted by Plaintiffs and members of the putative class are based on any predictions, expressions of opinion, or forward-looking statements, such claims are not actionable under the statutory safe harbor in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5(c)(1)(A), (B) and/or the bespeaks caution doctrine.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the SAC are barred or fail, in whole or in part, because any alleged misstatements purportedly made by the Company and/or Mr. Roth are nonactionable expressions of puffery, corporate optimism, and/or opinion.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification and/or unclean hands.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs and members of the putative class are barred from claiming injury or damage, if any, because they failed to make reasonable efforts to mitigate such injury or damage, which would have prevented their injury or damages, if any.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs and members of the putative class would be unjustly enriched if they were permitted to obtain any recovery in this action.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, by the doctrine of assumption of risk because the risks of investing in PureCycle's securities were publicly disclosed to Plaintiffs and the market at all relevant times.  Plaintiffs and members of the putative class knew or should have known the risks inherent in investing in the securities at issue and thus assumed the risk of a decline in the value of their investments.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Mr. Roth is entitled to a right of indemnity and/or contribution from other individuals or entities whose acts or omissions may have contributed to the occurrence of the alleged injury, damage and/or loss, if any, should any Plaintiffs receive judgment against any of the Defendants.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs and members of the putative class lack standing to bring some or all of the claims alleged.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The SAC fails to comply with the requirements of the Private Securities Litigation Reform Act.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The SAC fails to comply with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that the damages sought exceed those permitted under the Securities Exchange Act of 1934, the Private Securities Litigation Reform Act, common law, or any other applicable statute, rule or regulation.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

The SAC is not properly maintainable as a class action.

### ADDITIONAL AFFIRMATIVE DEFENSES

Mr. Roth may have additional, as yet unidentified defenses available against Plaintiffs and/or putative class members and therefore reserves the right to assert such

46

defenses in a timely fashion after the facts to support such defenses become known to him.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Mr. Roth demands a trial by jury of all the claims asserted in the SAC so triable.

**WHEREFORE,** Mr. Roth respectfully requests that the Court:

    A.    Dismiss the SAC in its entirety with prejudice;

    B.    Deny each and every demand and prayer for relief contained in the SAC;

    C.    Award Mr. Roth his costs and reasonable attorneys' fees; and

    D.    Award Mr. Roth such other and further relief as the Court deems just and proper.

**WHEREFORE**, Mr. Roth respectfully demands:

    1.    Judgment entered against Plaintiffs in favor of Mr. Roth;

    2.    Plaintiffs and the putative class take nothing from Mr. Roth by the SAC, and that the same be dismissed with prejudice; and

    3.    Award Mr. Roth his reasonable costs and attorneys' fees;

    4.    Award such other and further relief as the Court deems just and proper.

Dated: July 14, 2023

Respectfully submitted,


/s/ *Amanda E. Reagan*


John R. Loftus (admitted *pro hac vice*)
Christine E. Ellice (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Telephone:  (310) 595-3000
jake.loftus@dlapiper.com
christine.ellice@dlapiper.com


Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 200
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: amy.reagan@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or plaintiff identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

　/s/*Amanda E. Reagan*　　　　　　　　
　Attorney

Tamar A. Weinrib (admitted *pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Phone: (646) 581-9973
Fax: (917) 463-1044
Email: taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

David Kistenbroker
Joni S. Jacobsen
35 W. Wacker Drive, Suite 3400
Chicago, IL 60601
312-646-5800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

Catherine Wigglesworth
Circa Centre
2929 Arch Street
Philadelphia, PA 19104
215-994-4000
catherine.wigglesworth@dechert.com

Nina S. Riegelsberger
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
212-698-3500
nina.riegelsberger@dechert.com

Amy Shay (Florida Bar No. 068841)
The VUE at Lake Eola
220 North Rosalind Avenue
Orlando, FL 32801
Telephone:  (407) 316-0393
ashay@scsplaw.com

*Counsel for Defendants*
*PureCycle Technologies, Inc., Michael Otworth, Michael Dee, and David Brenner*