## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. THEODORE, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 6:21-cv-809-PGB-GJK |
| v. | **CLASS ACTION** |
| PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, and BYRON ROTH, | |
| Defendants. | |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**POMERANTZ LLP**
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

*Lead Counsel*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ......................3

    A.    Procedural History Of The Litigation..................................................3

    B.    Summary Of Key Terms Of The Proposed Settlement.........................6

        1.    Conditional Class Certification .................................................6

        2.    Relief to Class Members and Release of Claims .......................6

        3.    Class Notice and Settlement Administration .............................7

            a)    Notice ..............................................................................7

            b)    Administration ................................................................8

        4.    Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Awards .........8

        5.    Objections ................................................................................9

        6.    Opt Outs .................................................................................10

        7.    Termination of the Settlement.................................................10

        8.    No Admission of Liability ......................................................10

III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE ...................................................................................10

    A.    Courts Favor Settlements Of Complex Class Actions .........................10

    B.    The Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations..............................................14

    C.    The Outcome of the Litigation Is Uncertain ......................................16

IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ...............................................................18

V.    PROPOSED SCHEDULE OF EVENTS ...................................................21

VI.    CONCLUSION ........................................................................................21

# I. **PRELIMINARY STATEMENT**

Lead Plaintiffs Robert Ciecko and Mariusz Ciecko ("Plaintiffs"), individually and on behalf of all Settlement Class Members[1], respectfully submit this memorandum of law in support of their unopposed motion pursuant to Rule 23(e), Fed. R. Civ. P., seeking preliminary approval of a $12 million cash settlement (the "Settlement") resolving all claims in this securities fraud class action filed on behalf of all persons and entities that purchased or otherwise acquired PureCycle Technologies, Inc. ("PureCycle") securities between November 16, 2020 and November 10, 2021, inclusive (the "Class Period").

The Settlement Stipulation setting forth the terms of the Settlement is the result of extensive arms' length negotiations between highly experienced counsel, which included a full day mediation session before Jed Melnick, Esq., of JAMS mediation services and ongoing settlement discussions for over a month thereafter. Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached to the Settlement Stipulation as Exhibit A: (1) preliminarily approving the proposed Settlement as set forth in the Settlement Stipulation; (2) appointing Strategic Claims Services ("SCS") as Claims Administrator; (3) approving the proposed form

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, dated May 6, 2024 ("Settlement Stipulation"). Declaration of Tamar A. Weinrib, Esq. in Support of Preliminary Approval of Class Action Settlement ("Weinrib Decl."), Ex. 1.

and manner of disseminating notice to the Settlement Class; (4) setting deadlines for the dissemination of notice, submission of proofs of claim, submission of requests for exclusion, submission of objections, the filing of Plaintiffs' motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for a compensatory award; and (5) setting a date for the final approval hearing.

The proposed $12 million Settlement is fair, reasonable, and adequate, representing over 5% of estimated damages. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542-543 (S.D. Fl. 1988)*In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at * 6 (E.D. Mo. June 30, 2005).The Parties reached the Settlement after almost three years of litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts; (ii) drafted three complaints, including the operative Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"); (iii) briefed Defendants' separate motions to dismiss both the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") and the SAC and two motions to strike; (iv) briefed Defendants' motion for reconsideration; (v) pursued fact discovery, which included serving and responding to party discovery requests; (vi) conducted a targeted review of approximately 200,000 pages of documents produced collectively by Defendants; (vii) moved for class certification; (viii) engaged in expert discovery, including consultation with experts and depositions of experts on the issue of market

efficiency; (ix) conducted extensive consultations with experts to evaluate potential damages; (x) drafted a detailed mediation statement, which included relevant exhibits and addressed both liability and damages; (xi) participated in a formal full day in-person mediation session before Jed Melnick, Esq., of JAMS mediation services, and engaged in ongoing settlement discussions for over a month thereafter; (xii) engaged in negotiations regarding the terms of the proposed Settlement; and (xiii) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly.  The Settlement is, therefore, the result of arm's-length negotiations, conducted by well-informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial and post-trial proceedings.  Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Settlement Class Members, who will have a right to be heard at the Final Approval Hearing to be scheduled by the Court.

## II.  SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Procedural History Of The Litigation

This Action was first filed on May 11, 2021, in the Middle District of Florida. By order dated August 5, 2021, the Court appointed Robert Ciecko and Mariusz Ciecko as Lead Plaintiffs and Pomerantz LLP as Lead Counsel. (ECF No. 21). The FAC was then filed on September 27, 2021 (ECF No. 90), asserting claims on behalf

of PureCycle investors against Defendants PureCycle Technologies, Inc., Michael Otworth, Michael E. Dee, David Brenner, Tasmin Ettefagh, and Byron Roth for violations of Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).  Specifically, the FAC alleged that Defendants misled investors in proxy statements, a registration statement, and in press releases by: (i) falsely stating that their recycling process is "proven" to convert waste polypropylene (called feedstock) into virgin polypropylene resin more cost effectively than manufacturing virgin polypropylene traditionally, and utilizing a broader range of feedstock than traditional recycling; and (ii) falsely touting the PureCycle management team -- which claimed to have solved the previously unsolvable polypropylene recycling problem -- as having "broad experience across plastics," decades of experience scaling early-stage companies, in public markets, and leading transformational projects.  The FAC further alleged that on May 6, 2021, Hindenburg Research published a report revealing the alleged falsity of Defendants' statements regarding PureCycle's polypropylene recycling process and PureCycle management's professional background, causing PureCycle's common stock to drop approximately 40% from $24.59 to $14.83 on heavy trading volume.

From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages.  Defendants filed motions to dismiss the FAC, which the Court granted on August 4, 2022, providing Plaintiffs leave to amend (ECF No. 112).  Plaintiffs filed the SAC on August 18, 2022 (ECF No.113) adding a Section

14(a) claim, and alleging a second corrective disclosure, i.e., that on November 10, 2021, PureCycle announced that the SEC had issued an investigative subpoena to Defendant Otworth "requesting testimony in connection with a non-public, fact finding investigation of the Company," following which PureCycle common stock fell approximately 15% from $11.50 to $9.79 per share on November 11, 2021.

Defendants filed motions to dismiss the SAC, which the Court granted solely as to Tasmin Ettefagh and otherwise denied in their entirety on June 15, 2023 (ECF No. 144).   On June 30, 2023, Defendants filed a motion for reconsideration of the Court's Order denying Defendants' motions to dismiss the SAC, which is still pending before the Court.   Following the Court's order denying the motions to dismiss, the Parties began discovery.  Plaintiffs then filed a motion for class certification on November 30, 2023 (later amending the motion on January 17, 2024 to only include the Sections 10(b) and 20(a) claims), which the Parties fully briefed as of February 21, 2024.  The class certification motion is still pending before the Court.

After engaging in a full day mediation session with Jed Melnick, Esq. of JAMS on February 26, 2024, and engaging in settlement discussions for over a month thereafter, the Parties reached an agreement in principle to settle the Action on April 2, 2024.

**B.      Summary Of Key Terms Of The Proposed Settlement**

1.      **Conditional Class Certification**

As noted above, Plaintiffs filed an amended motion for class certification on January 17, 2024. In connection with the Settlement, Defendants have consented to certification, conditioned on final approval of the Settlement, of the following Class:

> All Persons who purchased or otherwise acquired PureCycle Technologies, Inc. ("PureCycle") securities between November 16, 2020 and November 10, 2021, inclusive, and were damaged thereby. Excluded from the Class are: (i) Defendants, all current and former directors and officers of PureCycle during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above; (ii) Opt-Outs; and (iii) Persons who have no compensable damages.

As set forth in the class motion papers, Plaintiffs contend that each of the elements of Rule 23(a) and (b)(3) have been satisfied, conditional findings for which are set forth in the Preliminary Approval Order.

2.      **Relief to Class Members and Release of Claims**

Defendants have agreed to pay $12,000,000, as described more fully in the Settlement Stipulation, in return for which all claims that have been or could have been asserted in this Action against Defendants and "Released Parties" will be dismissed, barred, and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to PureCycle or its insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

  3.  **Class Notice and Settlement Administration**

    **a)**  **Notice**

Within twelve Business Days of Preliminary Approval, Lead Counsel, through the Claims Administrator, shall cause the Postcard Notice, substantially in the form annexed to the Settlement Stipulation, to be mailed, by first class mail, postage prepaid, to all Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through the Claims Administrator.  Within twenty Business Days of Preliminary Approval, Lead Counsel, through the Claims Administrator, will cause the Summary Notice to be published electronically, once on the *GlobeNewswire* and in print once in the *Investor's Business Daily*, since the Internet is the medium most frequently accessed by investors, and is the most cost-effective.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Notice, Proof of Claim and Release Form, and Settlement Stipulation will also be posted on a website maintained by the Claims Administrator within fifteen Business Days following Preliminary Approval.

The Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. Plaintiffs respectfully request that the Court schedule the Final Approval Hearing for 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within twelve days; Settlement Class Members to have over sixty days to consider their options and, if they choose, to file objections or opt out of the Settlement Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the Parties to respond to such objections. Moreover, the Notice will set the date by which claims must be filed on the Settlement Fund.

### b)      Administration

Following issuance of a Request for Proposal and competitive bids submitted by well-regarded class action claims administrators, Lead Counsel selected Strategic Claims Services ("SCS") to administer the notice and process the claims for the Settlement.[2] SCS is well known and highly experienced in the administration of securities fraud class action settlements.

### 4.      Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Awards

No later than twenty-one days prior to the Final Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiffs' Compensatory

---

[2] A copy of the agreement with SCS will be submitted upon request for *in camera* inspection.

Awards. Those papers will detail reasons why the Settlement should be approved, as well as the extensive efforts Lead Counsel has undertaken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome). Papers will also be filed setting forth the time and efforts undertaken by Plaintiffs that also contributed to the outcome.

No less than seven days prior to the Final Approval Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for a compensatory award to Plaintiffs.

### 5. Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so twenty one days prior to the Final Approval Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Any Settlement Class Member who does not file a timely written objection to the Settlement Stipulation shall be foreclosed from seeking any adjudication or review of the Settlement Stipulation by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in PureCycle Securities, as well as submit to the jurisdiction of this Court for possible deposition. These measures are intended to thwart "professional objectors" who appear from time to time in these actions.

6.  **Opt Outs**

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by PureCycle transaction documentation, postmarked no later than twenty-one days prior to the Final Approval Hearing. The opt out must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

7.  **Termination of the Settlement**

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of shares elect to opt out of the Class. The threshold amount is set forth in a Supplemental Agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event the Court does not approve the Settlement or the Settlement does not become Final due to any appeals or Defendants' withdrawal from the Settlement, the Parties will return to their respective positions prior to the Settlement, and the litigation will proceed apace.

8.  **No Admission of Liability**

By entering into the Settlement Stipulation, Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.  Courts Favor Settlements Of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex

litigation is encouraged by the courts and favored by public policy."). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). Approval of a proposed settlement is within the Court's discretion and is to be exercised in conformity with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Indeed, "securities fraud class actions readily lend themselves to settlement." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).

Because this Circuit expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve a class settlement if the terms are "fair, adequate, reasonable, and not the product of collusion." *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, *16 (M.D. Fl. Jun. 22, 2020) (citing *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). Under Rule 23(e)(2), settlements may be approved if, as here, the class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C). *Id.*

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action. To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – holding a

preliminary hearing prior to determine whether to disseminate notice and holding a final approval hearing. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The preliminary approval motion requires the Court to determine whether: (1) the settlement has no obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Fresco v. Auto Data Direct, Inc.*, No. 0361063, CIV-MARTINEZ, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement") (internal citations omitted); *In re Checking Account Overdraft Litig.*, No. 10-163S, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

After preliminary approval, the class is notified of the settlement and the final approval hearing. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that notice issue and should schedule a final approval hearing.") (internal quotation omitted); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994)

(granting preliminary approval and setting final hearing at future date after class has received notice). The preliminary approval process is not as rigorous and formal as the final approval process.[3]

This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (*Second*) (1985)). The proposed Settlement has no obvious deficiencies and falls within the reasonable range of possible approval. First, the Settlement is the culmination of vigorous arm's-length negotiations, which included both a formal mediation with an experienced and impartial mediator and extensive negotiations between well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation supports preliminary approval of the proposed Settlement. Therefore, the proposed Settlement satisfies Rule 23(e) and should be preliminarily approved.

---

[3] In the second step, the final approval of a class action settlement pursuant to Rule 23(e), the court "must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal citation omitted). Factors to consider are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming lower court's *Bennett* analysis). A district court's evaluation of the *Bennett* factors "will be overturned only upon a clear showing of abuse of discretion." *Id.* In evaluating the settlement, the court may rely on the judgment of experienced counsel in the case. *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

**B.     The Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations**

Courts place considerable weight on the opinion of experienced and informed counsel. *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988) aff'd sub nom. *Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (The court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel.) (internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of fairness" for settlements negotiated at arm's length by informed and experienced counsel. *See Checking Account,* 275 F.R.D. at 661-62 (S.D. Fla. 2011).

Moreover, the Parties reached the Settlement only after vigorously litigating and conducting discovery.  This was a hard-fought case, with three complaints, four motions to dismiss, two motions to strike, a motion for reconsideration, and a hotly contested motion for class certification involving extensive expert discovery and expert depositions.  The Settlement was reached only after the case was well into the

discovery process, and after defendants had produced over 200,000 pages of documents. Thus, Lead Counsel and Plaintiffs were well aware of the claims, defenses and litigation risks by the time the Settlement was reached. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts).

The proposed Settlement was the result of hard-fought, arm's-length negotiations between highly experienced Lead Counsel and Defendants' Counsel with the assistance of an experienced mediator, Jed Melnick of JAMS. The Parties engaged in a full day formal mediation and extensive subsequent settlement negotiations. In negotiating the Settlement, Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Partner Tamar A. Weinrib) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Weinrib Decl., Ex. 2. In Lead Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted.

The adversarial process supports preliminary approval. *Id* at 662. (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Further, the Settlement has no obvious deficiencies.[4] Along with an all cash recovery, all Settlement Class Members, including Plaintiffs, will be treated fairly and in a similar manner—each recovering their pro rata share of the Net Settlement Fund.

### C.   The Outcome of the Litigation Is Uncertain

Plaintiffs believe that the claims asserted in the SAC are meritorious and that the evidence developed to date supports their claims. However, Plaintiffs also acknowledge that continuing the Action poses significant risks and additional costs. "Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  This case involves complex issues of securities law pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (including, for example, market efficiency, loss causation, and damages).

Specifically, while Plaintiffs are confident that they could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the Class.  For example, Plaintiffs would need to prove that management knew or should have known that, during the Class Period, PureCycle's polypropylene recycling technology could not produce virgin-like resin more cost

---

[4] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (4th ed. 1992).

effectively and using a broader range of feedstock than traditional recycling methods. Defendants have argued, and would likely continue to argue, that Plaintiffs have not and cannot establish either an actionable false or misleading statement or omission or scienter when making the related alleged misstatements. *See Gutter v. E.I. Dupont De Nemours & Co.*, 1:95-cv-02152-ASG, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement").

Moreover, when the Parties reached an agreement, the Court had not yet certified the Class. While Plaintiffs are confident the Court would have certified the Class, Defendants raised vigorous arguments regarding the satisfaction of Rule 23, and market efficiency in particular.

The Settlement provides the Class with certain relief, without the delay, expense, and uncertainty of further discovery, summary judgment, trial and post-trial proceedings all of which would have further reduced the remaining available insurance. The costs and risks associated with litigating this Action to a verdict, not to mention through the inevitable appeal, would have been high, and the process would require many hours of the Parties and the Court's time and resources. *Millstein v. Holtz*, 2022 U.S. Dist. LEXIS 233782, *9-10, 18 (S.D. Fl. Dec. 30, 2022) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain…It is important to

weigh the benefits Settlement Class Members will receive from the Settlement against the risks of moving forward and recovering nothing"); *In re Health Ins. Innovations Secs. Litig.*, 2021 U.S. Dist. LEXIS 61051, *23 (M.D. Fl. 2021) ("despite Lead Plaintiff's confidence regarding the ultimate outcome, there is an inherent risk in any litigation but particularly so in securities class action litigation"); *Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, *16 (S.D. Fl. Dec. 17, 2014) ("even if plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years"). The Settlement Amount provides a certain and favorable recovery for the Settlement Class.

## IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *See Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, Lead Counsel through the Claims Administrator shall cause the dissemination of the Postcard Notice to all Persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through: (a) PureCycle's transfer records; and (b) via

nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Lead Counsel through the Claims Administrator will also cause the Settlement Stipulation with exhibits, the Preliminary Approval Order, the Notice, and the Proof of Claim and Release Form to be posted on the Claims Administrator's website and will publish a Summary Notice twice on national news wires. The Notice, Summary Notice, and Postcard Notice are attached to the Settlement Stipulation as Exhibits B, C, and D.

The proposed Notice contains all of the information that Rule 23 of the Federal Rules of Civil Procedure and by the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires. Accordingly, in granting preliminary approval of the proposed Settlement, Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice to the Settlement Class. As the PSLRA requires, the Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make ... an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for

the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

The Notice also defines the Settlement Class, describes the Plan of Allocation, summarizes the nature, history and status of the Action, identifies the claims and issues in this Action, discusses the rights of persons who fall within the definition of the Settlement Class, and explains why Plaintiffs and Lead Counsel are proposing the Settlement. Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. For those Settlement Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release Form. The Summary Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim and Release Form may be obtained by writing the Claims Administrator or by accessing the documents on the Claims Administrator's website. Finally, the Notice sets forth the date, time, and place of the Final Approval Hearing, the procedures for commenting on the Settlement, and the postal address for the Court, Lead Counsel, and Defendants' counsel.

Thus, the proposed Notice provides all of the information the PSLRA requires. The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed herein.

## V.  <u>PROPOSED SCHEDULE OF EVENTS</u>

Plaintiffs propose the following schedule of events in connection with the Final

Approval Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Final Approval Hearing. | At least one hundred (100) days after the Court preliminarily approves the Settlement |
| Mailing of Postcard Notice. | No later than twelve (12) Business Days after the entry of Preliminary Approval Order. (the "Notice Date") |
| Publication of Summary Notice. | No later than twenty (20) Business Days after the Notice Date |
| Filing deadline for requests for exclusion. | Postmarked no later than twenty one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than twenty one (21) calendar days prior to the Final Approval Hearing. |
| Filing deadline for objections. | No later than twenty one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Approval Hearing. |
| Date for Claims to be Filed | Five (5) calendar days prior to the Final Approval Hearing. |

## VI.  <u>CONCLUSION</u>

In light of the foregoing, Plaintiffs respectfully request that the Court enter an

Order: (1) preliminarily approving the Settlement; (2) certifying the Class for

Settlement purposes only; (3) certifying Plaintiffs as Class Representatives and Lead

Counsel as Class Counsel; and (4) setting a date for a Final Approval Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and Compensatory Awards to Plaintiffs.

Dated: May 7, 2024

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Tamar A. Weinrib*

Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044

***Lead Counsel for Plaintiffs***