# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

WILLIAM C. THEODORE, individually and on behalf of all others similarly situated,

    Plaintiffs,

      v.

PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, and BYRON ROTH,

    Defendants.

Case No. 6:21-cv-809-PGB-GJK

**CLASS ACTION**

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND COMPENSATORY AWARDS TO LEAD PLAINTIFFS

**POMERANTZ LLP**
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

*Lead Counsel*

## I.   PRELIMINARY STATEMENT[1]

Lead Plaintiffs Robert Ciecko and Mariusz Ciecko ("Plaintiffs") hereby move under Federal Rule of Civil Procedure 23(e) for an order: (1) awarding attorneys' fees of one-third of the Settlement Fund plus accrued interest; (2) awarding reimbursement of $485,832.25 in expenses incurred in prosecuting this Action; and (3) granting a compensatory award of $30,000 for each of the Lead Plaintiffs as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

Lead Counsel secured a non-reversionary $12 million cash Settlement for the Class after three years of extensive investigation, hard-fought litigation, review of 200,000 pages of documents produced in discovery, depositions of expert witnesses, and lengthy negotiations by experienced attorneys that specialize in securities litigation. Plaintiffs filed two amended complaints, opposed four motions to dismiss, opposed two motions to strike, opposed a motion for reconsideration, and filed a motion for class certification that included expert testimony on the oft contentious subject of market efficiency ("Class Cert. Mot."). The Settlement is an excellent result for Settlement Class Members given the considerable risks of continued litigation, as set forth herein, and PureCycle's deteriorating financial condition.

While Plaintiffs are confident in the merits of their claims, at the time of Settlement Plaintiffs and the Settlement Class faced substantial risks that they would ultimately receive no recovery or a severely restricted recovery, if Defendants

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, filed on May 7, 2024 ("Stipulation"). ECF No. 201-2.

succeeded in their bid for reconsideration ("Recon. Mot.") of the Court's denial of their motion to dismiss the Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"), their opposition to the Class Cert. Mot. (wherein Defendants vigorously challenged standing, market efficiency, and loss causation), their motion for summary judgment, at trial, or on appeal.

Additionally, even if Plaintiffs achieved a judgment at trial and successfully litigated through any appeal, the risks related to collecting on that judgment were considerable. PureCycle has never earned any profit. The Company has one operation, its polypropylene recycling technology, from which it has yet to earn any material revenue. According to PureCycle's Form 10-Q filed on August 8, 2024, the Company had only $10,895,000 in cash and cash equivalents as of June 30, 2024, as compared to $73,411,000 as of December 31, 2023, and had $428,142,000 in total liabilities. Moreover, continued litigation would have further exhausted PureCycle's limited and wasting insurance policy.

Despite these risks, Lead Counsel worked on a contingent basis for over 2700 hours over the course of three years, with no guarantee of ever receiving compensation. The work performed by Lead Counsel is summarized below. Lead Counsel now requests a payment of attorneys' fees of one-third of the Settlement ($4,000,000) plus accrued interest for their significant efforts and achievements on behalf of the Settlement Class, as well as reimbursement of expenses of $485,832.25, and compensatory awards in the amount of $30,000 for each of the Lead Plaintiffs. The attorneys' fees requested are well within the parameters recognized as

appropriate in federal securities class actions such as this litigation, both under a percentage of recovery analysis and under a lodestar cross-check analysis. The requested fees are further supported by the exceptional result Lead Counsel obtained despite the high risks of continued litigation.

Even measured against Plaintiff's best case damages scenario of $230 million (assuming that the Class won on every single point at trial and that the Court did not shorten the Class Period despite recent case law in the Second and Ninth Circuits challenging standing for investors in an acquiring company suing over statements made by the target company pre-merger[2]), the Settlement recovers over 5% of these damages, which far surpasses the median 1.8% recovered in similar sized cases. However, if the Court had adopted Defendants' standing arguments and restricted the Class Period based on Second and Ninth Circuit precedent and adopted Defendants' loss causation arguments relating to the final November 11, 2021 disclosure, estimated damages would have dropped to $37.33 million. The Settlement Amount would thus represent an exceptional *32% of recoverable damages*.

Furthermore, Lead Counsel seeks reimbursement of $485,832.25 in out-of-pocket litigation expenses incurred in prosecuting this Action. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

---

[2] *See Max Royal LLC v. Atieva, Inc. (In re CCIV / LUCID Motors Sec. Litig.)*, 110 F.4th 1181 (9th Cir. 2024); *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022).[3] In this regard, the Eleventh Circuit expressly noted that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.

Finally, Plaintiffs respectfully request PSLRA compensatory awards of $30,000 each for the time and effort they expended on behalf of the Settlement Class. Each Plaintiff familiarized himself with the facts of the case, reviewed the complaints prior to filing, reviewed the briefing on all motions, regularly conferred with Lead Counsel to stay apprised of developments in the litigation, reviewed and responded to discovery requests, prepared and sat for depositions, participated in discussions regarding the Settlement with Lead Counsel both before and after the mediation, and authorized Lead Counsel to settle the case for $12 million. Lead Plaintiffs have shown diligence and dedication to this case and have undertaken substantial time and effort on behalf of the Class, which will now benefit therefrom. But for their efforts, the Settlement Class would have recovered nothing. *See Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

The Class's favorable reaction weighs strongly in support of approving the fee, expense, and compensatory award requests. The Claims Administrator mailed 31,595 Notices to Settlement Class Members detailing the specifics of the Settlement and stating that Lead Counsel would seek up to one-third of the Settlement as attorneys' fees, up to $500,000 in reimbursement of expenses, and $30,000 for each Lead Plaintiff in compensatory awards. To date, no Class Member has objected to the settlement or fee request, and only one Class Member has requested exclusion. *See* Declaration of Sarah Evans Concerning: (A) Mailing of The Postcard Notice; (B)

5

Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), ¶¶12-13.

## II.    LEAD COUNSEL'S EFFORTS FOR THE CLASS.

This Action was hard-fought from the beginning. Following Plaintiffs' appointment as Lead Plaintiffs on August 5, 2021, Lead Counsel filed the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") on September 27, 2021 (ECF No. 90) alleging claims pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"). In drafting the FAC, Lead Counsel, among other things, engaged a private investigator, consulted with experts, reviewed the Company's SEC filings, conducted comprehensive research into PureCycle's operations, Roth CH Acquisition I ("ROCH"), each Individual Defendant's background, polypropylene recycling, the de-SPAC merger process, and other relevant publicly available information. *See* Declaration of Tamar Weinrib in Support of Final Approval of Class Action Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Weinrib Decl.") ¶¶11-12, 35.

On August 4, 2022, the Court granted Defendants' motions to dismiss the FAC solely on scienter grounds but granted leave to amend. ECF No. 112. After continued investigation and research, Lead Counsel filed the operative Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC") on August 18, 2022 (ECF No.113) bolstering the scienter allegations,

adding a Section 14(a) claim, and alleging a second corrective disclosure. Weinrib Decl., ¶13.

Once again Defendants moved to dismiss. On June 15, 2023 the Court denied Defendants' motion in its entirety (with the exception of Defendants Tasmin Ettefagh). ECF No. 144. On June 30, 2023, Defendants filed a motion for reconsideration of the Court's Order denying Defendants' motions to dismiss the SAC, which is still pending before the Court. ECF No. 149.

Following the Court's order denying the motions to dismiss, the Parties began discovery. Plaintiffs served and responded to comprehensive requests for production. Lead Counsel engaged in vigorous and lengthy negotiations regarding search terms and the scope of discovery, via written correspondence and numerous virtual meet and confer sessions, both with counsel for the PureCycle Defendants and separately with counsel for Defendant Byron Roth. At the time of Settlement, Lead Counsel had reviewed the 200,000 pages of documents produced collectively by Defendants in this Action thus far.

Plaintiffs filed the Class Cert. Mot. on November 30, 2023 (later amending the motion on January 17, 2024). ECF No. 179. Therein, Plaintiffs relied on the "efficient market" (aka the "fraud on the market") presumption of reliance, supported by the expert declaration of Dr. Matthew D. Cain, Ph.D. Defendants took the depositions of both Lead Plaintiffs and the deposition of Dr. Cain. Defendants' opposition to the Class Cert. Mot. relied on the declaration of Professor Rene M.

7

Stulz, Ph.D. Plaintiffs deposed Professor Stulz and filed their reply brief in support of the Class Cert. Mot. on February 21, 2024. ECF No. 189.

While both the Recon. Mot. and the Class Cert. Mot. were still pending and after exchanging mediation briefs, the Parties appeared in person for an all-day mediation session on February 26, 2024 in New York with well-respected mediator Jed Melnick, Esq. of JAMS. Weinrib Decl., ¶16. The Parties did not reach a settlement that day and continued settlement negotiations for over a month thereafter before agreeing to a mediator's recommendation to settle this Action for $12 million. *Id.,* ¶17. Subsequently, the Parties negotiated the Stipulation, and Plaintiffs drafted and filed their motion in support of preliminary approval of settlement on May 7, 2024. *Id.,* ¶¶18-19.

## III. THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND WARRANT APPROVAL

### A. The "Percentage of the Fund" Method is the Appropriate Basis for Awarding Attorneys' Fees in the Eleventh Circuit

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). This approach is

8

appropriate because it encourages counsel to obtain the maximum recovery at the earliest possible stage of the litigation and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class. There is no "hard and fast" rule dictating what constitutes a reasonable percentage of the recovery to award "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 775.[3]

**B.    The Requested Fee is Reasonable Under the *Camden* factors**

Under *Camden*, the court first fixes a benchmark, and then considers the following factors to determine what constitutes a reasonable percentage award: (i) awards in similar cases; (ii) the time and labor required; (iii) the novelty and the difficulty of the questions; (iv) the skill requisite to perform the legal service properly, including the experience, reputation, and ability of the attorneys; (v) the preclusion of other employment by the attorney due to the acceptance of the case; (vi) the customary fee, including whether the fee is fixed or contingent; (vii) the amount involved and the results obtained; (viii) the "undesirability" of the case; and (ix) limitations imposed by the client or the circumstances; and (x) the nature and length of the professional relationship with the client.[4] *Camden*, 946 F.2d at 773, 775.

---

[3] In this regard, the Eleventh Circuit expressly noted that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.

[4] Lead Counsel had no relationship with the Lead Plaintiffs before this Action; thus, this factor is neutral.

### 1.    Awards in Similar Cases

Courts in the Eleventh Circuit routinely award attorney fees of one-third in securities class actions due to the unique characteristics and challenges posed in such cases. In particular, securities fraud cases implicate highly complex issues, require an extraordinary investment of time and resources, and provide class members with hard cash, instead of coupons.[5] *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8-9 (S.D. Fla. Oct. 17, 2016) (awarding 33.3% of $24 million settlement, noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund," and finding that "30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May. 3, 2016) (33% of $25 million settlement); *In re Groupon Sec. Litig.*, No. 12 CV 2450, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) ("30% of the Settlement Fund, or $13,500,000"); *Howard v. Chanticleer Holdings, Inc.*, No. 12-cv-81123, ECF No. 74, ¶ 4 (S.D. Fla. Aug. 14, 2014) ($33^{1/3}$% of $850,000 fund); *Fuller v. Imperial Holdings*, No. 11-cv-81184, ECF No. 95, ¶ 17 (S.D. Fla. Dec. 16, 2013) (30% of $12 million fund); *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 11-cv-20549, ECF No. 103, ¶¶ 14-15 (S.D. Fla. Apr. 25, 2012) ($33^{1/3}$% of $2.75 million fund); *Schorrig v. IBM Se. Emps.' Fed. Credit Union*, 2012 WL 12948540, at *6 (S.D.

---

[5] *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 3057232, at *10 (S.D.N.Y. Oct. 25, 2006); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 447 (S.D. Tex. 1999) (antitrust class action with cash payment).

Fla. Feb. 24, 2012) (30% of $950,000 fund); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*, 2013 WL 12489095, at *3 (S.D. Fla. July 17, 2013) (33 1/3% of $37.5 million fund); *Waterford Twp. Gen. Emps. Ret. Sys. v. Bankunited Fin. Corp.*, No. 08-cv-22572, ECF No. 164, ¶ 11 (S.D. Fla. June 14, 2013) (30% of $3,000,000 fund); *Dance v. Levitt Corp.*, No. 08-cv-60111, ECF No. 151, ¶ 14 (S.D. Fla. Sep. 29, 2011) (33 1/3% of $1,948,050 fund); *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591815, at *1 (S.D. Fla. July 28, 2010) (33 1/3% of $4,800,000 fund); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *1, *4 (N.D. Ga. May 22, 2009) (30% of $14.9 million settlement); *Hirsch v. PSS World Med., Inc.*, No. 98-cv-502, ECF No. 300, ¶ 1 (M.D. Fla. Dec. 20, 2005) (30% of $16.5 million settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451958, at *2 (S.D. Fla. July 8, 2005) (30% of $28.7 million settlement).

### 2.    Time and Labor Required / Lodestar Cross-Check.

Lead Counsel has devoted significant time and resources to researching, investigating, and prosecuting this action. By the time the Settlement was reached, Lead Counsel had: (a) investigated the factual circumstances underlying the claims against Defendants; (b) drafted the FAC and SAC; (c) defeated both the PureCycle Defendants' and Defendant Byron Roth's separate motions to dismiss the SAC, as well as motions to strike; (d) opposed the Recon. Mot.; (e) engaged in extensive document discovery and reviewed over 200,000 pages of documents; (f) prepared for and took and/or defended the depositions of the Lead Plaintiffs and the experts in the

11

case; (g) briefed the Class Cert. Mot. which involved expert testimony and the highly contested issues of, *inter alia*, standing and market efficiency; (h) prepared a mediation statement and participated in an all-day mediation with Jed Melnick, esq. of JAMS; (i) achieved a $12 million Settlement with Defendants that equates to as much as 32% of estimated damages (assuming Defendants prevailed on their arguments regarding standing (given recent Second and Ninth Circuit case law) and loss causation) and provides certain recovery for investors from a Company with one operation, negligible revenue, no profits, hundreds of millions in liabilities and a wasting insurance policy; and (j) negotiated the specific terms of the Settlement. *See* Weinrib Decl., ¶¶35, 48.

Indeed, Lead Counsel expended approximately 2,723 hours with a lodestar of $2,076,039.25, at current billing rates, reflecting a multiplier around 1.9. Weinrib Decl., ¶¶50-51, 53. While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third of the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). The 1.9 multiplier requested here is not only well within but is in fact ***below*** the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g.*, *In re Equifax Inc. Customer Data Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar.

12

17, 2020) (awarding fee representing 2.62 multiplier and describing it as "consistent with multipliers approved in other cases"), *aff'd in part, rev'd and remanded in part on other grounds*, 999 F.3d 1247 (11th Cir. 2021); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 & n.4 (N.D. Ga. Oct. 26, 2012) (noting that multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").

As such, the time and labor expended justify the fee requested.

### 3.    The Novelty and Difficulty of the Questions Involved

Lead Plaintiffs faced all the "multi-faceted and complex legal questions endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same) (quoting *Ressler*, 149 F.R.D. at 654). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, 2009

13

WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (quoting *In re Ikon Off. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)). This Action was no exception.

In particular, Lead Counsel had to navigate numerous complex issues concerning standing, loss causation, damages, and market efficiency, the latter of which necessitated expensive and time-consuming expert testimony at the class certification stage. The Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), which held that Defendants may rebut the presumption of reliance at the class certification stage, further complicated matters. Continued litigation would have involved additional battles of experts on the issues of damages and loss causation. The results of battles of the experts are notoriously difficult to predict. *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). The Parties would have also navigated and vehemently litigated the issue of standing. While the Eleventh Circuit has not yet reached this issue, the Second and Ninth Circuits have held that investors in an acquiring company do not always have Section 10(b) standing for claims involving statements made by the target company.[6]

Moreover, at summary judgment, at trial, and in any ensuing appeal, the Parties would have continued to litigate each element of the complex Exchange Act claims, including falsity (an assessment of which involved understanding the intricacies and viability of the polypropylene recycling process), scienter (the basis for

---

[6] *See Max Royal LLC*, 110 F.4th at 1181; *Menora Mivtachim*, 54 F.4th at 88.

the Court's dismissal of the FAC), loss causation, reliance and damages (the latter three of which would have involved the aforementioned battle of the experts).

Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action. However, notwithstanding these obstacles, Lead Counsel achieved an excellent result for the Settlement Class. Success in the face of these obstacles strongly supports the requested fee award.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by Lead Counsel and the standing of Lead Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation.

Indeed, Lead Counsel has developed a reputation for zealous advocacy in securities class actions. *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5-6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities

15

litigation and securities fraud class actions"); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (appointing Pomerantz as sole lead counsel in multi-billion dollar securities class action and stating that "[t]he Court is familiar with the Pomerantz firm from previous matters, and finds that it is well qualified to serve as lead counsel") (internal citation omitted). *See* Weinrib Decl., Ex. 3 (Pomerantz resume). Lead Counsel achieved an excellent $12 million recovery for investors, in the face of substantial risks, from a Company with one operation, immaterial revenues, no profits, hundreds of millions in liabilities, and a wasting insurance policy.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See, e.g.*, *Sunbeam*, 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Defendants were represented by experienced and highly-skilled lawyers from Dechert LLP and DLA Piper LLP. Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this. Weinrib Decl., ¶56. Lead Counsel's ability to obtain a favorable outcome for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided here. Accordingly, this factor also supports the fee requested.

### 5. Preclusion of Other Employment

When Lead Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and incur significant out-of-pocket expenses. Lead Counsel did not settle this case quickly but did so only after three years of litigation and over 2700 hours of work. Lead Counsel's time spent on this

case was at the expense of time that they could have devoted to other matters without any assurance that they would be successful or that they would ever receive compensation for their hard work. Accordingly, this factor also supports the requested fee.

### 6.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988).

The Court should give substantial weight to the contingent nature of Lead Counsel's fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("[A]ttorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award.") (*quoting Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000)); *Behrens*, 118 F.R.D.

17

at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

This case is fully contingent, meaning that Lead Counsel has not received any payments whatsoever while incurring $485,832.25 in expenses and paying attorney salaries (not counted in the expense account) for the duration of the case, with no guarantee that they would be successful at trial or ever receive compensation. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Even a victory at trial does not guarantee success. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). And even surviving post-trial motions in the district court is no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after almost seven years of litigation and rendering judgment in favor of defendant, based on novel ruling that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations). The contingent nature of Lead Counsel's representation strongly favors the requested fee.

Moreover, the award of appropriate attorneys' fees is particularly important in federal securities cases to ensure that private enforcement of the federal securities laws remains an effective method of protecting investors:

18

> Congress, the Executive Branch, and this Court, moreover, have "recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs*, 551 U.S. at 313. If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *Ressler*, 149 F.R.D. at 657.

### 7.    The Results Obtained

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alteration in original) (quoting *Ressler*, 149 F.R.D. at 655); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993) ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."). Even measured against Plaintiffs' best case damages scenario of $230 million (assuming that the Class won on every single point at trial and that the Court did not shorten the Class Period), the Settlement recovers over 5% of these damages,

19

which far surpasses the median 1.8% recovered in similar sized cases. However, if the Court had adopted Defendants' standing arguments and restricted the Class Period based on Second and Ninth Circuit precedent and adopted Defendants' loss causation arguments relating to the final November 11, 2021 disclosure, estimated damages would have dropped to $37.33 million. The Settlement Amount would thus represent an exceptional *32% of recoverable damages*.

Finally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *aff'd in part, rev'd and remanded in part on other grounds*, 818 F.2d 179 (2d Cir. 1987).

### 8.    The "Undesirability" of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Lead Counsel does not believe the case was undesirable, there are significant risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Lead Plaintiffs in this Action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms.

### C. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.

Lead Counsel's fee application includes a request for reimbursement of $485,832.25 in expenses that were "reasonable and necessary to obtain the [S]ettlement reached." *Ressler*, 149 F.R.D. at 657. These expenses are properly recoverable. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."); 1 Alba Conte, Attorney Fee Awards, § 2.19 (3d ed.), Westlaw (database updated June 2024) ("[A]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved.").

The types of expenses for which Lead Counsel seeks reimbursement were necessarily incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour. These expenses include, among others: expert fees; investigator fees; online factual and legal research fees; mediation fees; travel and lodging; photocopy charges, court filing fees; and press releases and newswire costs, which are broken down by category and amount in the Weinrib Decl., ¶52. Reimbursement of similar expenses is routinely permitted. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1258 (S.D. Fla. 2016); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of expenses

21

related to, among other things, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"). Moreover, from the outset, Lead Counsel were aware that they may not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. Weinrib Decl., ¶65.

The expenses incurred were reasonable and necessary to successfully prosecute this case. The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $500,000. To date, there have been no objections to Lead Counsel's request for expenses. *See* Evans Decl., ¶ 13, attached to the Weinrib Decl. as Ex. 1.

## IV.    THE COURT SHOULD APPROVE COMPENSATORY AWARDS FOR THE LEAD PLAINTIFFS

Plaintiffs also respectfully request compensatory awards of $30,000 each for their diligent and zealous representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). *See, e.g.*, *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $20,000 total "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"); *In re*

*Synovus Fin. Corp.*, 2014 WL 12756149, at *1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two institutional lead plaintiffs); *Aracruz Celulose*, 2013 WL 12489095, at *4 (awarding Lead Plaintiff $40,000 for "its reasonable costs and expenses incurred in representing the Class during the prosecution of this Action"); *Miller*, 2010 WL 11591815, at *2 (awarding Lead Plaintiff $32,000 for "reimbursement of its time and expenses in assisting in the prosecution of this action," including 160 hours at a rate of $200 per hour); *Mazur v. Lampert*, No. 04-61159-CIV, ECF No. 130, ¶4 (S.D. Fla. June 19, 2008) (awarding Lead Plaintiff $40,000).

Lead Plaintiffs took a very active role in the litigation. Each Plaintiff spent considerable time to familiarize himself with the facts of the case, reviewed the Complaints, reviewed the briefing on all motions, regularly conferred with Lead Counsel to stay apprised of developments in the litigation, reviewed and responded to discovery requests, prepared and sat for depositions, participated in discussions regarding the Settlement with Lead Counsel both before and after the mediation, and authorized Lead Counsel to settle the case for $12 million after due consideration to both the merits of the case and the risks involved. *See* Weinrib Decl., ¶68, Exs. 3-4. Lead Plaintiffs have shown diligence and dedication to this case and have undertaken substantial time and effort on behalf of the Class, which will now benefit therefrom. Without their contributions, there would have been no case, and no recovery for Settlement Class Members. *See Bell*, 2019 WL 4193376, at *6 ("Without [plaintiffs']

23

commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

Moreover, the Notice informed the class that Class Representatives would seek an award not to exceed $30,000 each. To date, there have been no objections. Evans Decl., ¶13. Thus, the Court should award Lead Plaintiffs $30,000 each for their role in representing the Class and bringing this Action to the current resolution.

## V.    CONCLUSION

For the foregoing reasons, the Court should award Lead Counsel 33.3% of the Settlement Fund plus accrued interest; award reimbursement of expenses of $485,832.25; and award Lead Plaintiffs $30,000 each.

Dated: September 17, 2024                     Respectfully submitted,

                                              **POMERANTZ LLP**

                                              /s/ *Tamar A. Weinrib*
                                              Tamar A. Weinrib (*pro hac vice*)
                                              600 Third Avenue, 20th Floor
                                              New York, New York 10016
                                              Telephone: 212-661-1100
                                              Facsimile: 917-463-1044

                                              *Lead Counsel for Plaintiffs*