# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. THEODORE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PURECYCLE TECHNOLOGIES, INC., MICHAEL OTWORTH, MICHAEL E. DEE, DAVID BRENNER, and BYRON ROTH,<br><br>Defendants. | Case No. 6:21-cv-809-PGB-GJK<br><br>**CLASS ACTION** |

**DECLARATION OF TAMAR A. WEINRIB IN SUPPORT OF UNOPPOSED MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND COMPENSATORY AWARDS TO LEAD PLAINTIFFS**

**POMERANTZ LLP**
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

*Lead Counsel*

I, Tamar A. Weinrib, hereby declare as follows:

1.     I am a member of the New York Bar admitted to practice before this Court and am a partner with the law firm of Pomerantz LLP ("Pomerantz" or the "Firm"). I am fully familiar with the matters below and make this declaration in support of Plaintiff's Unopposed Motions for: a) Final Approval of Class Action Settlement and Plan of Allocation, and b) Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Lead Plaintiffs, filed concurrently herewith.[1] I am admitted pro hac vice before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would testify thereto.

2.     Attached hereto as Exhibit 1 is the Declaration of Sarah Evans Concerning: (A) Mailing of The Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl.").

3.     Attached hereto as Exhibit 2 is a copy of the Pomerantz LLP resume.

4.     Attached hereto as Exhibit 3 is the Declaration of Robert Ciecko in Support of (i) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards for Lead Plaintiffs.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, filed on May 7, 2024 ("Stipulation"). ECF No. 201-2. Internal citations and quotations are omitted and emphasis is added unless otherwise noted. References herein to "Final Approval Motion" are to the Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; references herein to the "Fee Motion" are to the Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Lead Plaintiffs.

5.     Attached hereto as Exhibit 4 is the Declaration of Mariusz Ciecko in Support of (i) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards for Lead Plaintiffs.

6.     The Settlement creates a gross settlement fund of $12,000,000 for the benefit of the Settlement Class consisting of all Persons (including, without limitation, their beneficiaries) who purchased or otherwise acquired PureCycle Securities between November 16, 2020 and November 10, 2021, both dates inclusive. Excluded from the Class are (i) Defendants, all current and former directors and officers of PureCycle during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above, (ii) Opt-Outs; and (iii) Persons who have no compensable damages.

7.     This declaration, and the accompanying Final Approval Motion, demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court.  Moreover, as indicated herein, the Plan of Allocation is based on consultations with Strategic Claims Services ("SCS"), an expert in financial markets and securities litigation, and also warrants final approval.

8.     This declaration, and the accompanying Fee Motion, set forth the work performed by Lead Counsel throughout the litigation, demonstrating that the litigation was vigorously prosecuted, that the Settlement negotiated at arm's length by experienced and fully informed counsel, and that Lead Counsel's requests for

attorneys' fees, reimbursement of expenses, and compensatory awards to Lead Plaintiffs are therefore reasonable and should be approved by the Court.

9. Lead Counsel and their professionals have spent, in the aggregate, 2,723 hours in the prosecution of this case against Defendants, with a market value or "lodestar" of $2,076,039.25 at current billing rates. *See infra*. The fee sought in this case, equal to $4,000,000, would therefore result in a modest multiplier of 1.9.

10. Moreover, the compensatory awards of $30,000 to each of the Lead Plaintiffs, Robert Ciecko and Mariusz Ciecko, are supported by their ongoing and consistent supervision and diligent participation in this case since their appointment as Lead Plaintiffs, as set forth herein and in the accompanying Fee Motion.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

11. This Action was first filed on May 11, 2021, in the Middle District of Florida. By order dated August 5, 2021, the Court appointed Robert Ciecko and Mariusz Ciecko as Lead Plaintiffs and Pomerantz LLP as Lead Counsel. (ECF No. 80). The Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") was then filed on September 27, 2021 (ECF No. 90), asserting claims on behalf of PureCycle investors against Defendants PureCycle Technologies, Inc., Michael Otworth, Michael E. Dee, David Brenner, Tasmin Ettefagh, and Byron Roth for violations of Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

12.     Specifically, the FAC alleged that Defendants misled investors in proxy statements, a registration statement, and in press releases by: (i) falsely stating that their recycling process is "proven" to convert waste polypropylene (called feedstock) into virgin polypropylene resin more cost effectively than manufacturing virgin polypropylene traditionally, and utilizing a broader range of feedstock than traditional recycling; and (ii) falsely touting the PureCycle management team -- which claimed to have solved the previously unsolvable polypropylene recycling problem -- as having "broad experience across plastics," decades of experience scaling early-stage companies, in public markets, and leading transformational projects. The FAC further alleged that on May 6, 2021, Hindenburg Research published a report revealing the alleged falsity of Defendants' statements regarding PureCycle's polypropylene recycling process and PureCycle management's professional background, causing PureCycle's common stock to drop approximately 40% from $24.59 to $14.83 on heavy trading volume.

13.     From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages. Defendants filed two motions to dismiss the FAC, which the Court granted on August 4, 2022, providing Plaintiffs leave to amend (ECF No. 112). Plaintiffs filed the Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC") on August 18, 2022 (ECF No.113) adding a Section 14(a) claim, and alleging a second corrective disclosure, i.e., that on November 10, 2021, PureCycle announced that the SEC had issued an investigative subpoena to Defendant Otworth "requesting testimony in

connection with a non-public, fact finding investigation of the Company," following which PureCycle common stock fell approximately 15% from $11.50 to $9.79 per share on November 11, 2021.

14. Defendants filed two motions to dismiss the SAC, one of which the Court granted solely as to Tasmin Ettefagh and otherwise denied both in their entirety on June 15, 2023 (ECF No. 144). On June 30, 2023, Defendants filed a motion for reconsideration of the Court's Order denying Defendants' motions to dismiss the SAC, which is still pending before the Court.

15. Following the Court's order denying the motions to dismiss, the Parties began discovery. To date, Defendants have collectively produced, and Plaintiffs have reviewed 200,000 pages of documents. Plaintiffs filed a motion for class certification on November 30, 2023 (later amending the motion on January 17, 2024 to only include the Sections 10(b) and 20(a) claims), which the Parties fully briefed as of February 21, 2024. The class certification motion is still pending before the Court.

16. On February 26, 2024, the Parties participated in a full day mediation with the assistance of well renowned mediator Jed Melnick, Esq. of JAMS. In advance of the mediation, the Parties exchanged detailed mediation statements. During the in-person mediation session, the Parties engaged in vigorous negotiations, but did not reach a resolution at that time.

17. With the continued assistance of Mr. Melnick, the Parties continued to engage in settlement discussions for over a month thereafter. Mr. Melnick then issued

6

a mediator's recommendation to resolve this Action for $12 million, which the Parties accepted, reaching an agreement in principle to settle the Action on April 2, 2024.

18. Following continued negotiations, the Parties executed the Stipulation on May 6, 2024.

19. On May 7, 2024, Plaintiffs moved for preliminary approval of the Settlement. ECF No. 201. The Court held oral argument on the preliminary approval motion on May 30, 2024 and entered the Order Preliminarily Approving Settlement and Providing for Notice on June 4, 2024. ECF No. 204.

## II.   THE FINAL APPROVAL AND FEE REQUESTS

20. The Settlement is fair, reasonable, adequate and a strong result for the Settlement Class. The Settlement confers a certain and immediate benefit on the Settlement Class, eliminating the risk of continued litigation where Plaintiffs faced the hurdles of a pending motion for reconsideration, a pending hotly contested motion for class certification, and proving the elements of a complex securities class action claim involving complex facts relating to polypropylene recycling technology and issues that would necessitate vigorous battles of the experts (e.g., market efficiency, loss causation, and damages) to succeed at summary judgment, trial, and on any appeal.

21. Moreover, the $12 million Settlement is an outstanding result considering that Plaintiffs also faced a sizable risk of zero or limited recovery due to PureCycle's deteriorating financial condition and wasting insurance policy which rendered collectability in the event of any judgment uncertain.

22.    The $12 million Settlement Amount represents approximately 5% of the total maximum damages of $230 million under their best-case scenario as estimated by Plaintiffs' damages expert.  However, Defendants vigorously disputed Plaintiffs' damages estimates and, under their analysis, assert Class-wide damages to be zero, or at least much less. At minimum, if Defendants succeeded in convincing the Court to shorten the Class Period based on their standing, market efficiency, and loss causation arguments, the damages estimate drastically reduces to $37.33 million. Under that scenario, the Settlement represents over 32% of damages.

23.    Moreover, even if Plaintiffs achieved a judgment equating to the full amount of damages under any damage scenarios, they faced substantial risks regarding collectability given the Company has one operation, immaterial revenues, no profits, hundreds of millions in liabilities, and a wasting insurance policy.

24.    A lump sum settlement involving a certain cash payment in the face of the numerous challenges set forth herein and in the accompanying Final Approval Motion and Fee Motion, is a favorable outcome.  Additionally, the Plan of Allocation is a fair and reasonable method for distributing the Settlement proceeds to Settlement Class Members.

25.    In light of these circumstances, and especially given that the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate, thus warranting final approval of the Settlement and Plan of Allocation.

26.    For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of one third of the Settlement, or $4,000,000 plus interest earned thereon, and reimbursement of litigation expenses totaling $485,832.25.  As explained in the Fee Motion, this fee request is within the reasonable range of percentages typically awarded to Lead Counsel in securities class actions in the Eleventh Circuit.

27.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee/award requests.  Pursuant to the Notice, objections had to be received by September 17, 2024, the date of this filing.  To date, there have been no objections to the Settlement. Evans Decl., ¶13.[2]

28.    Pursuant to the Notice, the deadline for requests for exclusion from the Settlement was September 12, 2024.  To date, there has been only one request for exclusion received by the Claims Administrator.  *Id.*, ¶12.

III.    **NOTICE PROCEDURES**

29.    At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, the Claims Administrator published the Summary Notice electronically on *GlobeNewswire* and in the *Investor's Business Daily* on July 1, 2024.  Evans Decl., ¶9, Ex. D.  The Claims Administrator also published the current status of the case; important Settlement-related deadlines; an online claim filing link; and downloadable copies of

---

[2] Plaintiffs will file a proposed order granting final approval along with the reply brief.

the Notice Packet, the Preliminary Approval Order, and the Stipulation on a Settlement-specific website on June 21, 2024. *Id.*, ¶11.

30.   Pursuant to the Court's Preliminary Approval Order, over 31,595 notice and claim packets were mailed or emailed to potential Settlement Class Members and nominees. *See* Evans Decl., ¶¶2-8.

## IV.   PLAN OF ALLOCATION

31.   Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Evans Decl., ¶13, Ex. A (Notice Packet). Lead Counsel created the Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner.

32.   Pursuant to the Preliminary Approval Order and as set forth in the Notice, all members of the Settlement Class who wish to participate in the distribution of the Net Settlement Fund had to submit a valid, timely Proof of Claim and all required information by no later than September 12, 2024. As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, attorneys' fees and expenses, the remainder of the Settlement Fund, i.e., the Net Settlement Fund, shall be distributed among Class Members who submit timely and valid Proofs of Claim ("Authorized Claimants") according to the Plan of Allocation.

33.   The Plan of Allocation is set forth in detail in the Notice and provides that Authorized Claimants will receive a pro rata share of the Net Settlement Fund based on the value of their recognized claim attributable to the alleged fraud.

34.     If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Authorized Claimants. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the value of the Authorized Claimant's recognized claim. If, however, as is more likely, the amount in the Net Settlement Fund is not sufficient to permit payment of the total recognized claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the recognized claims of all Authorized Claimants.

## V.     THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

35.     The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations.  The Parties reached the Settlement after three years of litigation during which Lead Counsel had thoroughly investigated the claims and consulted with multiple experts, including a financial economist to calculate estimated damages.  Indeed, at the time of Settlement, Lead Counsel had already, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts that included an analysis of publicly available documents regarding and issued by Defendants, the retention of a private investigator and consultation with experts; (ii) drafted two amended complaints, including the operative SAC, which bolstered allegations of scienter, added a Section 14(a) claim, and included an additional corrective disclosure; (iii) drafted briefs in opposition to *four* separate motions to dismiss, two filed by the PureCycle Defendants and two filed

by Defendant Roth seeking dismissal of the FAC and then the SAC, as well as two motions to strike; (iv) drafted a brief in opposition to Defendants' motion for reconsideration; (v) pursued fact discovery, which included serving and responding to discovery requests; (vi) conducted a targeted review of approximately 200,000 pages of documents produced collectively by Defendants; (vii) moved for class certification; (viii) engaged in expert discovery, including consultation with experts and depositions of experts on the issue of market efficiency; and (ix) conducted extensive consultations with experts to evaluate potential damages.

36.    Lead Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case continued forward, considering the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial; as well as significant ability-to-pay risks arising from PureCycle's increasingly precarious financial position.  As discussed below and in the Final Approval Motion, Plaintiffs would have faced multiple procedural hurdles and significant merit-based risks if litigation continued, which would also entail significant additional expenses and delay.  Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

37.    Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently plead, there is no certainty that Plaintiffs would be able to certify a class, defeat Defendants' anticipated motion for summary judgment, prevail at trial, or any subsequent appeals.  Defendants have, and would have continued to, vigorously

challenge Plaintiffs' standing and challenge whether Plaintiffs had adequately alleged the elements of falsity, scienter, reliance, and loss causation.

38. As evidenced by the extensive briefing on Plaintiffs' class certification motion, Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency. Achieving class certification involved a "battle of the experts" that was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover damages as it would be uneconomical.

39. At summary judgment and trial, Plaintiffs faced the risk that the Court would find that Defendants' statements were not actionably false or misleading. For example, Defendants argued in their motion for reconsideration that recent developments demonstrate the viability of the Company's polypropylene recycling technology and thus undermine allegations that Defendants' statements regarding issues with the technology during the Class Period were false and misleading.

40. Plaintiffs also faced the risk that the Court would find they had not adequately pleaded a strong inference of scienter with sufficient particularity, as the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires, which was the basis for the Court's dismissal without prejudice of the FAC.

41. Additionally, Plaintiffs faced the risk that the Court would find Plaintiffs' theory of loss causation unavailing. For example, Defendants challenged whether the

November 10, 2021 announcement that the SEC had issued an investigative subpoena to Defendant Otworth was in fact a corrective disclosure given that the SEC ultimately stopped the investigation without taking any further action.  Defendants also argued based on recent Second Circuit precedent (recently followed by the Ninth Circuit) that Plaintiffs did not have standing to pursue claims for alleged misstatements issued by PureCycle prior to the de-SPAC merger.[3]

42.    If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated.

43.    Additionally, even if Plaintiffs achieved a judgment at trial and successfully litigated through any appeal, the risk of collecting on that judgment was considerable.  PureCycle has never earned any profit.  The Company has one operation, its polypropylene recycling technology, from which it has yet to earn any material revenue.  According to PureCycle's Form 10-Q filed on August 8, 2024, the Company had only $10,895,000 in cash and cash equivalents as of June 30, 2024, as compared to $73,411,000 as of December 31, 2023, and had $428,142,000 in total liabilities. Moreover, continued litigation would have further exhausted PureCycle's limited and wasting insurance policy.

44.    In sum, in light of these significant risks, Plaintiffs believe that the proposed Settlement is a very favorable outcome for the Settlement Class.

---

[3] *See Max Royal LLC v. Atieva, Inc. (In re CCIV / LUCID Motors Sec. Litig.)*, 110 F.4th 1181 (9th Cir. 2024); *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022).

## VI.    THE FEE APPLICATION IS FAIR AND REASONABLE

45.    The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $500,000 for Lead Counsel.  Evans Decl., Ex. A.  As set forth in the Fee Motion, 33.3% of the common fund that Lead Counsel's efforts created falls is merited here and is in line with similar awards that courts in the Eleventh Circuit have granted in securities class actions, due to the unique characteristics and challenges posed in such cases.

46.    Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves.  Throughout this litigation, Lead Counsel committed to the interests of the Settlement Class, investing the time and resources necessary to resolve the Settlement Class's claims.  As a result of Lead Counsel's efforts, Settlement Class Members will receive compensation they would not have sought individually and avoid the risk of no recovery at all.

*Lead Counsel's Work and Experience*

47.    Lead Counsel took this case on a contingency basis, spending over 2,700 hours litigating the case with no assurance of success or receiving any compensation.

48.    As a result of these efforts, Lead Counsel secured a non-reversionary $12 million cash Settlement for the Class after three years of extensive investigation, hard-fought litigation, review of 200,000 pages of documents produced in discovery, depositions of expert witnesses, and lengthy negotiations by experienced attorneys that

specialize in securities litigation. Plaintiffs filed two amended complaints, opposed four motions to dismiss, opposed two motions to strike, opposed a motion for reconsideration, and filed a motion for class certification that included expert testimony on the oft contentious subject of market efficiency. The Settlement is an excellent result for Settlement Class Members given the considerable risks of continued litigation and PureCycle's deteriorating financial condition.

49.    As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to agree to the proposed Settlement.

50.    The chart below contains a summary of time expended by the attorneys and professional staff of Lead Counsel on the Action, and the lodestar calculation based on their current hourly rates. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by the Firm.

| Professional (position)* | Rate | Hours | Lodestar |
|---|---|---|---|
| Jeremy A. Lieberman (P) | $1,325 | 10 | $13,250.00 |
| Tamar A. Weinrib (P) | $1,100 | 1,185.25 | $1,303,775.00 |
| Alex Hood (P) | $975 | 14.60 | $6,337.50 |
| Timor Lahav (SA) | $510 | 752.50 | $383,775.00 |
| James LoPiano (A) | $550 | 44.28 | $24,354.50 |
| Villi Shteyn (A) | $550 | 22.60 | $12,430.00 |
| Thomas Pryzblowski (A) | $600 | 7.40 | $4,440.00 |
| Dolgora Dorzhieva (A) | $625 | 8.60 | $5,375.00 |
| Brandon Cordovi (A) | $550 | 22.60 | $12,430.00 |
| Elina Rakhlin (A) | $500 | 31.80 | $15,900.00 |
| Lauren Molinaro (A) | $450 | 24.80 | $11,160.00 |
| Guy Yedwab (A) | $475 | 42.85 | $20,353.75 |
| Obafemi Alaka (PA) | $465 | 517.60 | $240,684.00 |
| Simon Hall (PL) | $375 | 3.10 | $1,162.50 |
| Jack Lo (PL) | $365 | 5.00 | $1,825.00 |

16

| | | | |
|---|---|---|---|
| Ellen Jordan (PL) | $360 | 30.25 | $10,890.00 |
| **Total** | | **2,723.23** | **$2,076,039.25** |

\*Partner (P), Associate (A); Staff Attorney (SA); Project Associate (PA);
Paralegal/Other (PL)

51.    Lead Counsel's lodestar figures are based upon the Firm's hourly rates,
which do not include charges for expense items.  Expense items are billed separately
and such charges are not duplicated in the Firm's hourly rates.

52.    The chart below is a summary of the unreimbursed expenses Lead
Counsel incurred in connection with the prosecution of the Action.  The expenses set
forth below are reflected in the Firm's books and records.  These books and records
are prepared from expense vouchers, check records, and financial statements prepared
in the normal course of business for Lead Counsel and are an accurate record of the
expenses incurred in the prosecution of the Action.

| Expenses | Amount |
|---|---|
| Clerk Filing Fees | $318.00 |
| Online Computer Legal Research | $7,752.26 |
| Discovery Database | $2,927.19 |
| Deposition and Court Reporting | $13,379.87 |
| Expert Fees | $424,998.17 |
| Investigator Fees | $8,315.50 |
| Meals and Conference Expenses | $505.39 |
| Mediator Fees | $16,500.00 |
| Overtime-Clerical | $1,290.64 |
| Photocopying Expenses | $249.50 |
| Postage and Overnight Mail | $49.94 |
| Press Releases and Newswires Fees | $5,369.20 |
| Travel and Meal Expenses | $4,176.59 |
| **Total Expenses** | **$485,832.25** |

17

53.    If Lead Counsel's request for attorneys' fees of 33.3% of the Settlement Fund is granted, Lead Counsel would receive a fee of $4,000,000.00, plus interest earned thereon at the same rate as the Settlement Fund.   This fee award would represent a lodestar multiplier of approximately 1.9.  This multiplier is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

54.    As reflected in the Pomerantz Firm resume, attached hereto as Exhibit 2, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.

55.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution.  Lead Counsel will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

56.    Defendants' Counsel, experienced and highly-skilled lawyers from Dechert LLP and DLA Piper LLP, vigorously represented their clients.  Both Dechert LLP and DLA Piper LLP are highly respected defense firms with substantial securities litigation experience and resources.

18

57. In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms favorable to the Settlement Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

58. Lead Counsel undertook this class action on a contingency fee basis. As summarized *supra* and further described in the Final Approval and Fee Motions, Lead Counsel assumed significant risks to bring these claims to a successful conclusion. Those risks are relevant to an award of attorneys' fees.

59. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of compensation for the investment of time and money that the case required. Lead Counsel have received no compensation during the course of their involvement in this litigation.

60. The commencement of a class action does not guarantee a settlement. To the contrary. It takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

61. As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsel's efforts and the favorable result

19

achieved, a 33.3% fee is reasonable and in line with attorneys' fee awards in similar cases in this Circuit.

### The Reaction of the Settlement Class to the Requested Fee

62. As noted above, over 31,595 notice and claim packets were mailed or emailed to potential Settlement Class Members and nominees. Evans Decl., ¶¶2-8.

63. The deadline to request exclusion from the Settlement was September 12, 2024; the deadline to object to the Settlement was September 17, 2024. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees, and has received only one request for exclusion. Evans Decl., ¶¶12-13.

## VII. REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

64. As detailed *supra*, Lead Counsel has incurred $485,832.25 in litigation expenses in connection with the prosecution of the Action.

65. From the outset, Lead Counsel knew they might not recover any of their expenses, and, at minimum, would not recover anything until achieving a successful resolution of the case. Lead Counsel also understood that, even assuming a successful resolution, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

66.     A categorized list of the expenses Lead Counsel incurred, compiled from the Firm's regularly maintained records, are set forth in the chart *supra*.

67.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

## VIII.    COMPENSATORY AWARDS TO LEAD PLAINTIFFS PURSUANT TO THE PSLRA ARE WARRANTED

68.     Lead Plaintiffs seek an award of $30,000.00 each, or $60,000.00 in total, for their time and effort overseeing this action pursuant to the PSLRA.  The work that Plaintiffs performed on behalf of the Settlement Class included, *inter alia*, familiarizing themselves with the facts of the case, filing a lead plaintiff motion, reviewing the complaints, reviewing the briefing on all motions, regularly conferring with Lead Counsel to stay apprised of developments in the litigation, reviewing and responding to discovery requests, preparing and sitting for depositions, participating in discussions regarding the Settlement with Lead Counsel both before and after the mediation, and authorizing Lead Counsel to settle the case for $12 million.  Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront.

69.     As explained in the Fee Motion, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions.  They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

21

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of September 2024, at New York, New York.

By:    */s/ Tamar A. Weinrib*
Tamar A. Weinrib

22